**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **CHLOE NOFTZ, TONYA BLACK and KENNETH WEINSTOCK, on behalf of themselves and all others similarly situated,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 1:24-cv-08100** |
| **KSB HOSPITAL FOUNDATION d/b/a KSB HOSPITAL F/K/A KATHERINE SHAW BETHEA HOSPITAL,** | |
| **Defendant.** | |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANT KSB HOSPITAL'S
RULE 12(b)(6) and 12(b)(1) MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

**INTRODUCTION** ........................................................................................................... 1

**FACTUAL AND PROCEDURAL BACKGROUND** ................................................ 1

**LEGAL STANDARD** ................................................................................................... 4

**ARGUMENT** ................................................................................................................. 5

   I.   PLAINTIFFS' FEDERAL LAW CLAIMS SHOULD BE DISMISSED. ......................... 5

     A.  Plaintiffs' ECPA Claims Fail. ..................................................................... 5

         *i.  Count VIII Fails to State a Claim under the ECPA because KSB Cannot Intercept Communications to Which it is a Party.* ........................................... 5

         *ii.  Counts IX and X Fail to State a Claim under the ECPA Because KSB is Not An Electronic Communication Service Provider* ........................................... 8

     B.  Plaintiffs' Computer Fraud and Abuse Claim Fails. ............................................... 10

     C.  The Court Should Decline to Exercise Supplemental Jurisdiction Over the Remaining State Law Claims. ...................................................................... 12

   II.  PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DIMISSED. ............................... 15

     A.  Negligence ........................................................................................................ 15

         *i.  Plaintiffs Fail to Allege a Valid Legal Duty Under the FTC Act or HIPAA* ........ 15

         *ii.  Plaintiffs Fail to Sufficiently Allege any Other Valid Legal Duty* ........................ 18

         *iii.  Plaintiffs Fail to Allege Any Injury Proximately Caused by a Breach.* ............... 20

         *iv.  The Economic Loss Doctrine Bars Plaintiffs' Negligence Claims.* ...................... 20

     B.  Breach of Express and Implied Contract ............................................................. 21

     C.  Unjust Enrichment ........................................................................................... 22

     D.  Illinois Eavesdropping Statute .......................................................................... 23

     E.  Bailment .......................................................................................................... 25

**CONCLUSION** ............................................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*A.D. v. Aspen Dental Mgmt., Inc.*,
No. 24 C 1404, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024)...........................................24

*Aharon v. Babu*,
No. 22-C-04502, 2023 WL 2214429 (N.D. Ill. Feb. 24, 2023) .......................................15

*Allen v. Novant Health, Inc.*,
No. 1:22-CV-697, 2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) .................................12

*Allen v. Quicken Loans Inc.*,
2018 WL 5874088 (D.N.J. Nov. 9, 2018) ........................................................................6

*Alliance Acceptance Co. v. Yale Insurance Agency, Inc.*,
271 Ill. App. 3d 483 (1st Dist. 1995) ..............................................................................22

*Ambrosius v. Chicago Athletic Clubs, LLC*,
2021 IL App (1st) 200893 (2021).....................................................................................22

*American Hospital Association, et al. v. Bacerra, et al.*,
No. 4:23-cv-011110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024) .....................8, 16

*Archey v. Osmose Utilities Servs., Inc.*,
No. 20-CV-05247, 2022 WL 3543469 (N.D. Ill. Aug. 18, 2022) ...................................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...........................................................................................................4

*Avery v. State Farm Mut. Auto. Ins. Co.*,
216 Ill. 2d 100 (2005)......................................................................................................22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................................4, 11

*Boucher v. Fin. Sys. of Green Bay, Inc.*,
880 F.3d 362 (7th Cir. 2018) ............................................................................................4

*Brantley v. Prisma Labs, Inc.*,
2024 WL 3673727 (N.D. Ill. Aug. 6, 2024) ...................................................................13

*Calles v. Scripto–Tokai Corp.*,
    224 Ill. 2d 247 (2007) ................................................................................ 15

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988) ................................................................................... 13

*City of Ontario v. Quon*,
    560 U.S. 746 (2010) ..................................................................................... 9

*Copeland v. Newfield Nat'l Bank*,
    No. CV 17-17, 2017 WL 6638202 (D.N.J. Dec. 29, 2017) ............................ 16

*Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*,
    770 F.3d 586 (7th Cir. 2014) ......................................................................... 4

*Dinerstein v. Google, LLC*,
    73 F.4th 502 (7th Cir. 2023) ....................................................................... 19

*Doe v. Genesis Health System*,
    No. 23-cv-4209-JES-JEH, 2024 WL 3890164 (C.D. Ill. Aug. 21, 2024)....................... 21

*Garelli Wong & Assocs., Inc. v. Nichols*,
    551 F. Supp. 2d 704, 710-11 (N.D. Ill. 2008) ……………………………………....11

*Garner v. Amazon.com, Inc.*,
    603 F. Supp. 3d 985 (W.D. Wash. 2022)................................................... 9, 10

*Gociman v. Loyola*,
    41 F.4th 873 (7th Cir. 2022) ....................................................................... 21

*Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*,
    570 F.3d 811 (7th Cir. 2009) ......................................................................... 4

*Hartley v. Univ. of Chicago Med. Ctr.*,
    No. 22 C 5891, 2023 WL 7386060 (N.D. Ill. Nov. 8, 2023)......................... 6, 7

*Hasbun v. United States*,
    941 F. Supp. 2d 1011 (N.D. Ill. 2013) ......................................................... 18

*Henderson–Smith & Assocs. v. Nahamani Family Serv. Ctr.*,
    323 Ill. App. 3d 15 (1st Dist. 2001)) ........................................................... 21

*Hertz Corp. v. Friend*,
  59 U.S. 77 (2010) ........................................................................................ 13

*In re Cap. One Consumer Data Sec. Breach Litig.*,
  488 F. Supp. 3d 374 (E.D. Va. 2020) ............................................................ 20

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
  806 F.3d 125 (3d Cir. 2015) ............................................................................ 6

*In re Google Inc. Gmail Litigation*,
  No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ......... 7

*In re Ill. Bell Switching Station Litig.*,
  161 Ill. 2d 233 (1994) ................................................................................... 21

*In re Michaels Stores Pin Pad Litigation*,
  830 F. Supp. 2d 518 (N.D. Ill. 2011) ....................................................... 20, 21

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
  No. 24 C 2110, 2024 WL 4367849 (N.D. Ill. Oct. 1, 2024) ............................ 8

*In re Yahoo Mail Litigation*,
  7 F.Supp.3d 1016 (N.D. Cal. 2014) ................................................................ 7

*Jurgens v. Build.com*,
  No. 4:17-cv-00783, 2017 WL 5277679 (E.D. Mo. Nov. 13, 2017) .................. 6

*Khan v. OneWest Bank, F.S.B.*,
  No. 16-cv-8074, 2017 WL 1344535 (N.D. Ill. Apr. 12, 2017) ........................ 4

*Kurowski v. Rush Sys. For Health*,
  683 F. Supp. 3d 836 (N.D. Ill. 2023) ........................................................... 6, 7

