**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **CHLOE NOFTZ, TONYA BLACK and KENNETH WEINSTOCK, on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br>**v.**<br><br>**KSB HOSPITAL FOUNDATION d/b/a KSB HOSPITAL F/K/A KATHERINE SHAW BETHEA HOSPITAL,**<br><br>**Defendant.** | **Case No. 1:24-cv-08100** |

**REPLY IN SUPPORT OF DEFENDANT KSB HOSPITAL'S
RULE 12(b)(6) and 12(b)(1) MOTION TO DISMISS**

Sanjay S. Karnik
Ill. Reg. No. 6300156
Brittany M. Cambre*
Brandi Z. Burton-Murrain
Ill. Reg. No. 6323698
CHILIVIS GRUBMAN, LLP
159 N. Sangamon Street, Suite 313A
Chicago, IL 60607
Tel: (872) 260-6679
Fax: (404) 261-2842
skarnik@cglawfirm.com
bcambre@cglawfirm.com
bmurrain@cglawfirm.com

*Attorneys for Defendant KSB Hospital*

**pro hac vice forthcoming*

Plaintiffs cannot shroud their plainly inadequate Complaint in hypothetical scenarios and passable allegations from other cases. A careful but clear reading of Plaintiffs' own allegations reveal that they do not allege any facts which demonstrate that KSB disclosed PHI or PII to Facebook. The cases that Plaintiffs cite in their Opposition ("Opp.") are either unpersuasive or distinguishable, and some even state the opposite conclusion for which they are asserted. Plaintiffs' attachment of an appendix listing orders from other jurisdictions (many of which are repeatedly listed in different tables) fare no better. While some "pixel" and "third party source code" class action complaints have survived the motion to dismiss stage (following second, third, and even fourth pleading attempts), those cases involved far more detailed factual allegations than the vague, hypothetical, and conclusory claims asserted by Plaintiffs here.

## I. PLAINTIFFS FAIL TO ALLEGE ANY DISCLOSURE OF PHI OR PII.

A careful reading of Plaintiffs' allegations shows nothing more than conclusory allegations devoid of any actual disclosure of PHI or PII. First, Plaintiff Noftz alleges that she utilized KSB's "Online Platforms" to manage treatment for a broken toe and check medical bills and test results, but the "targeted ads" she allegedly received were not related to foot or fracture treatments in particular, but rather "Defendant's health plans." *Id.* ¶¶ 132-133. Plaintiff Noftz alleges that KSB disclosed to Facebook her "**seeking of** medical treatment" – not the medical treatment. *Id.* ¶ 138(b). Plaintiff Noftz claims KSB disclosed **"[i]nformation regarding** [her] portal activity[,]" – not any actual PHI or PII or any information from within the portal. *Id.* ¶ 138(d). At best, "information regarding…portal activity" means that KSB disclosed that Plaintiff Noftz was on the patient portal page, and nothing more. Furthermore, Plaintiff Noftz alleges no facts supporting that KSB disclosed specialties and names of medical providers she searched and viewed, nor does she provide any factual detail about what searches she made and what "search results" she clicked on

or what medical services she viewed. *Id.* ¶ 138(e)-(h). Plaintiff Noftz also fails to allege other basic details which would give KSB notice of her claims, such as **when** she visited the KSB Online Platforms, what PHI or PII she entered, and when she received targeted ads on Facebook.

Plaintiff Black's allegations are equally lacking. Plaintiff Black alleges that she used KSB's website to locate her OBGYN's phone number and primary care doctor and used its "Online Platforms to communicate healthcare and identifying information to KSB." *Id.* ¶ 144, 146. Plaintiff Black also contends that she accessed the patient portal to view test results, schedule appointments, and track her prescriptions. *Id.* However, Plaintiff Black does not allege that she received any advertisements containing or derived from this alleged patient information or describe such advertisements. Nor does Plaintiff Black allege that KSB disclosed test results or prescriptions to Facebook. Her laundry list of information allegedly disclosed to Facebook, identical to Plaintiff Noftz, also lacks factual support. *Id.* ¶ 149. Plaintiff Black may have provided more detail about her activities on KSB's website, but she does not allege any actual disclosure of PHI or PII.

