UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHLOE NOFTZ, TONYA BLACK AND KENNETH WEINSTOCK, on behalf of themselves and all others similarly situated, <br><br> Plaintiff <br><br> v. <br><br> KSB HOSPITAL FOUNDATION D/B/A KSB HOSPITAL F/K/A KATHERINE SHAW BETHEA HOSPITAL, <br><br> Defendant. | Case No. 1:24-cv-08100 <br><br> Hon. Martha M. Pacold |

**PLAINTIFFS' SUPPLEMENTAL BRIEF ON JURISDICTION & STANDING**

Pursuant to this Court's September 29, 2025, order, D.E. 28, Plaintiffs Chloe Noftz, Tonya Black, and Kenneth Weinstock (collectively, "Plaintiffs") respectfully submit this supplemental brief on jurisdiction. Plaintiffs have standing in this case, and the injury they assert sufficiently resembles traditional bases for suing in American courts (namely, intrusion upon seclusion and related torts). The motion to dismiss should be denied, and this case should proceed into discovery.

**FACTUAL & PROCEDURAL BACKGROUND**

Plaintiffs filed this case on September 5, 2024. D.E. 1. On November 8, 2024, Defendant KSB Hospital ("Defendant" or "KSB") moved to dismiss, and Plaintiffs responded. D.E. 12, 16, 17. On September 11, 2025, this Court held in-person oral argument on KSB's motion to dismiss. D.E. 21, 25, 29. On September 29, 2025, this Court struck KSB's motion to dismiss and directed the parties to submit briefs regarding Plaintiffs' standing to sue in federal court. D.E. 28. The Court's order pointed the parties to several Seventh Circuit cases

1

and this Court's ruling in *M. v. Advanced Reproductive Health Center, Ltd.*, Case No. 1:24-cv-07559, D.E. 42.

This is a case about a hospital becoming a dealer in data. Several facts from the operative complaint are pertinent here and are presumed to be true. *Sobitan v. Glud*, 589 F.3d 379, 380 n.2 (7th Cir. 2009). Plaintiffs sought treatment at KSB Hospital for a broken toe (Plaintiff Noftz), for obstetrics and primary care services (Plaintiff Black), and for kidney stones, physical therapy, and pain management (Plaintiff Weinstock). D.E. 1 at ¶¶ 132, 144, 155. KSB Hospital sold each Plaintiff's private information to tech companies like Facebook. D.E. 1 at ¶¶ 124, 138, 135, 146, 149, 155, 161. KSB disclosed to Facebook information about patients' search, browsing, financial, and portal activities, including when a patient requests medical records outside the patient portal. D.E. 1 at ¶¶ 111–115. Plaintiffs did not consent to this intrusion or the disclosure of their private information to third parties uninvolved in their treatment. D.E. 1 at ¶¶ 24, 125. The information KSB shared was private and protected by HIPAA. D.E. 1 at ¶¶ 3, 15, 20, 21, 138, 149, 161. Plaintiffs each suffered a variety of damages, including loss of privacy, receiving targeted ads that reflect their private medical information, and emotional distress, among others. D.E. 1 at ¶¶ 140, 151, 163.

## ARGUMENT

The Court's September 29 order requested that the parties brief the issue of whether Plaintiffs have alleged a traditionally recognized harm. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) ("Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including (as relevant here) reputational harm."). This analysis is part of the traditional tripartite test for

2

showing standing, touching on the first element: concrete injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."). Plaintiff must allege each element of standing. *Id.*

