IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHLOE NOFTZ, TONYA BLACK and KENNETH WEINSTOCK, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>KSB HOSPITAL FOUNDATION d/b/a KSB HOSPITAL F/K/A KATHERINE SHAW BETHEA HOSPITAL,<br><br>Defendant. | Case No. 1:24-cv-08100 |

**DEFENDANT KSB HOSPITAL'S RESPONSE IN OPPOSITION TO PLAINTIFFS' SUPPLEMENTAL BRIEF ON JURISDICTION & STANDING**

Pursuant to the Court's minute entry order of September 29, 2025 (Dkt. 28), Defendant KSB Hospital[1] responds in opposition to the Plaintiffs' Supplemental Brief on Jurisdiction & Standing (Dkt. 30, "Plfs. Br."), respectfully showing as follows:

## I. INTRODUCTION

The Complaint indeed suffers from a "jurisdictional defect." Dkt. 28. Plaintiffs lack Article III standing because they have not alleged any concrete injury-in-fact, and consequently, Supreme Court and Seventh Circuit precedent dictates dismissal of this lawsuit.

First, Plaintiffs fail to allege any individualized, concrete injury-in-fact. The Complaint is riddled with hypothetical and fictitious scenarios involving mythical patients but devoid of any plausible allegations regarding Plaintiffs' own conduct or injuries. During the September 11, 2025

[1] Defendant has informed Plaintiffs that KSB Hospital Foundation is a distinct entity from Katherine Shaw Bethea Hospital, which was the not-for-profit hospital located in Dixon, Illinois. Dkt. 12. Following a merger and acquisition, the new proper name for Defendant should be OSF Healthcare System d/b/a OSF Saint Katharine Medical Center. Dkt. 20. For the convenience to the parties, Defendant will continue to refer to itself as KSB Hospital as identified in the Complaint. Defendant reserves all rights, privileges, and defenses with respect to the incorrect party name.

hearing, Plaintiffs conceded that much of their sprawling 87–page complaint consists of hypotheticals merely "illustrative" of their theory. In the few instances where Plaintiffs attempt to personalize their injury, their allegations are too vague and conclusory to support any injury-in-fact. Plaintiffs do not identify what personal health information ("PHI") they entered on KSB's website, nor do they specify when or where they entered such information, when they received the alleged advertisements on Facebook, what these advertisements said, or what harm they personally suffered as a result. Instead, Plaintiffs recycle claims from other online tracking cases hoping that the Court will overlook their insufficient allegations. This scattershot approach cannot substitute for the constitutional requirement of a concrete injury-in-fact. Lacking factual allegations showing a real or particularized injury to them, Plaintiffs' Complaint relies on speculation and generalized grievances. Because they have failed to plead a concrete injury, dismissal is required for lack of standing.

Second, Plaintiffs misinterpret and misapply Supreme Court and Seventh Circuit precedent, which dictates dismissal of their Complaint for lack of standing. Plaintiffs contend that they satisfy Article III standing by analogizing their alleged injury to the common law tort of intrusion upon seclusion and related privacy claims. But their Complaint fails to allege any widespread publicized disclosure of their PHI sufficient to confer standing. "A person commits this civil wrong" only "if he 'gives publicity' to a matter that concerns 'the private life of another,' is 'highly offensive to a reasonable person,' and is not of legitimate public concern." *Nabozny v. Optio Sols. LLC*, 84 F.4th 731, 735 (7th Cir. 2023) (citation omitted). Plaintiffs allege that they disclosed PHI on KSB's website, and that this PHI then turned into an advertisement on their Facebook feed (and not anywhere else). This act, even if sufficiently alleged, does not qualify as an intrusion or disclosure of private fact. Therefore, given the lack of factual support showing what

PHI (if any) was disclosed to Meta, Plaintiffs' negligence, breach of contract, and wiretap causes of action are a square peg which do not fit into the round hole of a public disclosure of private facts. Third, none of the other "Meta Pixel" cases which Plaintiffs cite can salvage their Complaint. The facts giving rise to injury-in-fact, and thus Article III standing, in those cases are more detailed than the boilerplate, conclusory facts asserted by Plaintiffs here.

After voluntarily dismissing an almost identical lawsuit in state court, Plaintiffs pivoted to forum shopping in federal court. Yet their Complaint remains fatally defective because it lacks the injury-in-fact necessary to confer Article III standing. For these reasons, explained fully below, the Court should dismiss the Complaint for lack of standing.