*Kurowski v. Rush Sys. For Health*,
  659 F. Supp. 3d 931 (N.D. Ill. 2023) ..................................................... 6, 7, 10,

*Macovski v. Groupon, Inc.*,
  553 F. Supp. 3d 460 (N.D. Ill. 2021) ........................................................... 25

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
  91 Ill.2d 69 (1982) ....................................................................................... 20

v

*Neade v. Portes,*
    303 Ill. App. 3d 799 (2d Dist. 1999) ............................................................. 18

*Pable v. Chicago Transit Auth.,*
    615 F. Supp. 3d 842 (N.D. Ill. 2022) .......................................................... 12

*Patrick Patterson Custom Homes, Inc. v. Bach,*
    586 F. Supp. 2d 1026 (N.D. Ill. 2008) ............................................... 10, 11, 12

*Price ex rel. Massey v. Hickory Point Bank & Tr.,*
    362 Ill. App. 3d 1211 (4th Dist. 2006) ......................................................... 15

*Quon v. Arch Wireless Operating Co.,*
    529 F.3d 892 (9th Cir. 2008) ......................................................................... 9

*Rhodes v. Illinois Cent. Gulf R.R.,*
    172 Ill. 2d 213 (1996) .................................................................................. 19

*Rocha v. FedEx Corp.,*
    15 F. Supp. 3d 796 (N.D. Ill. 2014) ............................................................. 13

*Rodriguez v. FastMed Urgent Care, P.C.,*
    No. 5:23-CV-403-D, 2024 WL 3541582 (E.D.N.C. July 24, 2024) ................. 7

*Rodriguez v. Google LLC,*
    No. 20-cv-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ............... 7

*Sabrina Roppo v. Travelers Commercial Ins. Co.,*
    869 F.3d 568 (7th Cir. 2017) ......................................................................... 4

*Santoro v. Tower Health,*
    CV 22-4580, 2024 WL 1773371 (E.D. Pa. Apr. 24, 2024) ........................... 19

*Sloan v. Anker Innovations Ltd.,*
    711 F. Supp. 3d 946 (N.D. Ill. 2024) ............................................................. 6

*Stewart v. Parkview Hosp.,*
    940 F.3d 1013 (7th Cir. 2019) ..................................................................... 16

*Thomas v. Guardsmark, LLC,*
    487 F.3d 531 (7th Cir. 2007) ....................................................................... 14

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715 (1966) ...................................................................................... 13

*Van Buren v. United States*,
   593 U.S. 374 (2021) ...................................................................................... 12

*Wausau Ins. Co. v. All Chicagoland Moving & Storage Co.*,
   333 Ill. App. 3d 1116 (2002) ........................................................................ 25

*Weddle v. WakeMed Health and Hospitals*,
   22 CVS 13860, 2023 WL 8369786 (N.C. Super. Dec. 4, 2023)...................... 16

*Wittmeyer v. Heartland All. For Human Needs & Rights*,
   23 CV 1108, 2024 WL 182211 (N.D. Ill. Jan. 17, 2024) .......................... 20, 22

**Statutes**

18 U.S.C. § 1030 ............................................................................... 10, 11, 12
18 U.S.C. § 2510(15) .................................................................................... 9
18 U.S.C. § 2511(1) ...................................................................................... 5
18 U.S.C. § 2511(2) ................................................................................... 5, 7
18 U.S.C. § 2511(3) ...................................................................................... 8
18 U.S.C. § 2702 ........................................................................................... 8
28 U.S.C. § 1331 ........................................................................................... 5
28 U.S.C. § 1332 ....................................................................... 4, 5, 13, 14
28 U.S.C. § 1367(c) .................................................................................... 12
720 ILCS 5/14-2(a)(2) ............................................................................... 24
720 ILCS 5/14-2(a)(3) .......................................................................... 23, 24

**Other Authorities**

Black's Law Dictionary 174 (11th Ed. 2019) ............................................... 25

**Rules**

Fed. R. Civ. P. 12(b)(1)............................................................................ 4, 13
Fed. R. Civ. P. 12(b)(6)................................................................................. 4

## INTRODUCTION

This re-filed lawsuit is a blatant act of forum shopping. Faced with the imminent dismissal of the same class action complaint in Illinois state court, Plaintiffs voluntarily dismissed their baseless "online tracking" lawsuit and re-filed essentially the same case into this Court, adding meritless federal statutory claims. Plaintiffs' gamesmanship fails because, despite tacking on several dubious federal wiretap and computer fraud allegations, their complaint still fails to plausibly allege any wrongdoing in how Defendant KSB Hospital ("KSB") operates its website.

Plaintiffs' allegations rest on bare allegations which amount to nothing more than a replication of other lawsuits recently filed against dozens of other entities in connection with the Meta Pixel. The Complaint fails to specify whether KSB configured the tracking technology in an impermissible way; when, how, and what information Plaintiffs shared with KSB via the website; how and whether Plaintiffs' information was tracked and disclosed to third parties; and how Plaintiffs were specifically injured by the tracking technology. At eighty-seven pages and 380 paragraphs, the Complaint is rife with hypothetical and fictitious scenarios by mythical patients, but contains no plausible allegations as to Plaintiffs' own individual actions and injuries. Because Plaintiffs have failed to plausibly plead a claim, dismissal of the Complaint is warranted.

## FACTUAL AND PROCEDURAL BACKGROUND

Despite the considerable length of their Complaint, Plaintiffs fail to allege what personal health information ("PHI") they actually entered on KSB's website, where and when they entered it, and what injuries they sustained. For the first time (and following two prior attempts in state court), Plaintiffs attempt to allege that KSB disclosed information obtained through their access of KSB's patient portal. However, a close reading of their allegations reveal no such actual intrusion into the portal or disclosure of information contained therein. Plaintiffs' allegations amount to

1

nothing more than describing how a website works and how Facebook—not KSB—tracks its users' web browsing activities.

Plaintiff Noftz alleges that she utilized KSB's Online Platforms[1] to manage treatment for a broken toe and noticed that she was receiving targeted ads regarding KSB's health plans. Compl. ¶¶ 132-133. Plaintiff Black alleges that she accessed KSB's patient portal to view test results, schedule appointments, and track prescriptions, and used the Website to locate phone numbers for her OBYN and primary care doctor. *Id.* ¶¶ 143-144. Plaintiff Weinstock alleges that he accessed the patient portal to manage a variety of treatments and make physical therapy appointments, and then began to notice targeted ads for KSB's pain management classes. ¶ 155. All three Plaintiffs identically allege that KSB disclosed the following information to Facebook: the pages and content they viewed; their seeking of medical treatment; their status as a patient; "[i]nformation regarding [their] patient portal activity;" the specialties of medical providers viewed and their names; the search results they clicked on; the medical services they received; and their identity via IP address and/or 'c_user' cookie and/or Facebook ID. *Id.* ¶¶ 138, 149, 161. Accordingly, Plaintiffs allege— with no factual detail whatsoever—that information **related** to medical care may have been transmitted to Facebook. Plaintiffs do not allege that their medical records, financial information, or other PHI or PII were taken out of the portal and transmitted to Facebook.