Plaintiff Weinstock's allegations do not reveal a disclosure of PHI or PII, either. Plaintiff Weinstock alleges that he used KSB's "Online Platforms" and the patient portal to manage treatments for kidney stones, make physical therapy appoints, generally manage pain, and view test results. *Id.* ¶ 154. And while Plaintiff Weinstock alleges that he "began to notice targeted ads for KSB hospitals' pain management classes[,]" *id.* ¶ 156, he still fails to allege whether these generalized ads contained information specific to the type of pain information contained within his portal records. Plaintiff Weinstock does not allege that he received any kidney stone-related ads, nor does he allege that KSB disclosed test results. And like with the other named Plaintiffs, Plaintiff Weinstock's listed allegations are devoid any factual support. *Id.* ¶ 161.

Each named Plaintiff fails to allege what PHI search terms they entered, what medical services they viewed, and where (in the portal or on an unauthenticated page) or when. Instead, Plaintiffs rely on hypothetical engagements with KSB's website which they contend show improper disclosure of PHI. However, Plaintiffs make no attempt to connect the fictitious colonoscopy, childbirth class, financial activity, and portal-related allegations to their own activity. Compl. ¶¶ 89-93 ("colonoscopy allegations"); 94-101 (childbirth class allegations"); 102-110 ("financial activity allegations"); 111-120 ("portal-related allegations"). If any of the named Plaintiffs personally experienced these issues, they would have so alleged.

But even if the Court considered these hypothetical allegations, they do not reveal any disclosure of PHI or PII. The colonoscopy allegations are not alleged to have resulted in "the patient" receiving any colonoscopy-related advertisement on Facebook. The childbirth class allegations do not include any allegation that Facebook used that information to advertise childbirth or maternity care or anything else for that matter. The financial activity allegations claim that KSB disclosed when "the patient" clicked on certain buttons, *id.* ¶¶ 103, 106, 109, but do not claim that any financial or medical information viewed during these clicks made their way to Facebook. "[I]nforming Facebook [of] the patient's click" does not equate to revealing PHI or PII. *Id.* ¶ 107. Finally, KSB's alleged revealing of when "a patient" clicked "LOG IN" on the portal page does not equate to revealing any information transmitted **within** the portal. Plaintiffs do not explain how sharing the act of a medical records request **outside the portal** reveals in-portal PHI or PII. *Id.* ¶¶ 114-116.

Plaintiffs' allegations fall far short of those deemed plausible in cases cited by Plaintiffs. Recognizing the vague and conclusory nature of their allegations, Plaintiffs attempt to conflate their insufficient claims with allegations from other "third party source code" cases which this

Court has allowed to proceed. But the allegations in these other matters are far more detailed than the recycled, ambiguous details in Plaintiffs' Complaint. In *Loyola*, one plaintiff alleged that she scheduled a surgical appointment through LUMC's online platform while simultaneously logged into her Facebook account, and then "began receiving targeted medical advertising related to said surgery on her social media accounts." *Loyola*, 2024 WL 3338941, at *2. The second *Loyola* plaintiff alleged that she researched specific providers who treat certain medical conditions, communicated with said providers, and also reviewed test results prescriptions on LUMC's platform, and then received "targeted medical advertising" related to those same medical conditions and specific prescriptions. *Id.*

Similarly, in *Hartley II* the plaintiff amended her complaint to allege that she was seeking specific medical specialists and specifically alleged that the ads sent to her were for "medications that were relevant to specific conditions for which she was being treated." *Hartley II*, 2024 WL 1886909 at *2. In *Kurowski IV*, the plaintiff alleged that Rush transmitted the name and location of her personal physician and the physician's specialty, and that this information was used to "target her with particular advertising associated with her particular health conditions." *Kurowski IV*, 2024 WL 3455020 at *2. In *Aspen Dental,* the plaintiffs "allege that Aspen, via the tracking devices employed on its webpages, transmitted Plaintiffs' patient status, medical conditions, information about their medical appointments and treatments, specific medical providers, and other sensitive health information to third parties. (FAC ¶ 173)." *Aspen Dental*, 2024 WL 4119153, at *3. On the other hand, here, Plaintiffs fail to allege what alleged PHI they entered, when, and where, and they make no attempt to connect these unknown factual details with any actual advertisements. Therefore, these cases are not a corollary to Plaintiffs' deficient allegations.