In *TransUnion*, the Supreme Court restated Article III's standing principles and applied them to claims involving a "risk of future harm." 141 S. Ct. at 2210. The *TransUnion* plaintiffs alleged TransUnion violated the Fair Credit Reporting Act by mislabeling them as "terrorists, drug traffickers, or other serious criminals" in their credit reports. *Id*. at 2201. The Court noted that TransUnion shared some reports with third parties, but not all, separating the plaintiffs into two camps for standing purposes. *Id*. at 2209. For the first camp, the Court had "no trouble concluding" they had standing because TransUnion disclosed the "misleading" reports to third parties. *Id*. (those plaintiffs "suffered a harm with a 'close relationship' to the harm associated with the tort of defamation"). But for the second camp, the Court declined to find standing because no one viewed their reports, and any "risk of dissemination to third parties" was "too speculative to support Article III standing." *Id*. at 2212. What's more, the plaintiffs in the second camp had not alleged a "disclosure of private information" or an "emotional injury" stemming from the risk that may happen, meaning they suffered no harm and had no "material risk of concrete harm." *Id*. at 2212 (internal quotation omitted). In other words, plaintiffs in the second camp did not have standing because TransUnion had not disclosed their reports and was unlikely to disclose them.

KSB contests standing because it misinterprets the camp Plaintiffs fall in. Plaintiffs are not like the *TransUnion* plaintiffs in the second camp, whose information was never disclosed, viewed, or taken by anyone. Quite the opposite, Plaintiffs allege their PHI was disclosed to

3

data brokers without their permission. In other words, Plaintiff are not alleging they are "at risk" for harm, they have *already* suffered harm.

These allegations not only meet the standard set in *TransUnion*—they exceed it. District courts applying *TransUnion* to privacy cases find that privacy victims have standing when their data is disclosed, as the harm they suffer bears a "close relationship" to the "disclosure of private information" or an "intrusion" to their privacy—"traditional" harms that establish standing. *See Bohnak v. Marsh & McLennan Cos., Inc.*, 580 F. Supp. 3d 21, 30 (S.D.N.Y. Jan. 17, 2022) ("in light of the TransUnion Court's admonition that common-law analogs need not provide 'an exact duplicate,'… I find the fit sufficiently close."); *In re Pawn Am. Consumer Data Breach Litig.*, No. 21-CV-2554 (PJS/JFD), 2022 WL 3159874, at 3 (D. Minn. Aug. 8, 2022) (same); see also *Clemens v. ExecuPharm Inc.*, No. 21-1506, 2022 WL 4005322, at 7 (3d Cir. Sept. 2, 2022) (the alleged injury was "concrete, because the harm involved is sufficiently analogous to harms long recognized at common law like the "'disclosure of private information.'") (citing *TransUnion*, 141 S. Ct. at 2204); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. CV 19-MD-2904, 2021 WL 5937742, at 9 (D.N.J. Dec. 16, 2021) (citing *TransUnion*, 141 S. Ct. at 2204) (same). Indeed, even if "no common-law tort specifically protects against the disclosure of a person's" information, the Supreme Court has recognized that both the "common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person." *United States DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763 (1989).

Under these principles, the concrete injury requirement is satisfied here because Plaintiffs' injuries are closely related to the traditional intangible harms of intrusion upon

4

seclusion, invasion of privacy, and disclosure of private information. Taking private medical information about appointments, treatments, and communications and selling it to Facebook for money violates Plaintiffs' privacy and confers standing, as elaborated below.

I.  **Plaintiffs Have Standing Under Seventh Circuit Precedent.**

The Court need not imagine why disclosing a person's medical information without their consent harms them. Plaintiffs suffered an injury in fact, namely, that their private information was disclosed beyond the bound of the law or their consent. That conduct is traceable to KSB, the entity that did the sharing. And the injury can be redressed because this Court can award relief under any of the statutes or common law theories alleged by Plaintiffs in their complaint. All three Plaintiffs thus have the classic "personal stake in the outcome" that the standing analysis requires to invoke federal jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 498 (1975).[1]

The Seventh Circuit's cases applying standing principles consist with *TransUnion*. *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 734 (7th Cir. 2023). *Nabozny* repeated that "privacy harms like intrusion upon seclusion and giving publicity to private information" confer standing. *Id*. And while the Seventh Circuit did not find standing established in that case, it was because the information disclosed was in a "private" communication between third-parties, a creditor and debt collector. *Id.* at 735 ("Nabozny's complaint is devoid of any allegations that Optio made her private information public. Rather, she alleges no more than