## II. LEGAL STANDARD

Article III "confines the federal judicial power to the resolution of "Cases" and "Controversies." For there to be a case or controversy under Article III, the plaintiff must have a "'personal stake'" in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Standing has three elements. "A plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id*. "Under Article III, federal courts do not adjudicate hypothetical or abstract disputes." *Id*. Without "an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019). As "[t]he party invoking federal jurisdiction," Plaintiffs bear the burden of establishing Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Furthermore, any named plaintiff seeking to represent a class must personally satisfy these requirements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016). "Article III does not give federal courts the power to order

relief to any uninjured plaintiff, class action or not." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C.J., concurring).

## III. ARGUMENT

### A. Plaintiffs Do Not Allege a Concrete Injury-In-Fact.

To be concrete, an injury must be "real, and not abstract." *Spokeo*, 578 U.S. at 340 (quotation marks omitted). Tangible harms like monetary and physical harms are the most obvious, but "[v]arious intangible harms can also be concrete." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). When a plaintiff's claim involves an allegation of intangible harm, the injury-in-fact inquiry turns on whether the harm "has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* (quoting *Spokeo*, 578 U.S. at 341). Examples include reputational harms, privacy harms like intrusion upon seclusion and giving publicity to private information, and "harms specified by the Constitution itself." *Id.*

Here, Plaintiffs do not allege any injury-in-fact which bears a close relationship to an invasion of privacy tort. Plaintiffs contend that "several facts from the operative complaint are pertinent" to standing, but a careful reading of their individual allegations do not reveal any injury which can be considered concrete, particularized, and actual or imminent. Plfs. Br. at 2. Plaintiff Noftz alleges that she utilized KSB's "Online Platforms" to manage treatment for a broken toe and check medical bills and test results, but the "targeted ads" she allegedly received were not related to foot or fracture treatments, but rather "Defendant's health plans." Compl. ¶¶ 132-133. Plaintiff Noftz alleges no facts supporting that KSB disclosed specialties and names of medical providers she searched and viewed, nor does she provide any factual detail about what searches she made and what "search results" she clicked on or what medical services she viewed. *Id.* ¶ 138(e)-(h).

Plaintiff Noftz also fails to allege when she visited the KSB Online Platforms, what PHI or PII she entered, and when she received targeted ads on Facebook.

Plaintiff Black alleges that she used KSB's website to locate her OBGYN's phone number and primary care doctor and used its "Online Platforms to communicate healthcare and identifying information to KSB." *Id.* ¶ 144, 146. However, Plaintiff Black does not allege that she received any advertisements containing or derived from this alleged patient information or describe such advertisements. Plaintiff Black also provides no factual detail about what searches she made and what "search results" she clicked on or what medical services she viewed. *Id.* ¶ 149(e)-(h). Plaintiff Weinstock alleges that he "began to notice targeted ads for KSB hospitals' pain management classes[,]" *id.* ¶ 156, but he fails to allege whether these generalized ads contained information specific to the type of pain information contained within his portal records. Plaintiff Weinstock does not allege that he received any kidney stone-related ads.

None of these allegations establish a concrete injury-in-fact because they simply describe the reason Plaintiffs went to the KSB website without explaining what happened to them. Claiming, without factual detail, that information "related to" medical care may have been transmitted to Meta is not equivalent to alleging that medical records, financial data, or other PHI/PII were extracted from the portal and disclosed. Nor does it amount to publicity of Plaintiffs' private lives that would be highly offensive to a reasonable person. *Nabozny*, 84 F.4th at 735; *see also Dinerstein v. Google*, *LLC*, 73 F.4th 502, 513 (7th Cir. 2023) ("Dinerstein has identified no case in which a court has permitted a plaintiff to bring a public-disclosure tort premised on the dissemination of *anonymized* information.") (emphasis in original). For these reasons, Plaintiffs' negligence claims and claims touching on privacy (Counts I, II, and VII through XI) are not supported by any concrete, particularized, or actual injury. Likewise, Plaintiffs' vague allegations

fail to support standing for their contract-based claims (Counts III through VI) because "a breach of contract alone—without any actual harm—is purely an injury in law, not an injury in fact. And it therefore falls short of the Article III requirements for a suit in federal court." *Dinerstein*, 73 F.4th at 522.

As the Supreme Court made clear in *TransUnion*, Article III requires a concrete injury, not merely a bare statutory or procedural violation untethered from real-world harm. *TransUnion*, 594 U.S. at 425. Here, Plaintiffs allege no concrete injury-in-fact because they do not allege what PHI they entered, where and when they entered it, what advertisements they received on Facebook, and when they received them. Nor do they allege any real, concrete harm done unto to them.