Fully aware of the lack of specificity in their own allegations (indeed, they have already amended their pleading once in state court and then dismissed their second complaint), Plaintiffs attempt to generate a lawsuit through fictitious and hypothetical scenarios. For example, the Complaint alleges that when "a patient" conducts a search for "colonoscopy" on the Website's

---

[1] The Complaint vaguely defines "Online Platforms" as KSB's "Website, along with its various web-based tools and services[.]" *Id.* ¶ 11.

homepage, a Microdata event informs Facebook of the search and subsequent page visits and clicks. *Id.* ¶¶ 89-93. Plaintiffs' other hypothetical examples—again not attributable to any named Plaintiff—includes an unnamed patient who inquired about childbirth classes, *id.* ¶¶ 95-98; a visit to the "PAY MY BILL ONLINE" part of the Website and related subsequent clicks, *id.* ¶¶ 102-110; and disclosure of a hypothetical patient's act of logging into the portal and clicking on an authorization for release of medical information. *Id.* ¶¶ 113-120. These hypothetical claims do not allege disclosure of medical information, internal portal activities, or financial information.

This is not Plaintiffs' first attempt to bring these claims against KSB. Plaintiffs first initiated this lawsuit on October 31, 2023, in the Circuit Court of Lee County, Illinois, raising the exact same allegations in this case concerning KSB's alleged use of the Meta Pixel and KSB's alleged violation of HIPAA standards, privacy policies, and AMA ethics codes. (Ex. A, First State Court Complaint).[2] KSB moved to dismiss the first state court complaint on February 28, 2024, and Plaintiffs responded with an amended complaint. (Ex. B, Amended State Court Complaint). KSB moved to dismiss the amended complaint on April 29, 2024, again noting Plaintiffs' myriad assumptions about the Meta Pixel and KSB's use of it and pointing out the hypothetical nature of their new allegations. (Ex. C, Motion to Dismiss Am. Compl.). Following additional briefing, the parties took part in a nearly 2-hour oral argument in the state court on July 9, 2024. Plaintiffs dismissed their state court lawsuit nine days later. (Ex. D, July 18, 2024 Voluntary Dismissal).

Despite repacking its state lawsuit in the federal action pending in this Court, Plaintiffs complaint suffers from the same fatal deficiencies raised by KSB in the state proceeding. The

---

[2] The Court is permitted to take judicial notice of public records, including judicial proceedings related to this case. *Gavin v. AT&T Corp.*, 543 F. Supp. 2d 885, 890, n. 2 (N.D. Ill. 2008).

Court should reject this blatant attempt to forum shop and find that Plaintiffs' claims fail to state a claim for relief under Rule 12(b)(6).

## LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all factual allegations in the complaint and draw[s] all permissible inferences in plaintiffs' favor." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018) (citation omitted). "To survive a motion to dismiss, a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 365–66 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 366 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court "need not accept legal conclusions or conclusory allegations." *Khan v. OneWest Bank, F.S.B.*, 16-cv-8074, 2017 WL 1344535, at * 3 (N.D. Ill. Apr. 12, 2017) (citing *Iqbal*, 556 U.S. at 680–82). Dismissal is appropriate where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). "[T]he party asserting federal jurisdiction under CAFA must establish that the requirements of § 1332(d) are satisfied." *Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017).

ARGUMENT

**I.     PLAINTIFFS' FEDERAL LAW CLAIMS SHOULD BE DISMISSED.**

Plaintiffs assert several claims under the Electronic Communications Privacy Act ("ECPA") (Counts VIII through X) and the Computer Fraud and Abuse Act (Count XI). None however state a viable claim for relief and must be dismissed.  Absent Counts VIII through X, the Court lacks federal question subject matter jurisdiction under 28 U.S.C. § 1331. Plaintiffs also fail to allege diversity jurisdiction subject matter jurisdiction under 28 U.S.C. § 1332. Thus, absent any federal subject matter jurisdiction, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.

**A.     Plaintiffs' ECPA Claims Fail.**

Plaintiffs fail to allege essential elements of an ECPA claim, requiring dismissal.

***i.   Count VIII Fails to State a Claim under the ECPA because KSB Cannot Intercept Communications to Which it is a Party.***

Count VIII of Plaintiffs' Complaint, which allege violations of the ECPA pursuant to 18 U.S.C. § 2511(1)(a), fail because: (1) KSB was a party to the communication and cannot intercept communications Plaintiffs intended for it to receive; and (2) KSB did not act with a criminal or tortious purpose. And according to Plaintiffs own admission, "[t]he **sole purpose** for [KSB's] use of the Meta Pixel and other tracking technology was to **enhance its marketing efforts and increase its profits."** Compl. ¶ 206 (emphasis added).

Section 2511(1)(a) specifies that any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication[…]" is liable under the Wiretap Act. 18 U.S.C. § 2511 (1)(a). However, Section 2511(2)(d) specifies that it is not unlawful when the person who intercepts the communication is a party to the communication.

5

First, Plaintiffs fail to allege that KSB intercepted communications because KSB was the intended recipient. Failure to allege an actual interception is fatal to Plaintiffs' claims. As several courts have made clear, "[i[nterception is a necessary element for each type of violation". *Jurgens v. Build.com*, 2017 WL 5277679, at *4 (E.D. Mo. Nov. 13, 2017); *see also Allen v. Quicken Loans Inc.*, 2018 WL 5874088, at *3 (D.N.J. Nov. 9, 2018) ("Since claims under subsection (c) and (d) are predicated on a violation of subsection (a), the Court considers all section 2511 claims together.").

In similar cases involving the use of website tracking technologies, Courts have dismissed ECPA claims on the basis of failure to allege an "interception." For example, in *Kurowski v. Rush Sys. For Health*, this Court held in a nearly identical Meta Pixel tracking lawsuit that the plaintiffs could not hold Rush liable under the Wiretap Act because, despite sharing information with third parties Facebook, Google, and Bidtellect, defendant was "the intended recipient of the communication" and therefore defendant was "a party to those communications and cannot be liable under the Wiretap Act for its alleged interception of them, if such an interception even occurred." 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023), *aff'd on reconsideration*, 683 F. Supp. 3d 836, 842-844 (N.D. Ill. 2023) (again dismissing ECPA Meta Pixel claim). *See also, e.g., Hartley v. Univ. of Chicago Med. Ctr.*, 22 C 5891, 2023 WL 7386060, at *1 (N.D. Ill. Nov. 8, 2023) ("…since UCMC is a necessary party to any communication from a patient concerning the provision of healthcare, it cannot be liable to the receipt of the communication") (Meta Pixel case); *Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 957 (N.D. Ill. 2024) ("That Defendants, parties to the communication, then upload some of that data to a third-party cloud server does not transform Defendants' action into an interception under the Wiretap Act"); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142 (3d Cir. 2015) ("Because the

6

defendants were the intended recipients of the transmissions at issue—[…]—we agree that § 2511(2)(d) means the defendants have done nothing unlawful[…]"); *In re Yahoo Mail Litigation*, 7 F.Supp.3d 1016, 1026 (N.D. Cal. 2014) ("[T]he consent of one party is a complete defense to a Wiretap Act claim").