## II. PLAINTIFFS' ECPA CLAIMS FAIL (COUNTS VIII THROUGH X).

### A. The Crime Tort Exception Does Not Apply.

Plaintiffs acknowledge that KSB is a party to the allegedly intercepted communications but argue that the crime-tort exception applies. (Opp. at 5). In so arguing, Plaintiffs rely on *Loyola*, *Kurowski IV*, *Hartley II*, and *Aspen Dental. Id.* at 5-8. However, their arguments fail because (1) Plaintiffs do not plead that KSB had a criminal or tortious purpose to violate HIPAA; (2) they do not allege any tortious or criminal act independent of from the intercepting act, and (3) in any event, Plaintiffs fail to sufficiently allege any HIPAA violation.

First, Plaintiffs' own allegations state that "[t]he **sole purpose** for [KSB's] use of the Meta Pixel and other tracking technology was to **enhance its marketing efforts and increase its profits."** Compl. ¶ 206 (emphasis added). This allegation directly contradicts any assertion that KSB had a criminal or tortious purpose. Recently, in *Katz-Lacabe v. Oracle America, Inc.*, No. 22-cv-04792-RS. 2024 WL 1471299 (N.D. Cal. Apr. 3, 2024), the court rejected the argument that the Wiretap Act's tortious or criminal conduct exception should apply because "Plaintiffs fail to plausibly allege Oracle's underlying motivation in collecting and selling data about internet users was anything other than to generate revenue." *Id*. at *3 (citing *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 519 (S.D.N.Y. 2001); *In re Google Inc. Gmail Litig.*, No. 13–MD–02430–LHK, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014)). Accordingly, the crime-tort exception cannot apply upon a mere allegation of an intention to make money.

Second, the Court should also find that the crime-tort exception does not apply here "because neither the alleged HIPAA nor privacy violations were independent of the interception[.]" *Okash v. Essentia Health*, CV 23-482 (JRT/LIB), 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024) (third party tracker case); *see also Nienaber v. Overlake Hosp. Med. Ctr.*,

2:23-CV-01159-TL, 2024 WL 2133709, at *15 (W.D. Wash. May 13, 2024) ("Plaintiff fails to plead a tortious or criminal use of the acquired communications, separate from the recording, interception, or transmission") (third party tracker case). "[I]t is well established that" the crime-tort exception "only applies where the defendant allegedly committed a tortious or criminal act independent from the act of recording itself." *Kurowski v. Rush Sys. for Health (Kurowski II)*, 683 F. Supp. 3d 836, 844 (N.D. Ill. 2023) (citing *Caro v. Weintraub*, 618 F.3d 94, 99 (2d Cir. 2010)); *see also United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) (confining the crime-tort exception to "instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party").

Third, unlike the oft-amended complaints in *Kurowski IV*, *Hartley II, Aspen Dental*, and *Loyola*, as argued above, here Plaintiffs fail to specify what protected information was disclosed in violation of HIPAA. Plaintiffs argue that they alleged seeking specific medical treatments for a broken toe, kidney stones, pain management, and physical therapy. (Opp. at 6). But Plaintiffs do not allege any facts showing that their medical diagnoses, treatments, or actual providers' information were ever **disclosed**. Plaintiffs' allegations are thus "far too vague to allow an inference to be drawn that [the defendant] was actually disclosing IIHI as it is unambiguously defined by HIPAA, rather than just metadata." *Kurowski II*, 683 F. Supp. 3d at 843.

Because Plaintiffs allegations fall short of demonstrating the applicability of the crime-tort exception, the Court should dismiss Count VIII. For example, in *Kurowski III*, the court held that HIPPA violations could form the basis of the crime-tort exception **only** after the amended complaint added allegations that the defendant "transmitted the name and location of her personal physician, as well as her physician's specialty . . . [which] was used by at least Facebook to target her with particular advertising associated with her particular health conditions." 2023 WL 8544084

at *3. Similarly, in *Aspen Dental,* the Court found that "Plaintiffs' allegations regarding their individual experiences using Aspen's online platform…are sufficient to plausibly allege that Aspen disclosed information regarding their personal health conditions and treatments to third parties[,]" which was the only sufficient basis "to invoke HIPAA for purposes of the ECPA's crime-tort exception." *Aspen Dental*, 2024 WL 4119153, at *3. Plaintiffs do not plausibly link their disclosure of PHI or PII on KSB's website with any advertisements received from a third party such as Facebook. Thus, Plaintiffs' allegations cannot support a crime tort exception to the ECPA, notwithstanding the fact that other Courts have allowed different factual allegations to proceed past a motion to dismiss.