---

[1] Indeed, concurring in *Spokeo* and citing to *Warth v. Seldin*, Justice Thomas wrote: "A plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 3485 (2016) (Thomas, J., concurring). This case includes claims under the Electronic Communication Privacy Act. D.E. 1 at ¶¶ 326–374. Pursuant to 18 U.S.C. § 2520, Plaintiffs could be entitled to damages of $100 per day for those claims. Plaintiffs have alleged that KSB violated a right created by Congress and that they were harmed by that violation. *E.g.*, D.E. 1 at ¶¶ 140, 151, 163. They have standing.

the following: Optio disclosed pieces of her private debt information to RevSpring, and RevSpring used this information to populate a form collection letter and sent it to Nabozny"). She did not allege defendant "intruded" on her privacy or that the disclosure risked dissemination beyond the debt collector. *Id*. That is apples and oranges to what happened here.

Here, Plaintiffs allege that their *medical* information was sold to a wide variety of other entities. D.E. 1 at ¶¶ 124, 138, 135, 146, 149, 155, 161. Sending information about routine credit card debt to a collection agent, *Nabozny*, 84 F.4th at 733 ("In July 2020 Nabozny received a letter at her home in Ashland County, Wisconsin, offering to settle an unpaid credit-card debt. The letter summarized basic information about her debt: the creditor, the outstanding balance, the account number, and her name and address."), cannot compare when KSB violated HIPAA by sending their data to tech companies who will then pelt Plaintiffs with targeted ads. D.E. 1 at ¶¶ 19, 133, 140, 151, 156, 163. The Seventh Circuit found that Nabozy's injury did not sufficiently resemble the common law tort of publicly disclosing private information, but only because the information at issue lacked sensitivity. *Nabozny*, 84 F.4th at 736 ("The public-disclosure form of the privacy tort protects against the humiliation that accompanies the disclosure of sensitive or scandalizing private information to public scrutiny."). Exchanging name, address, and collection amounts does not implicate the same privacy concerns as PHI does.

Not only is the information at issue here sensitive (the *most* sensitive, because it is health-related information), but it was disclosed whose stock and trade is selling data on the open marketplace. The articulable harm here to these Plaintiffs is that their most sensitive information went to parties known for sharing that had nothing to do with the original conveyance of the information from patient to medical provider. Restatement (Second) of

6

Torts § 652D (1977) ("[A]ny publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give publicity within the meaning of the term as it is used in this Section."). Disclosing biometric data without consent constitutes a concrete injury. *Cothron v. White Castle Sys.*, Inc., 20 F.4th 1156, 1161 (7th Cir. 2021) ("The same reasoning applies to section 15(d), which prohibits the disclosure, redisclosure, or dissemination of a person's biometric data without consent, an act that invades his private domain just as surely as an unconsented collection or retention does."). The facts alleged here resemble *Cothron* more than *Nabonzy*.

The standing inquiry commands that federal courts hear only cases where injuries are not abstract. Taking private data and selling it disrupts the provider-patient relationship is a "disclosure" that harms Plaintiffs. D.E. 1 at ¶¶ 3, 140, 151, 163. That harm alone confers standing, though it also constitutes an "intrusion" on Plaintiffs' privacy, as elaborated below.