### B. Plaintiffs Misinterpret *TransUnion* and *Nabozny*.

*TransUnion* and *Nabozny* do not support Plaintiffs' arguments for finding Article III standing. First, Plaintiffs do not compare favorably to the 1,853 class members who established Article III standing in *TransUnion*. In *TransUnion*, the defendant credit reporting agency reported, through credit reports, to third party businesses that 1,853 class members were on a Department of Treasury watch list of terrorists, drug traffickers, and serious criminals. *TransUnion*, 594 U.S. at 432. The Supreme Court held that those 1,853 class members suffered a concrete injury-in-fact because "the harm from a misleading statement of this kind bears a sufficiently close relationship to the harm from a false and defamatory statement." *Id.* at 433.

On the other hand, here, Plaintiffs' allegations—that their PHI was disclosed to a third-party source code which then sent back advertisements **only to Plaintiffs**—fall far short of a defamatory act. Even if Plaintiffs had alleged what PHI they entered on KSB's platforms, and even if they adequately described receiving advertisements corresponding to their PHI (which they have not), it still does not rise to the level of the statements contained in the *TransUnion* credit reports

calling those class members terrorists and criminals, which are well-established to be defamatory. If anything, Plaintiffs more closely align with the 6,332 *TransUnion* class members whose credit files containing the terror listing were not provided to businesses[2] because Plaintiffs do not allege that their PHI (to the extent it can be determined what that is) was published on a widespread basis to others. Moreover, Plaintiffs' reliance on statutory violations is unavailing. In *TransUnion*, the Supreme Court squarely rejected the notion that "a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *TransUnion*, 594 U.S. at 426. Once again, Plaintiffs cannot square the round hole.

Second, the Seventh Circuit's *Nabozny* decision does not support Plaintiffs' standing argument, either. In *Nabozny*, the plaintiff alleged that the defendant used a third-party mail vendor to send her (and importantly, **not a third party**) a letter seeking to collect a defaulted credit card debt. *Nabozny*, 84 F.4th at 732. The Seventh Circuit rejected the Nabozny's standing argument attempting to analogize her case to privacy torts because "Nabozny's complaint is devoid of any allegations that Optio made her private information public[]" – that is, a communication to the public at large or to so many persons that the matter must be certain to become one of public knowledge. *Id.* at 735.

Likewise, here, Plaintiffs do not allege a widespread public dissemination of their purported PHI. Plaintiffs do not allege, for example, that Meta advertised to the world that KSB Hospital treated Plaintiff Noftz's broken toe or Plaintiff Weinstock's kidney stones. Accordingly, even if the Complaint sufficiently alleged that they received advertisements containing their PHI (which it does not), Meta indeed acts more like the mail vendor in *Nabozny* than a widespread

---

[2] *TransUnion*, 594 U.S. at 433.

disseminator of Plaintiffs' private information. Just like the plaintiff in *Nabozny*, Plaintiffs allege a dissemination of private information only to themselves. In any event, Plaintiffs do not allege that their medical records, financial information, or other PHI/PII were ever taken from the patient portal and transmitted to Facebook. Instead, their Complaint relies on generic allegations supplemented by fictitious scenarios, which cannot establish a concrete injury-in-fact.

Here, Meta's alleged disclosures of PHI to Plaintiffs (and importantly, to no one else) are precisely like that of the mail vendor in *Nabozny*. Plaintiffs do not allege that KSB "gave publicity to" matters concerning their private life that would be found "highly offensive to a reasonable person" because Plaintiffs do not even adequately allege what private information, if any, was disclosed. *TransUnion*, 594 U.S. at 426. Without specific, individualized allegations of harm, Plaintiffs' claims collapse under Article III's standing requirements and must be dismissed.

***i. Plaintiffs' reliance on Cothron is misplaced.***

Plaintiffs attempt to analogize themselves to the plaintiffs in *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156 (7th Cir. 2021), but that comparison fails. In *Cothron*, the Seventh Circuit held that a violation of Section 15(d) of BIPA constitutes a concrete and particularized injury because the unauthorized disclosure of biometric data directly invades an individual's private domain, depriving the person of the ability to control who accesses their unique biometric identifiers. *Id.* at 1161. By contrast, here, Plaintiffs offer no factual detail establishing that any information related to their medical care was ever actually transmitted to a third party. Plaintiffs' allegations rest on speculation and generalized grievances, not individualized harm. As *Cothron* itself makes clear, "[p]articularized injuries are those that affect the plaintiff in a personal and individual way" and must be distinguished from broad, abstract complaints affecting the public at large. *Id.* at 1161.

Because Plaintiffs fail to allege any personal injury-in-fact, their reliance on *Cothron* only underscores the absence of standing here.