Plaintiffs allege that the crime or tort exception to the interception rule applies here. (Compl. ¶ 339) In several other Meta Pixel cases, this Court has held to the contrary. *See Kurowski*, 659 F. Supp. 3d at 938-39; *Kurowski v. Rush Sys. For Health*, 683 F. Supp. 3d 836, 844 (N.D. Ill. 2023); *Hartley*, 2023 WL 7386060, at *2. Here, Plaintiffs allege that "[t]he sole purpose for Defendant's use of the Meta Pixel and other tracking technology was to enhance its marketing efforts and increase its profits." Compl. ¶ 206; *see also id.* ¶¶ 42, 50, 85, 86, 123, 125, 197, 247, 260, 289. Such allegations are fatal to arguing the crime or tort exception. *See Rodriguez v. FastMed Urgent Care, P.C.*, 5:23-CV-403-D, 2024 WL 3541582, at *5 (E.D.N.C. July 24, 2024) ("Even viewing Rodriguez's complaint in the light most favorable to Rodriguez, FastMed intercepted and disclosed the class members' information for commercial use or gain, not to commit a crime or tort.") (another Meta Pixel case). In *Rodriguez v. Google LLC*, plaintiffs brought a Wiretap Act claim against Google because of its relationships with third-party apps. No. 20-cv-04688-RS, 2021 WL 2026726, (N.D. Cal. May 21, 2021). The court dismissed the ECPA claim because the interception was made with consent, and added that the "[a]lleged interceptions fall within the tort or crime exception only where '**the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously**,' ... [and] cannot apply where the interceptor's 'purpose has plainly not been to perpetuate torts on millions of Internet users, **but to make money.'**" *Id.* at *6 n.8 (emphasis added) (quoting *In re Google Inc. Gmail Litigation*, No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)).

This Court has also held that where plaintiffs allege a HIPAA crime or tort based on the use of meta pixels, "that collected patients browsing data during visits to hospital websites[…] [are] far too vague to allow an inference to be drawn that [defendants were] actually disclosing data within HIPAA's statutory definition of individually-identifiable health information." *In re TikTok, Inc. In-App Browser Priv. Litig.,* No. 24 C 2110, 2024 WL 4367849, at *6 (N.D. Ill. Oct. 1, 2024) (cleaned up, internal quotations omitted). In the instant matter, Plaintiffs' allegations similarly fall short. For one, any alleged activity or disclosure of information on any unauthenticated web page does not violate HIPAA.[3] And Plaintiffs do not allege that KSB disclosed to Facebook PHI or IIHI entered on any **authenticated** page. At best, Plaintiffs perhaps allege that KSB disclosed clicks related to portal activity – not any actual medical records, financial information, or diagnoses. Compl. ¶¶ 138, 149, 161. Plaintiffs also do not allege, or even attempt to allege, the "contents" of any of their alleged communications with KSB, whether within the patient portal or otherwise. Because KSB was a party to the communications and Plaintiffs' allegations preclude the applicability of the crime tort exception, the Court should dismiss Count VIII.

> ### ii. *Counts IX and X Fail to State a Claim under the ECPA Because KSB is Not An Electronic Communication Service Provider*

Counts IX and X bring ECPA claims pursuant to 18 U.S.C. 2511(3)(a) and 18 U.S.C. § 2702, respectively. Both statutory provisions prohibit the divulgence of the contents of communications by a person or entity "**providing an electronic communication service to the public**." Because KSB is not an electronic communication service provider, Counts IX and X fail as a matter of law and should be dismissed.

---

[33] *See American Hospital Association, et al. v. Becerra, et al.*, Case No. 4:23-cv-011110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024) (discussed *infra* in Section II.A.i.).

An "Electronic Communication Service" to the public, is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. §2510(15). Courts have further elaborated on the definition of "Electronic Communication Service" and explained that Congress used email communications as a primary example of an electronic communication service where "messages are typed into a computer terminal, and then transmitted ... to a recipient computer operated by [email]." *Garner v. Amazon.com, Inc.,* 603 F. Supp. 3d 985, 1003 (W.D. Wash. 2022) (citing S. Rep. 99-541, at 8, 14 (1986)). Several courts have held that, like the example cited in Congressional reports, an electronic communications service allows users to communicate with each other, such as an email provider.[4]

KSB is not an electronic communication service provider. Specifically, its website and patients' communications therein are used exclusively in the ordinary course of conducting its business as a hospital. The website does not allow third parties to communicate with each other and KSB is not in the business of facilitating the electronic communications between third parties. To the extent any communications are had over KSB's website, they are with KSB directly.

The Complaint does not plead anything to the contrary. Indeed, Plaintiffs allege that KSB "encourages patients to use its Website, [...] to search for physicians, locate healthcare facilities, learn about specific health conditions and treatment options, [and] pay bills." Compl. ¶ 11. Plaintiffs also readily admit that they "visited [KSB's] Online Platforms in relation to their past, present, and future health, healthcare and/or payment for health care." *Id.* Plaintiffs never allege

---

[4] *See Quon v. Arch Wireless Operating Co.*, 529 F.3d 892, 902 (9th Cir. 2008) (holding that an email provider is an electronic communication service provider). *City of Ontario v. Quon*, 560 U.S. 746 (2010); *see also Theofel v. Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir. 2004) (same).

that they sent or received any communications to anyone, much less a party other than KSB. Plaintiffs' own allegations show KSB's website is not an electronic communication service.

Moreover, ample case law rejects the proposition that companies who use Metapixel or other website tracking technologies in the course of their business are electronic communication service providers. *See Kurowski*, 659 F. Supp. 3d at 940 ("[C]ompanies that merely purchase or use electronic communications services in the conduct of their ordinary business are not themselves electronic communications services"); *Garner*, 603 F. Supp. 3d at 1003-04 ("A company that merely utilizes electronic communications in the conduct of its own business [here, Amazon's "Alexa"] is generally considered a purchaser or user of the communications platform, not the provider of the service to the public."). Plaintiffs' allegations that KSB intentionally divulged the contents of their communications to Facebook through the use of tracking technology therefore fail because KSB's website does not provide electronic communication services.

### B. Plaintiffs' Computer Fraud and Abuse Claim Fails.

Plaintiffs similarly fail to adequately plead that KSB violated the Computer Fraud and Abuse Act ("CFAA"). "A violation [of the CFAA] occurs when an individual intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer if the conduct involved an interstate or foreign communication." *Patrick Patterson Custom Homes, Inc. v. Bach*, 586 F. Supp. 2d 1026, 1032 (N.D. Ill. 2008). Plaintiffs fail to (1) allege the existence of at least one enumerated subclause of the CFAA; and (2) fail to allege that a computer was accessed without authorization.