**B. KSB is Not an Electronic Communication Service ("ECS").**

Plaintiffs' interpretation of an "electronic communications provider" would subject every single business or person with a website to liability under 18 U.S.C. § 2511(3)(a). Plaintiffs are mistaken. Having a website does not mean KSB provided an electronic communication service to the world. The Federal Wiretap Act defines an ECS as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). An ECS is a service that enables users to send or receive electronic communications to or from other users, such as an email service provider or text messaging service. A business that merely provides a service that enables customers or users to communicate **with that business** is not an ECS. *See In re JetBlue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 307 (E.D.N.Y. 2005) (dismissing SCA claim because a company "does not become an 'electronic communication service' provider

simply because it maintains a website that allows for the transmission of electronic communications between itself and its customers").[1]

*In re BetterHelp, Inc. Data Disclosure*, 23-CV-01033-RS, 2024 WL 4504527, at *2 (N.D. Cal. Oct. 15, 2024) does not support Plaintiff's position. In declining to dismiss a stored communications ECPA claim, the *In re BetterHelp* court specifically noted that "[t]he distinction is that **BetterHelp does not merely receive its own customers'** communications electronically, it allegedly **facilitates two-way electronic communications between its customers and third-party therapists**." *Id.* 2024 WL 4504527, at *2 n.1 (emphasis added). There is no allegation that KSB facilitates communications between third parties on its website. Instead, Plaintiffs only allege that they communicated with KSB—and no one else—by engaging with KSB's website. For these reasons, the Court should dismiss Counts IX and X.

## III. PLAINTIFFS' CFAA CLAIM FAILS.

Plaintiffs fail to allege essential elements of a CFAA claim. Subsection (a)(2) of the CFAA provides in relevant part that "whoever ... (2) **intentionally accesses a computer without authorization or exceeds authorized access**, and thereby obtains ... (c) information from any protected computer"…shall be punished as provided in subsection (c) of this section." 18 U.S.C. §§ 1030(a)(2)(C) (emphasis added). Here, Plaintiffs only allege that KSB "**exceeded, and**

[1] *See also Andersen Consulting LLP v. UOP*, 991 F. Supp. 1041, 1043 (N.D. Ill. 1998) (dismissing ECPA claim because mere use of defendant's email system did not render it an electronic communication service provider); *State Wide Photocopy, Corp. v. Tokai Fin. Servs., Inc.*, 909 F. Supp. 137, 145 (S.D.N.Y. 1995) (explaining "Senate Report typifies three electronic communication services: a telephone company, an electronic mail company, and a company providing remote computing services"); *Dyer v. Northwest Airlines Corps.*, 334 F. Supp. 2d 1196, 1198 (D.N.D. 2004) (dismissing ECPA claim noting "Courts have concluded that 'electronic communication service' encompasses internet service providers as well as telecommunications companies whose lines carry internet traffic, but does not encompass businesses selling traditional products or services online").

**continues to exceed, authorized access** to Plaintiffs' and the Class Members' protected computers" in violation of Section 1030(a)(2)(C). Compl. ¶ 377 (emphasis added). Count XI therefore turns on whether Plaintiffs have plausibly alleged a CFAA claim under the "exceeds authorized access prong" of the statute.

Because Plaintiffs do not bring their CFAA claim under the "without authorization" prong, their reliance on *ACI Payments, Inc. v. Conservice, LLC*, No. 121CV00084RJSCMR, 2022 WL 622214, at *9 (D. Utah Mar. 3, 2022) is unavailing. In *ACI Payments*, the court determined that the plaintiff adequately pled under the "without authorization" prong by alleging that the defendant "had *no authority* whatsoever to use Speedway to submit payments on behalf of consumers." *Id.* (emphasis in original). *ACI Payments* does not support the argument Plaintiffs must make here, which is that they have stated a claim under the **"exceeds authorized access"** prong. Thus, the Supreme Court's holding in *Van Buren v. United States* remains on point: *Van Buren* precludes liability under the "exceeds authorized access" prong for those who use authorized access to a computer for an unauthorized purpose. 593 U.S. 374 (2021).