## II. This Court's Decision in *M. v. Advanced Reproductive Health Center* Confirms Plaintiffs Have Standing.

This Court's decision in *M. v. Advanced Reproductive Health Center, Ltd.*, Case No. 1:24-cv-07559, D.E. 42, also found that these elements were met in another medical pixel case on similar facts. That case also involved a request to schedule appointments, as here. *Compare* Case No. 1:24-cv-07559, D.E. 27 (amended complaint) at ¶¶ 37, 41, 96, 111, *and* D.E. 42 (transcript of motion to dismiss ruling) at 4:18 (discussing appointments), *with* D.E. 1 (complaint in this case) at ¶¶ 41, 144, 155 (also discussing appointments). As this Court found, the classic common law injury of "disclosure of private information" is sufficient to confer standing. Case No. 1:24-cv-07559, D.E. 42 at 6:19-20, 8:13-24 (citing caselaw). And this Court repeated the principle that the disclosure of private information has been traditionally

recognized in American courts. *TransUnion*, 594 U.S. at 425 (citing *Davis v. Federal Election Comm'n*, 554 U.S. 724, 733 (2008)). *Compare Nabozny*, 84 F.4th at 735 ("Nabozny's complaint is devoid of any allegations that Optio made her private information public."), *with* D.E. 1 at ¶¶ 111-115, 124, 138, 135, 146, 149, 155, 161. As this Court has already found, "[f]acts regarding infertility are inherently private." Case No. 1:24-cv-07559, D.E. 42 at 9:9-10. That same reasoning applies with equal force to other private medical information too.

Consistent with *TransUnion* and Seventh Circuit precedent, this Court also found allegations that resemble the instant case sufficiently related to the common law tort of "intrusion upon seclusion." Case No. 1:24-cv-07559, D.E. 42 at 13:19-22 ("Here, by contrast, the recipients of plaintiffs' information are large technology companies whose business models revolve around using information gather about an individual to sell ad space to additional third parties"); *see also TransUnion*, 594 U.S. at 425 (citing *Gadelhak v. AT&T Services, Inc.*, 950 F.3d 458, 462 (7th Cir. 2020) (Barrett, J.)). "[A] third party who surreptitiously listens in on a private conversation with only one party's consent intrudes upon the seclusion of the other party…That is what plaintiffs alleged here, that Meta and Google 'listened in' on plaintiffs' private communications with defendant." Case No. 1:24-cv-07559, D.E. 42 at 16:22-17:2. Identical allegations are present here, and so the inquiry commanded by *TransUnion* into concreteness is satisfied. *TransUnion*, 594 U.S. at 442 ("No concrete harm, no standing.").

The other elements of standing are simple. Particularity is satisfied "because it was their own [Plaintiffs'] information that was allegedly disclosed." Case No. 1:24-cv-07559, D.E. 42 at 18:11-12. The injury is actual because it has already occurred. *Id.* Traceability is satisfied because "it was the defendant who installed the tracking technologies on their website

8

and configured them to disclose the information." Case No. 1:24-cv-07559, D.E. 42 at 19:5-7. Redressability is satisfied because the Court can award damages or enjoin the action. Case No. 1:24-cv-07559, D.E. 42 at 19:9-14.

As the Court recognized in its September 29 order, its ruling in *M* is not binding on the parties here. D.E. 28. But it is difficult to ignore the similarities between that case and this one. Both cases seek relief under the Electronic Communications Privacy Act, 18 U.S.C. § 2511, through negligence and unjust enrichment claims, and the Illinois Eavesdropping statute, 720 ILCS § 5/14. *Compare* D.E. 1 at 60, 69, 71, 76, PageID# 60, 69, 71, 76, *with* Case No. 1:24-cv-07559, D.E. 27 at 48, 55, 57, 58, PageID# 199, 206, 208, 209. Both are medical pixel cases. Plaintiffs have standing here, just as plaintiffs did in *M*.