### C. Plaintiffs' Allegations Lack the Specificity of Cases with which they Attempt to Align.

The Court determined Article III standing was established in *M. v. Advanced Reproductive Health Center, Ltd.*, Case No. 1:24-cv-07559, another case involving the Meta Pixel. *See* Attach. 1, *Advanced Reproductive* Dkt. 42, Transcript of Aug. 5, 2025 Hearing ("*Adv. Rep.* Tr."). And though the Court has cautioned both sides that it is not bound by the ruling, Plaintiffs attempt to align themselves with those plaintiffs. But *Advanced Reproductive* is distinguishable.

In *Advanced Reproductive*, the Court's decision was fact specific, finding that "facts regarding infertility are inherently private. Disclosure of those facts would be highly offensive to a reasonable person and the services an individual seeks are not a legitimate public concern." *See Adv. Rep.* Tr. at 9:9-13. On the other hand, here, Plaintiffs fail to adequately identify what, if anything, was ever actually disclosed. Plaintiffs allege that they entered information pertaining to a broken toe, obstetrics and primary care, and kidney stones, respectively, but none of them allege that they received Facebook ads mentioning these symptoms. Plaintiff Noftz alleges receipt of targeted advertisements for KSB health plans but claims only that "private information" was disclosed in general terms, without identifying any specific content. The nature of those advertisements is unclear and could just as easily be attributable to unrelated searches conducted by Plaintiff Noftz. The same is true for Plaintiffs Black and Weinstock, who likewise fail to allege what precise private information was supposedly transmitted. Thus, *Advanced Reproductive* is factually distinguishable. Plaintiffs miss the mark, and the Court cannot extend the same finding where it is wholly unknown what, if anything, was intruded upon or disclosed.

Plaintiffs' reliance on *Smith v. Loyola Univ. Med. Ctr.*, No. 23-cv-15828, 2024 WL 3338941(N.D. Ill. July 9, 2024) is also misplaced. The pleadings in *Smith* were far more detailed, including specific dates, reasons for medical visits, exact medications, appointments, and URLs. *Id.* The court expressly considered the level of detail in the *Smith* plaintiffs' allegations when analyzing the issues. For instance, it emphasized that the plaintiffs' injuries were deemed "fairly traceable" due to the "close temporal proximity" between their visit to the hospital's website and the subsequent receipt of medical advertisements. *Id*. at *4. By contrast, Plaintiffs here offer only vague assertions and do not allege when they entered PHI on KSB's website or when they viewed KSB Hospital advertisements related to what they entered. There are simply no traceable or temporally proximate allegations in the Complaint.

Plaintiffs' citation to *Florence v. Order Express, Inc.*, 674 F. Supp. 3d 472 (N.D. Ill. 2023), is equally unavailing. First *Florence* involved a data breach and was not a meta pixel case. The Florence plaintiffs' actual personal information—social security numbers, driver's license numbers, and tax identification numbers—was leaked. *Id*. at 479. No such concrete disclosure is alleged here.

## IV. CONCLUSION

Plaintiffs make no effort to identify with specificity any allegations that could be deemed concrete, and for good reason. Their pleadings do not allege disclosure of medical information, internal portal activity, or financial data. As this Court has explained, "the injury-in-fact analysis is about the injury the plaintiff suffered, not the facts surrounding that injury. It is, after all, the plaintiff's injury—not the cause of action—that must be 'concrete.'" *Adv. Rep.* Trans. at 16:16-19. Plaintiffs fail that standard. They allege no concrete injury in fact, and Article III standing cannot rest on speculation or abstract assertions.

Plaintiffs' Complaint should be dismissed with prejudice because it does not include allegations of concrete injury-in-fact as required by Article III.

This 12th day of November, 2025.

Respectfully submitted,

***/s/ Sanjay S. Karnik***
Sanjay S. Karnik
Ill. Reg. No. 6300156
Brandi Z. Burton-Murrain
Ill. Reg. No. 6323698
CHILIVIS GRUBMAN, LLP
159 N. Sangamon Street, Suite 313A
Chicago, IL 60607
Tel: (872) 260-6679
Fax: (404) 261-2842
skarnik@cglawfirm.com
bmurrain@cglawfirm.com

*Attorneys for Defendant, KSB Hospital*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of November, 2025, I have caused the electronic filing of the foregoing document described as **DEFENDANT KSB HOSPITAL'S RESPONSE IN OPPOSITION TO PLAINTIFFS' SUPPLEMENTAL BRIEF ON JURISDICTION & STANDING** through the CM/ECF system, which will serve all parties of record.

***/s/ Sanjay S. Karnik***
Sanjay S. Karnik