First. Plaintiffs fail to allege one of the required subclauses of the CFAA, which is a prerequisite to bringing a civil action. "To bring a civil action [under the CFAA] a plaintiff must show a violation of one of CFAA's substantive provisions, as set forth in section 1030(a), and

10

allege the existence of at least one of the five numbered subclauses of subsection [1030(c)(4)(A)(i)]." *Patrick Patterson*, 586 F. Supp. 2d at 1032.[5] Here, Plaintiffs allege they have suffered "a loss to 1 or more persons during any 1-year period. . . aggregating at least $5,000 in value under 18 U.S.C. § 1030(c)(4)(A)(i)(I)." (Compl. ¶ 378). They further allege that the conduct caused a threat to public health or safety." *Id.* ¶ 379.

Plaintiffs have merely recited the statutory requirement, yet plead no facts to support their claimed loss amount or a threat to public health or safety. There are no allegations as to when any of the named Plaintiffs or class members accessed KSB's website such that the Court can determine whether there is a loss within any 1-year period. Nor are there any allegations that the aggregate amount of loss sustained by any individual(s) in a 1 year period is $5,000 or more. Similarly, there are no facts showing that there is a threat to public health or safety as a result of KSB's use of tracking technology. Plaintiffs have not alleged how their or anyone else's safety is at risk because their personal information was disclosed to Facebook.

Plaintiffs' formulaic recitation of the requisite subclauses is not enough to withstand a motion to dismiss. *See Twombly*, 550 U.S. at 544 (a plaintiff is required to "provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *see also Garelli Wong & Assocs., Inc. v. Nichols*, 551 F. Supp. 2d 704, 710-11 (N.D. Ill. 2008) (dismissing CFAA for failing to allege facts to show loss in excess of $5,000).

Second, Plaintiffs fail to allege that a computer was accessed without authorization or that the authorization was exceeded. Liability under CFAA only attaches when a protected computer

---

[5] The CFAA was amended and renumbered after the Court's decision in *Patrick Patterson*. For ease of reference, KSB has altered the quotations to reflect the numbering of the current statutory language.

is accessed without authorization or if authorized access is exceeded. 18 U.S.C. § 1030(a)(2)(C). *Patrick Patterson*, 586 F. Supp. 2d at 1032.

In *Van Buren v. United States*, the United States Supreme Court considered whether a former police officer violated the CFAA for running license-plate searches in exchange for money. 593 U.S. 374 (2021) The Court found that the officer did not violate the CFAA because, although he may have had improper motives for obtaining the information, the information was available to him. And the foregoing scenario is not covered by the CFAA. *Id.* at 378. The court explicitly explained that "an individual 'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Id.* at 395. Following *Van Buren*, several courts have disposed of similarly flawed CFAA claims. *See Pable v. Chicago Transit Auth.*, 615 F. Supp. 3d 842, 845 (N.D. Ill. 2022) ("the CTA claims that Pable misused his authorized access for an improper purpose. That is precisely the type of claim that *Van Buren* held was outside the CFAA's scope"); *Allen v. Novant Health, Inc.,* No. 1:22-CV-697, 2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) (same). Similarly, in this case, Plaintiffs only allege KSB disclosed their search activities, the content they browsed, their financial activities on the website, and revealed their status as a patient. Totally absent from Complaint is that KSB accessed an authorized area of their computer or accessed their computer at all. The Supreme Court has provided clear guidance on the meaning of exceeding authorized access, and Plaintiffs fail to plead KSB exceeded its authorized access. The Court should therefore dismiss Count XI.

### C. The Court Should Decline to Exercise Supplemental Jurisdiction Over the Remaining State Law Claims.

The dismissal of Plaintiffs' federal law claims dictates dismissal of the remaining state law claims. *See* 28 U.S.C. § 1367(c) (authorizing declination of supplemental jurisdiction when the

court dismisses all claims over which it had original jurisdiction). The Court can decline to exercise supplemental jurisdiction based on "considerations of judicial economy, convenience and fairness to litigants," and "as a matter of comity" to avoid "[n]eedless decisions of state law." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "When the balance of these factors indicates that a case properly belongs in state court, as when the federal law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Because Plaintiffs' federal law claims should be dismissed, so too should the state law claims. *See Rocha v. FedEx Corp.*, 15 F. Supp. 3d 796, 813 (N.D. Ill. 2014) ("Where all federal claims are dismissed before trial, the usual practice is that a federal district court should generally dismiss the supplemental claims.").

Plaintiffs' assertion of diversity jurisdiction under 28 U.S.C. § 1332, Compl. ¶ 36, cannot supply the subject matter jurisdiction necessary to exercise supplemental jurisdiction over the state law claims. However, the Complaint fails to allege any jurisdictional facts that would establish jurisdiction under § 1332(d) and, pursuant to Federal Rule of Civil Procedure 12(b)(1), Plaintiff's diversity jurisdiction allegations must be dismissed.

Specifically, Plaintiffs assert minimal diversity under the Class Action Fairness Act, which affords federal jurisdiction over class actions where the class is more than 100 people, the amount in controversy exceeds $5 million, and any member of the class is a citizen of a state different than the defendant. *Id.* § 1332(d)(2); (5).

The burden of establishing diversity jurisdiction rests with Plaintiffs. *Hertz Corp. v. Friend*, 59 U.S. 77, 96 (2010). And, when jurisdiction is challenged, the Plaintiffs "must support their allegations by competent proof." *Id.* 96-97; *accord Brantley v. Prisma Labs, Inc.*, No. 23 C 1566,

13

2024 WL 3673727, at *3 (N.D. Ill. Aug. 6, 2024) ("A complaint must affirmatively allege facts that support the existence of federal jurisdiction.").

Plaintiffs have not established minimal diversity of citizenship or that the class is more than 100 people; they merely make conclusory legal assertions that jurisdiction is satisfied. Indeed, Plaintiffs More is required before the Court can exercise its jurisdiction. The Seventh Circuit has emphasized, "in no uncertain terms, that if jurisdiction depends on diversity of citizenship, the party invoking federal jurisdiction shall identify the citizenship of each party to the litigation." *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 533 (7th Cir. 2007). Plaintiffs' "naked declaration that there is diversity of citizenship is never sufficient." *Id.*

At no point do Plaintiffs ever allege that any class member is a citizen of a state other than Illinois. Plaintiffs each allege that they are Illinois citizens, and that KSB is an Illinois corporation. Compl. ¶¶ 32-35. The citizenship of any other purported class member is not alleged, and therefore, Plaintiffs cannot meet even the relaxed minimal diversity requirements § 1332(d).

As for the whether Plaintiffs have met the 100-class member threshold of 28 U.S.C. § 1332(d)(5)(B), they allege only that "upon information and belief, there are hundreds of thousands of individuals whose Private Information may have been improperly accessed…" Compl. ¶ 228. This conclusory allegation is insufficient and, even if accepted as true, has no bearing on whether any individual of the class is a citizen of a state other than Illinois. Plaintiffs define the class as "All patients of Defendant whose Private Information was disclosed by [KSB] to third parties…" Compl. ¶ 222. That hundreds of thousands of individuals may have had their private information improperly accessed does not mean (1) any of those individuals are patients of KSB; (2) that the improper access resulted in the disclosure of private information to any third party; or most importantly (3) that any of those individuals are a citizen of a state other than Illinois.