Plaintiffs' reliance on *United States v. Thompson* fares no better, and indeed, the case simply does not apply here. Case No. CR19-159RSL, 2022 WL 834026 (W.D. Wash. Mar. 21, 2022). In *Thompson*, the United States brought criminal charges under the CFAA's "without authorization" prong, and the court determined that whether having the technological capability to access a computer constitutes "authorization" is an issue for the fact finder to determine. *Id.* at *3-4. The case does not concern the civil Rule 12(b)(6) standard, and in any event, *Thompson* is not a CFAA "exceeds authorized access" case, either. *Moonlight Mountain Recovery, Inc. v. McCoy* differs from this case in several key manners. No. 1:24-CV-00012-BLW, 2024 WL 4027972 (D. Idaho Sept. 3, 2024). In *Moonlight Mountain*, the plaintiff brought a CFAA claim under both the

"without authorization" and "exceed authorized access" prongs. *Id.* at *3. And "[u]nlike the defendant in *Van Buren*, Minnig was not authorized to access some of the files he allegedly accessed." *Id.* On the other hand, here KSB falls squarely within *Van Buren* because Plaintiffs allege that KSB used its authorized access for an allegedly unauthorized purpose. For these reasons, Plaintiffs fail to allege an "exceeds authorized access" claim.

Next, even if Plaintiffs alleged a violation that was sufficient under the CFAA, they fail to adequately allege a loss. The CFAA defines two types of loss: "(1) reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and (2) any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11). Plaintiffs' hypothetical loss does not meet either definition. It is well settled that "damages for negligently inflicted emotional distress are far outside the CFAA's scope." *Turner v. Hubbard Sys., Inc.*, CV 12-11407-GAO, 2016 WL 1046949, at *12 (D. Mass. Mar. 10, 2016), *aff'd*, 855 F.3d 10 (1st Cir. 2017). Furthermore, Plaintiffs only recite the statutory requirements in Count XI which is inadequate to defend a motion to dismiss. *See Garelli Wong & Assocs., Inc. v. Nichols*, 551 F. Supp. 2d 704, 710-11 (N.D. Ill. 2008) (dismissing CFAA for failing to allege facts to show loss in excess of $5,000) Therefore, the Court should dismiss Count XI.

## IV. THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION.

Plaintiffs contend that this Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c). However, Plaintiffs have failed to allege subject matter jurisdiction under CAFA, and because Plaintiffs' federal question claims must be dismissed, the Court should decline to exercise supplemental jurisdiction and dismiss all state law claims.

First, Plaintiffs' relegation of jurisdiction under CAFA to a footnote is all but a concession that that have failed to adequately allege subject matter jurisdiction under 28 U.S.C. § 1332(d). Plaintiffs merely recite the elements of CAFA jurisdiction, but allege no facts permitting the Court to conclude that any putative class member is a resident of any state other than Illinois or that the class has more than 100 members. A "naked declaration that there is diversity of citizenship is never sufficient." *Thomas v. Guardsmark, LLC*, 487 F. 3d 531, 533 (7th Cir. 2007).

Second, Plaintiffs concede that if the ECPA and CFAA claims are dismissed, there is no longer federal question jurisdiction under 28 U.S.C. § 1331 but contend the Court should nonetheless exercise supplemental jurisdiction to decide the state law claims. (Opp. at 11-12). While the Court has discretion to exercise supplemental jurisdiction, both Supreme Court precedent and the customary practice of this court state that where federal claims are dismissed as the early stage of litigation – such as a motion to dismiss – the considerations of judicial economy and comity dictate the dismissal of supplemental claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Rocha v. FedEx Corp.*, 15 F. Supp. 3d, 796, 813 (N.D. Ill. 2014); *see also Wright v. Associated Ins. Cos. Inc.*, 29 F. 3d 1244, 1251 (7th Cir. 1994) ("[R]arely when a case is dismissed on the pleadings can 'judicial economy' be a good reason to retain jurisdiction.").

## V. PLAINTIFFS NEGLIGENCE AND NEGLIGENCE *PER SE* CLAIMS FAIL.

Plaintiffs have not sufficiently alleged a valid legal duty. Plaintiffs rely on *Petrillo v. Petrillo v. Syntex Labs., Inc.*, 148 Ill. App. 3d 581 (1st Dist. 1986) and *Best v. Taylor Mach. Works*, 179 Ill. 2d 367 (1997) to assert that KSB had a common law duty under Illinois law to protect PHI (Opp. at 15), and therefore specifically to this case, a duty to protect PHI entered on a public website from disclosure to third parties. (Opp. at 12). These cases provide no such duty.