This Court is not the only Court in this District or this Circuit to conclude that Plaintiffs in medical pixel cases have standing. *Smith v. Loyola Univ. Med. Ctr.*, No. 23 CV 15828, 2024 WL 3338941, at *4 (N.D. Ill. July 9, 2024) ("Here, the plaintiffs have adequately pleaded injury-in-fact based on the alleged disclosure of their medical information that, at this stage, is sufficient to confer standing to seek both damages and injunctive relief.") (analyzing disclosure of sensitive health information as having a close relationship with the common law theory of disclosure of private information); *Florence v. Ord. Express, Inc.*, 674 F. Supp. 3d 472, 480 (N.D. Ill. 2023) ("Since disclosure of private information is a sufficiently close common-law analogue for Plaintiffs' alleged harm, the injury is concrete.") (citing *TransUnion*). Other courts around the country have found the same. *See, e.g.*, *Doe v. Shady Grove Reproductive Science Center, P.C.*, No. 24-CV-2368-ABA, 2025 WL 2781542, at *3 (D. Md. Sept. 30, 2025) ("That is because Plaintiffs *have* alleged that Shady Grove, by installing the tracking software onto its website, effectively directed that Plaintiffs' personally

9

identifiable information be transmitted to the Analytics Companies. This is sufficient to allege a cognizable injury in fact.") (emphasis in original); *Doe v. Tenet Healthcare Corp.*, No. 1:23-CV-01106-DC-CKD, __ F.Supp.3d __, 2025 WL 1635956, at *11 (E.D. Cal. June 9, 2025) ("Namely, Plaintiffs Jane Doe, Jan Doe, John Doe, and James Doe each allege facts showing they used Defendants' Web Properties, submitted personal information, and Defendants invaded their privacy rights by disclosing their information to third parties without consent through the use of tracking technology embedded on Defendants' Web Properties.") (plaintiffs' allegations were sufficient to show standing).

To hold otherwise would be to deny that patients have a privacy interest in their medical information—a notion this Court should reject considering the above precedent. Aa a result, the Court should find Plaintiffs have standing.

## CONCLUSION

It is worth noting that KSB did not originally argue that Plaintiffs lacked standing beyond a few sentences of undeveloped argument in its motion to dismiss. D.E. 12-1 at 20, PageID# 151 (briefly referencing Rule 12(b)(1)); 29, PageID# 159 (alleging no injury in fact because complaint did not allege monetary damages cognizable under Illinois law). True enough, subject matter jurisdiction may be raised at any time, and sua sponte, as here. *Craig v. Ontario Corp.*, 543 F.3d 872, 875 (7th Cir. 2008). But KSB is a sophisticated litigant that made deliberate choices about how to frame its motion to dismiss. It chose not to raise standing because Plaintiffs have standing. That choice is telling.

In further support of their opposition to KSB's motion to dismiss, Plaintiffs respectfully draw the Court's attention to two medical pixel cases in this State where plaintiffs prevailed on motions to dismiss. *Gittings-Barrera v. Memorial Hospital Association*, No.

10

4:24-CV-04167-SLD-RLH, 2025 WL 2776142 (C.D. Ill. Sept. 26, 2025); *Doe v. Deaconess Illinois Union County Hospital, Inc.*, No. 3:24-CV-02284-NJR, 2025 WL 2771415 (S.D. Ill. Sept. 29, 2025).

The motion to dismiss should be denied.

Dated: October 21, 2025     Respectfully submitted,

/s/ Michael C. Tackeff
J. Gerard Stranch, IV (*Pro Hac Vice*)
Michael C. Tackeff (*Pro Hac Vice*)
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
gstranch@stranchlaw.com
amize@stranchlaw.com

Lynn A. Toops (*Pro Hac Vice*)
COHEN & MALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenandmalad.com

Samuel J. Strauss, Bar No. 6340331
Raina Borelli (*Pro Hac Vice* forthcoming)
STRAUSS BORELLI PLLC
908 N. Michigan Avenue, Suite 1610
Chicago Illinois 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

**Counsel for Plaintiffs and the Proposed Class**

## CERTIFICATE OF SERVICE

It is hereby certified that a true and accurate copy of the foregoing was this 21st day of October, 2025, filed using the CM/ECF system, which will electronically serve all counsel of record.

 

                                            */s/ Michael C. Tackeff*
                                            Michael C. Tackeff

                                            *Counsel for Plaintiffs and the Proposed Class*