14

Therefore, given Plaintiffs' lack both federal question and diversity jurisdiction, and the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.

## II.        PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DIMISSED.

### A.        Negligence

In Counts I and II, Plaintiffs bring causes of action for negligence and negligence *per se*, respectively.  To state a cause of action for common law negligence, a plaintiff must allege facts sufficient to establish (1) the existence of a duty of care owed to the plaintiff by the defendant; (2) a breach of that duty; and (3) an injury proximately caused by that breach. *Calles v. Scripto–Tokai Corp.*, 224 Ill. 2d 247, 270 (2007). Where a statute or ordinance is designed to protect human life or property, Illinois law provides that the statute establishes the standard of care required of a reasonable person and thus "fix[es] the measure of legal duty." *Price ex rel. Massey v. Hickory Point Bank & Tr., Tr. No. 0192*, 362 Ill. App. 3d 1211, 1216 (4th Dist. 2006). To state a claim based on negligence *per se*, Plaintiffs must allege "the violation of a statute designed to protect human life," and that they were of the class the statute was designed to protect. *Aharon v. Babu*, 22 C 04502, 2023 WL 2214429, at *5 (N.D. Ill. Feb. 24, 2023) (citation omitted). Thus, while negligence *per se* concerns a breach of a statutory duty, both claims otherwise involve the same analysis.

### i.        *Plaintiffs Fail to Allege a Valid Legal Duty Under the FTC Act or HIPAA*

Plaintiffs cite several non-binding bulletins issued by the FTC and HHS-OCR to assert that Defendant had a legal duty under Section 5 of the FTC Act or under the HIPAA privacy and security rules to protect their PII and PHI. Compl. ¶¶ 2, 4-8, 180-185, 253. Their negligence *per se* claims under these Acts fail for several reasons.

First, Plaintiffs cannot assert a duty of care via HIPAA or the FTC Act because neither HIPAA nor the FTC Act confer a private right of action. *See Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019) ("[W]e now hold that HIPAA confers no private right of action."); *Copeland v. Newfield Nat'l Bank*, CV 17-17 (NLH/KMW), 2017 WL 6638202, at *3 (D.N.J. Dec. 29, 2017) ("Federal courts across the country have consistently held that the FTCA does not permit a private cause of action, and such claims are routinely dismissed."); *Weddle v. WakeMed Health and Hospitals*, 22 CVS 13860, 2023 WL 8369786, at *3 (N.C. Super. Dec. 4, 2023) (Meta Pixel negligence *per se* claim "untenable because neither the FTC Act nor the HIPAA regulations are public safety laws").

Second, Plaintiffs cannot rely on recent HIPAA bulletins to create a legal duty because they have been vacated and held invalid. Plaintiffs note a recent court decision vacating the updated HHS-OCR, but fails to note that the decision largely, if not complete, invalidates the logical and legal sufficiency of their claims. Compl. ¶ 8 n.12. In *American Hospital Association, et al. v. Bacerra, et al.*, the Northern District of Texas vacated the March 14, 2024 OCR Bulletin[6] ("Revised Bulletin") that revised the December 2022 bulletin ("Original Bulletin") which Plaintiffs heavily rely on. Case No. 4:23-cv-011110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024). Specifically, the court vacated OCR guidance to the extent it provides that HIPAA obligations are triggered in "circumstances where an online technology connects (1) an individual's IP address with (2) a visit to a[n] [unauthenticated public webpage] addressing specific health conditions or healthcare providers." *Id.* *2. Therefore, the HIPAA rules are not implicated when a tracking technology transmits an IP address and information entered on an unauthenticated web page. Here, each Plaintiff individually alleges nearly the same boilerplate

---

[6] https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html

factual allegations regarding what Defendant allegedly disclosed to Facebook. None of the Plaintiffs allege what specific Private Information they entered on Defendant's Website or Online Platforms.

Third, Plaintiffs present only half the story with respect to the connection between their Internet activity and Facebook. Plaintiffs allege that "the Meta Pixel can link a visitor's website interactions with an individual's unique and persistent Facebook ID ("FID"), allowing a user's health information to be linked with their Facebook profile." Compl. ¶ 14. But Plaintiffs fail to disclose to the Court the other half of the equation: their participation in and consent to Facebook's policies. When a Facebook account user signs up for Facebook, they consent to Facebook "collect[ing] and us[ing] [their] personal data in order to provide" services including "personalized ads, offers, and other sponsored or commercial content." [7,8] The Meta Pixel "relies on Facebook cookies," which enable Facebook to match a website's visitors to their respective Facebook accounts.[9] As Facebook's policies explain, Facebook collects information about users' browsing activities through the use of cookies and tools like the Meta Pixel, but gives users the ability to stop Facebook from tracking their Off-Facebook Activity.[10,11] Thus, Facebook users have authorized Facebook to store Facebook cookies on users' browsers, which house the user's

---

[7] The Complaint extensively refers to and relies upon Facebook policies regarding the Meta Pixel and other Facebook services. *See* Compl. n.15-24, 29-35, 37-38, 77-79. Here, also Defendant cites Facebook's policies on the very same topics.

[8] Meta's Privacy Policy, https://mbasic.facebook.com/privacy/policy/printable/ (last accessed April 29, 2024).

[9] "Get Started, Meta for Developers, https://developers.facebook.com/docs/meta-pixel/get-started (last accessed April 29, 2024).

[10] "Off-Facebook Activity: Control your information," https://www.facebook.com/off-facebook-activity (last accessed April 29, 2024).

[11] "How do I manage my future activity off Meta technologies," https://m.facebook.com/help/1224342157705160/?helpref=related_%20articles&_rdr (last accessed April 29, 2024).

Facebook ID. When a user visits a third-party website that uses a Meta Pixel, the pixel directs the user's browser to send the Facebook ID back to Facebook, along with the information tracked by the pixel. Throughout this process, Facebook users retain full control over both their Facebook privacy settings and their personal browser and cookie retention settings. Accordingly, Plaintiffs' claims should be dismissed because Plaintiffs have agreed to Facebook's Terms of Service, Privacy Policy, and Cookie Policy, all of which permit Meta to use the information it collects for a variety of purposes, including for targeted advertisements on Facebook.

KSB does not know whether its website visitors have signed up for Facebook or agreed to Facebook's policies, nor does it have knowledge of or possess users' Facebook ID numbers. Therefore, if any connection is made between the allegedly disclosed information and a particular Facebook user, it is Meta (not KSB) that does so.

### ii. *Plaintiffs Fail to Sufficiently Allege any Other Valid Legal Duty*

Plaintiffs fail to identify any other actionable legal duty which would give rise to a common law negligence claim. First, Illinois law makes clear that the AMA Code of Medical Ethics does not create a legal duty. *See Hasbun v. United States*, 941 F. Supp. 2d 1011, 1017 (N.D. Ill. 2013) (in negligent supervision action against the United States applying Illinois law, plaintiff insufficiently alleged that defendants had a duty to comply with the AMA's Code of Medical Ethics, "and thus her negligence claim fails."); *see also Neade v. Portes*, 303 Ill. App. 3d 799, 812 (2d Dist. 1999) ("…we agree that a violation of the AMA's medical ethics does not amount to a breach of the legal standard of care…"), *rev'd on other grounds,* 193 Ill. 2d 433 (2000). Second, Plaintiffs cannot rely on KSB's own policies to establish an owed duty. Plaintiffs allege that Defendant violated its own Patient Rights and Privacy Policy. It is well settled in Illinois that "[w]here the law does not impose a duty, one will not generally be created by a defendant's rules

18

or internal guidelines. Rather, it is the law which, in the end, must say what is legally required." *Rhodes v. Illinois Cent. Gulf R.R.*, 172 Ill. 2d 213, 238 (1996).