In *Petrillo*, a civil defense attorney named Tobin appealed a trial court order finding him in contempt of court for violating a prior order barring him from engaging in *ex parte* conferences with the plaintiffs' treating physicians. *Petrillo*, 148 Ill. App. 3d at 585. The Appellate Court affirmed the contempt order, finding that modern public policy favors the confidential and fiduciary relationship between a patient and his physician. *Id.* at 587-88. In *Best*, the Illinois Supreme Court invalidated, under the separation of powers doctrine, a legislative act which would have required every patient who filed a personal injury lawsuit to agree to the unlimited disclosure of his or medical history, records and other medical information to any party who has appeared in the action and who requests such information. *Best*, 179 Ill. 2d at 433-449. *Petrillo* and *Best* stand for the existence of a fiduciary and confidential relationship between physician and patient – a relationship which KSB does not deny exists. These cases do not establish a duty for a physician or hospital to protect PHI entered on a public website outside of the physician-patient relationship.

Next, Plaintiffs assert that KSB owed a duty to protect PHI entered on their public website under *Flores v. Aon Corporation*, 2023 IL App (1st) 230140. (Opp. at 13). In *Flores*, a group of consumers and a former employee sued a cybersecurity services company (not a healthcare provider) for negligence and negligence *per se* arising out of a data breach which revealed the plaintiffs' Social Security numbers, dates of birth, and benefit enrollment information, among other data. *Id.* ¶ 4. Taking into account the legislature's 2017 amendment of the Personal Information Protection Act, 815 ILCS 530/1, *et seq.*, and the defendant's sophistication as a cybersecurity services company, the court found that the defendant had a common law duty to protect the personal information of its clients. *Flores* does not create a common law duty for healthcare providers to protect PHI freely entered on its public website by the general public.

Plaintiffs next rely upon *Martin by Martin v. Ortho Pharm. Corp.*, 169 Ill. 2d 234 (1996) to argue that the Food, Drug and Cosmetic Act, 21 U.S.C. § 301, *et seq.* ("FDCA") can establish a duty. (Opp. at 16). Plaintiffs' argument fails for three reasons. First, Plaintiffs do not assert their negligence *per se* claim based on any legal duty set forth under the FDCA. (Am. Compl. ¶¶ 200-205). Second, like the FTC Act and HIPAA, the FDCA does not confer a private right of action. 21 U.S.C. § 337(a); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001). Third, *Martin by Martin* holds the **exact opposite position** to what Plaintiffs contend the case stands for. In *Martin by Martin*, the Illinois Supreme Court concluded that FDA regulations do **not** serve as the basis for asserting a duty to warn contraceptive users of a drug's dangerous properties. *Martin by Martin*, 169 Ill. 2d at 243-44.

Second, Plaintiffs fail to allege breach or causation. Plaintiffs cite *Meck v. Paramedic Servs. Of Illinois*, 296 Ill. App. 3d 720, 730 (1998) and *Lopez v. Clifford Law Offices, P.C.*, 362 Ill. App. 3d 969, 983 (2005) to argue that it is improper to weigh causation at the motion to dismiss stage. (Opp. at 17-18). Plaintiffs improperly rely on state law cases to determining the Rule 12(b)(6) standard. In any event, Plaintiffs ignore that in *Meck*, the court was weighing a motion for summary judgment – not a motion to dismiss. Because Plaintiffs' supporting cases are unavailing, the Court should dismiss Plaintiffs' negligence and negligence *per se* causes of action (Counts I and II).

## VI. PLAINTIFFS' ILLINOIS EAVESDROPPING CLAIM FAILS.

Plaintiffs cite no authority that the Illinois Eavesdropping statute applies to anything other than *oral* communications. As this Court found in *Aspen Dental*, the plain language of the statute does not apply to electronic communications like a user's engagement with a particular website. *Aspen Dental*, 2024 WL 4119153, at *4.