Third, Plaintiffs fail to sufficiently allege any common law duty under Illinois law regarding the protection of personal health information or medical records. There are some states which recognize a common law duty of medical providers to maintain patient confidentiality, "[b]ut Illinois is not one of them." *Dinerstein v. Google, LLC*, 73 F.4th 502, 512 (7th Cir. 2023). But even if Illinois does impose a common law duty to protect patients' personal or medical information, Plaintiffs have not adequately alleged that the information tracked by KSB Hospital's use of Meta Pixel involved personal or medical information. Because Illinois law does not recognize a common law duty to protect such information, they cannot assert a common law negligence claim.

### iii.  *Plaintiffs fail to allege breach.*

Even if Plaintiffs have alleged a valid duty of care, Plaintiffs fail to allege breach. First, Plaintiffs merely offer rampant speculation about the configuration of the Meta Pixel on KSB's website while simultaneously acknowledging that the Meta Pixel must be affirmatively configured in a certain way before it can improperly disclose Private Information to Facebook. Plaintiffs go to great lengths to explain how the Meta Pixel technology works, but in doing so they infer with no factual support that KSB affirmatively **configured** Meta Pixel in any way which would track or disclose Private Information. Second, there is no well-pled allegation that the information Plaintiffs submitted on KSB's website is even personal health information. *See Santoro v. Tower Health*, CV 22-4580, 2024 WL 1773371, at *4 (E.D. Pa. Apr. 24, 2024) (dismissing federal Wiretap Act and negligence claims arising from similar Meta Pixel suit against hospital because

plaintiff "lack[ed] specific examples of what HIPAA-protected information from plaintiffs was transferred to Meta.").

### iii.      Plaintiffs Fail to Allege Any Injury Proximately Caused by a Breach.

Plaintiffs do not allege what Private Information they entered or was compromised. They do not allege where or when they entered PII or PHI. They do not allege what loss they incurred, monetary or otherwise. *See In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 403 (E.D. Va. 2020) (rejecting plaintiffs' claim that their data lost value when an unauthorized party accessed it because "[p]laintiffs do not allege any facts explaining *how* their PII became less valuable as a result of the breach.") (emphasis in original). Here, Plaintiffs do not plausibly allege injury because there is no basis to conclude that the information even tracked by Meta Pixel even qualifies as confidential, private, sensitive, or health-related information. In any event, nothing in the Complaint plausibly suggests that the disclosure of Plaintiffs' information from KSB to Facebook actually reduced the value of Plaintiffs' Private Information. *Wittmeyer v. Heartland All. For Human Needs & Rights*, No. 23 CV 1108, 2024 WL 182211, at *6 (N.D. Ill. Jan. 17, 2024) ("Illinois has declined to hold that the alleged diminution in value of plaintiffs' personal information amounts to actual monetary damages.").

### iv.      The Economic Loss Doctrine Bars Plaintiffs' Negligence Claims.

Illinois' economic loss rule bars a plaintiff from recovering for purely economic losses under a tort theory of negligence. *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69 (1982). "The rationale underlying this doctrine is that tort law affords the proper remedy for loss arising from personal injury or damages to one's property, whereas contract law and the Uniform Commercial Code provide the appropriate remedy for economic loss stemming from diminished commercial expectations without related injury to person or property." *In re Michaels Stores Pin Pad*

*Litigation*, 830 F. Supp. 2d 518, 528 (N.D. Ill. 2011) (citing *In re Ill. Bell Switching Station Litig.*, 161 Ill. 2d 233 (1994)). In *Doe v. Genesis Health System*, the Central District dismissed the plaintiffs' Meta Pixel negligence and negligence *per se* claims under the *Moorman* doctrine. No. 23-cv-4209-JES-JEH, 2024 WL 3890164, at \*11-12 (C.D. Ill. Aug. 21, 2024). This Court should do the same.

### B.     Breach of Express and Implied Contract

Under Illinois law, the elements for an implied-in-fact contract and a breach of contract are the same. *Archey v. Osmose Utilities Servs., Inc.*, 20-CV-05247, 2022 WL 3543469, at \*2 (N.D. Ill. Aug. 18, 2022). So, to plead breach of an implied-in-fact contract in Illinois, a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff. *Henderson–Smith & Assocs. v. Nahamani Family Serv. Ctr.,* 323 Ill. App. 3d 15, 27 (1st Dist. 2001)) (internal quotation marks omitted). The terms of an implied-in-fact contract, however, unlike an express contract, are inferred from the conduct of the parties. *Gociman v. Loyola*, 41 F.4th 873, 883 (7th Cir. 2022) (citation omitted).

Here, Plaintiffs fail to allege the existence of a valid and enforceable contract. Plaintiffs do not allege any conduct that occurred between themselves and Defendant which would infer the creation of an implied contract. Plaintiffs do not allege ever having read Defendant's Patients' Rights notice or Privacy Policy, nor do they allege any other facts that might establish assent. Plaintiffs also fail to allege any performance on their part other than stating, in a conclusory fashion, that they performed their obligations. Compl. ¶ 270.

Even if there were an implied contract between KSB Hospital and Plaintiffs for the providing of medical care, that does not mean there was an implied contract between the parties

for all purposes. That Plaintiffs visited KSB's website and navigated around it was not a condition to an implied contract for the provision of medical care. Plaintiffs seemingly claim that because they were patients of KSB Hospital, they have an implied contract governing the disclosure of information in every interaction between Plaintiffs and KSB Hospital. There is no legal authority to stretch the scope of any purported implied contract to cover the conduct of which Plaintiffs complain, and the Court should decline to find such a broad scope to any implied contract.

Furthermore, Plaintiffs fail to allege any resulting injury-in-fact. The Amended Complaint is devoid of any allegations that any of the named plaintiffs suffered any monetary damages cognizable under Illinois law. To state a breach of contract claim under Illinois law, a plaintiff must allege actual monetary damages, that is, "an actual loss or measurable damages resulting from the breach." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 296 (2005). A diminution of value of personal information does not amount to actual monetary damage. *Wittmeyer*, 2024 WL 182211, at *6. As a result, Plaintiffs' breach of implied contract should be dismissed for failure to allege an implied agreement or assent, failure to allege any performance by Plaintiffs, and failure to allege any cognizable damages.