The statute clearly distinguishes a "private electronic communication" from a "private conversation" by providing two separate definitions. 720 ILCS 5/14-1(d), (e). In contravention to the Court's holding in *Aspen Dental*, Plaintiffs argue that because the statute was amended at a time when the majority of communications were made via electronic means, that the Illinois legislature intended the statute to apply to both verbal and electronic communications. (Opp. at 23). That is not how statutory interpretation works. "Resort to legislative history…is only necessary if the language of the statute is ambiguous…." *Five Points Road Joint Venture v. Johanns*, 542 F. 3d 1121, 1128 (7th Cir. 2008). The legislature was clear when it defined "private conversation" to mean "any *oral* communication between 2 or more persons, whether in person or transmitted between the parties by wire or other means." 720 ULCS 5/14-1(d). None of the cases relied on by Plaintiff address this issue and the reasoning of *Aspen Dental* should apply.

The addition of 5/14-2(a)(5) does not change the analysis. The fact remains that liability cannot attached under the "private conversation" prong, because that applies only to *oral* communications and Plaintiff does not allege any such communication. Nor can liability attach under the "private electronic communication" prong those provisions only apply when the eavesdropper is not a party to the communication. Plaintiff conceded that KSB is a party to the communications between Plaintiff and their engagement with KSB's website. Accordingly, Plaintiffs' Illinois eavesdropping claim fails.

## VII. PLAINTIFFS' REMAINING STATE LAW CLAIMS FAIL.

***Breach of Express/Implied Contract***. "The Seventh Circuit has stated numerous times that 'Illinois law is clear that, to state a claim for breach of contract, one must be able to prove actual damage.'" *Kurowski IV*, 2024 WL 3455020, at *7 (quoting *TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 631 n.6 (7th Cir. 2007) (citing other cases)). "Merely showing that

a contract has been breached without demonstrating actual damage does not suffice, under Illinois law, to state a claim for breach of contract." *TAS Distributing Co.*, 491 F.3d at 631. Here, Plaintiffs have not plausibly alleged that they have suffered damage so as to give rise to a breach of express or implied contract claim.

***Unjust Enrichment.*** Plaintiffs' unjust enrichment claim rests on the same misconduct alleged in their other causes of action and will therefore stand or fall with their related claims. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Because Plaintiffs' other claims concern the same alleged disclosures, their unjust enrichment claim fails on the same grounds. Furthermore, as argued above, Plaintiffs fail to provide any specificity as to what "valuable sensitive medical information" it provided to KSB. Compl. ¶ 289. Consequently, the Court has no way of determining what benefit, if any, Plaintiffs conferred onto KSB.

***Bailment.*** "The predominant view across the country is that bailment is not a viable theory in data breach cases." *McLaughlin v. Taylor Univ.*, 1:23-CV-00527-HAB-SLC, 2024 WL 4274848, at *12 (N.D. Ind. Sept. 23, 2024) (citing *Galaria v. Nationwide Mut. Ins.,* 2017 WL 4918634, at *1 (S.D. Ohio Oct. 31, 2017) (collecting cases)). This for good reason. Under no set of facts can Plaintiffs show that they were somehow excluded from possession of their own data. Indeed, Plaintiffs were and are free to do whatever they want with their PHI and PII. The Court cannot say KSB exclusively possessed it. Lacking that essential element, Plaintiffs' bailment claim should be dismissed.

## CONCLUSION

For the foregoing reasons, as well as those contained in KSB's opening brief, the entirety of Plaintiffs' Complaint should be dismissed.

This 20th day of December, 2024.

Respectfully submitted,

***/s/ Sanjay S. Karnik***
Sanjay S. Karnik
Ill. Reg. No. 6300156
Brittany M. Cambre*
Brandi Z. Burton-Murrain
Ill. Reg. No. 6323698
CHILIVIS GRUBMAN, LLP
159 N. Sangamon Street, Suite 313A
Chicago, IL 60607
Tel: (872) 260-6679
Fax: (404) 261-2842
skarnik@cglawfirm.com
bcambre@cglawfirm.com
bmurrain@cglawfirm.com

*Counsel for Defendant KSB Hospital*

**pro hac vice forthcoming*

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of December 2024, I have caused the electronic filing of the foregoing document described as **REPLY IN SUPPORT OF DEFENDANT KSB'S HOSPITALS RULE 12(b)(6) AND 12(b)(1) MOTION TO DISMISS** through the CM/ECF system, which will serve all parties of record.

***/s/ Sanjay S. Karnik***
Sanjay S. Karnik