### C.     Unjust Enrichment

Plaintiffs' Count VI for Unjust Enrichment is pled in alternative to their breach of implied contract claim. Compl. ¶ 288. "[U]njust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery." *Ambrosius v. Chicago Athletic Clubs, LLC*, 2021 IL App (1st) 200893 (2021), ¶ 49 (citations omitted). Rather, "it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence[.]" *Alliance Acceptance Co. v. Yale Insurance Agency, Inc.,* 271 Ill. App. 3d 483, 492 (1st Dist. 1995), Alternatively, it may be based on contracts which are implied in law. *Perez v.*

*Citicorp Mortgage, Inc.,* 301 Ill. App .3d 413, 425 (1st Dist. 1998). Here, Plaintiffs have not alleged how KSB engaged in fraud, duress, or undue influence. There is no allegation that KSB made Plaintiffs (or any purported class member) visit their website or share Private Information therein. For the reasons explained above, Plaintiffs have failed to state a claim for breach of implied contract and therefore, Plaintiffs' unjust enrichment claim should be dismissed, too.

### D.     Illinois Eavesdropping Statute

To sufficiently state a claim pursuant to the Illinois Eavesdropping Statute that involves a "private electronic communication," Plaintiffs must show that KSB knowingly and intentionally "intercept[ed], record[ed], or transcribe[d], in a surreptitious manner, any private electronic communication to **which he or she is not a party** [...]." 720 ILCS 5/14-2(a)(3) (emphasis added). After being struck down as unconstitutionally overbroad, the Illinois Eavesdropping Statute was amended in December 2014 to add the foregoing section which specifically applies to private electronic communications. Plaintiffs cannot plausibly allege eavesdropping because KSB was a party to the private electronic communication and Plaintiffs fail to allege what section of the Illinois Eavesdropping Statute KSB violated. Count VII must be dismissed.

Completely absent from Count VII is what section of the Illinois Eavesdropping Statute KSB allegedly violated and Plaintiffs' claim should be dismissed for that reason alone. Plaintiffs allege KSB:

> intentionally recorded and/or acquired Plaintiffs' and Class Members' private electronic communications, without [...] consent [...] using Pixel and similar tracking technologies on its Online Platforms. [...] for the purpose of disclosing those communications to third parties, including Facebook and Google, without the knowledge, consent, or written authorization of Plaintiffs or Class Members.

Compl. ¶¶ 309-910. Plaintiffs further allege:

> Without Plaintiffs' or Class Members' knowledge, authorization, or consent, Defendant used the Pixel imbedded and concealed into the source code of its Online Platforms to secretly record and transmit Plaintiffs' and Class Members' private

> communications to hidden third parties, such as Facebook and Google, as described in the preceding paragraphs[…][and] Defendant aided in the interception of communications between Plaintiffs and Class Members and Defendant that were redirected to and recorded by third parties without Plaintiffs' or Class Members' consent.

*Id.* ¶¶ 317 and 322.

While Plaintiffs cite "720 ILCS 5/14-2(a),-4" (Compl. ¶ 303) in Count VII, Plaintiffs' direct allegations seem to combine the language of multiple sections of the statute that are not applicable to private electronic communications. This is significant. In *A.D. v. Aspen Dental Mgmt., Inc*., the court dismissed plaintiffs' claims under the Illinois Eavesdropping Statute because if found that "private conversation" used in 720 ILCS 5/14-2(a)(2) did not include private electronic communications. No. 24 C 1404, 2024 WL 4119153, at *4 (N.D. Ill. Sept. 9, 2024). In its analysis, the court explained that "[a]fter defining 'private conversation,' the statute separately defines 'private electronic communication'[…] [and] [t]he difference in these definitions suggests legislative intent to distinguish between the disclosure of conversations, like those occurring in-person or over the phone, and electronic communications, like the private user data and appointment scheduling information at issue here." *Id*. at *4. Here, Plaintiffs also cite 720 ILCS 5/14-2(a)(2) and then goes on to use a combination of sections to state their claims against KSB.

Plaintiffs' Illinois Eavesdropping claims should be dismissed because 720 ILCS 5/14-2(a)(2) is not applicable to private electronic communications. And the section that is applicable to private electronic communications, section 5/14-2(a)(3), specifically states that a person commits eavesdropping when he "[i]ntercepts, records, or transcribes, in a surreptitious manner, any private electronic communication **to which he or she is not a party** unless he or she does so with the consent of all parties to the private electronic communication. 720 ILCS 5/14-2(a)(3). Because Plaintiffs concede throughout the Complaint that they intended KSB to receive their private electronic communications, their claims fail on their face. Equally important, Plaintiffs

have failed to "describe the[ir] claim in sufficient detail to give [KSB] fair notice of the claim **and [the] grounds on which it rests."** *Macovski v. Groupon, Inc.,* 553 F. Supp. 3d 460, 473 (N.D. Ill. 2021) (emphasis added). KSB should not be forced to guess what section of the Illinois Eavesdropping Statute it must defend against. Count VII should be dismissed.

      **E.    Bailment**

      In order to properly plead the existence of and the right to recover under a bailment theory, a plaintiff must establish (1) an express or implied agreement to create a bailment; (2) a delivery of the property in good condition; (3) the bailee's acceptance of the property; and (4) the bailee's failure to return the property or the bailee's redelivery of the property in a damaged condition." *Wausau Ins. Co. v. All Chicagoland Moving & Storage Co.,* 333 Ill. App. 3d 1116, 1121 (2002).

      Traditionally, the object of bailment is a specific item of real property.[2] *See Bailment,* Black's Law Dictionary 174 (11th Ed. 2019) (first emphasis added) ("A delivery **of personal property** by one person (the *bailor*) to another (the *bailee*) who holds the property for a certain purpose, usu[ally] under an express or implied-in-fact contract.") (emphasis added). Thus, bailment deals with the delivery and return of personal property: it has nothing to do with the transfer of electronic information, which is physically intangible. Plaintiffs neither allege, nor can they plausibly believe, that information they entered on the Website can be considered personal property or that they can or should expect information entered on a website to be physically returned to them. This cause of action is frivolous.

**CONCLUSION**

      Plaintiffs have had enough bites at the apple. The Court should dismiss their Class Action Complaint in its entirety with prejudice.

25

This 8th day of November, 2024.          Respectfully submitted,

*/s/ Sanjay S. Karnik*
Sanjay S. Karnik
Ill. Reg. No. 6300156
Brittany M. Cambre*
Brandi Z. Burton-Murrain
Ill. Reg. No. 6323698
CHILIVIS GRUBMAN, LLP
159 N. Sangamon Street, Suite 313A
Chicago, IL 60607
Tel: (872) 260-6679
Fax: (404) 261-2842
skarnik@cglawfirm.com
bcambre@cglawfirm.com
bmurrain@cglawfirm.com

*Counsel for KSB Hospital*

*\*pro hac vice forthcoming*

26

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 8th day of November 2024, I have caused the electronic filing of the foregoing document described as **MEMORANDUM IN SUPPORT OF DEFENDANT KSB'S HOSPITALS RULE 12(b)(6) AND 12(b)(1) MOTION TO DISMISS** through the CM/ECF system, which will serve all parties of record.


*<u>/s/ Sanjay S. Karnik</u>*
Sanjay S. Karnik