**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **CHLOE NOFTZ, TONYA BLACK and KENNETH WEINSTOCK, on behalf of themselves and all others similarly situated,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 1:24-cv-08100** |
| **KSB HOSPITAL FOUNDATION d/b/a KSB HOSPITAL F/K/A KATHERINE SHAW BETHEA HOSPITAL,** | |
| **Defendant.** | |

**<u>MEMORANDUM IN SUPPORT OF DEFENDANT KSB HOSPITAL'S
RULE 12(b)(6) and 12(b)(1) MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

**INTRODUCTION** ................................................................................................... **1**

**FACTUAL BACKGROUND** ................................................................................. **1**

**LEGAL STANDARD** ............................................................................................ **3**

**ARGUMENT** ........................................................................................................... **4**

    I.   PLAINTIFFS' FEDERAL LAW CLAIMS SHOULD BE DISMISSED. ......................... 4

        A.  Plaintiffs' ECPA Claims Fail. ...................................................................... 5

            *i.*   *Count VIII Fails to State a Claim under the ECPA because KSB Cannot Intercept Communications to Which it is a Party.* ................................................. 5

            *ii.*  *Counts IX and X Fail to State a Claim under the ECPA Because KSB is Not An Electronic Communication Service Provider.* .......................................... 9

        B.  Plaintiffs' Computer Fraud and Abuse Claim Fails. ....................................... 11

        C.  Plaintiffs Cannot Pursue Class Claims in Federal Court. ............................... 13

        D.  The Court Should Decline to Exercise Supplemental Jurisdiction Over the Remaining State Law Claims. ....................................................................... 14

    II.  PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DIMISSED. ............................. 15

        A.  Negligence ................................................................................................. 15

            *i.*   *Plaintiffs Fail to Allege a Valid Legal Duty Under the FTC Act or HIPAA.* ....... 15

            *ii.*  *Plaintiffs Fail to Sufficiently Allege any Other Valid Legal Duty.* ................. 18

            *iii.* *Plaintiffs Fail to Allege Any Injury Proximately Caused by a Breach.* .............. 20

            *iv.* *The Economic Loss Doctrine Bars Plaintiffs' Negligence Claims.* ..................... 20

        B.  Breach of Express and Implied Contract ..................................................... 21

        C.  Unjust Enrichment .................................................................................... 22

        D.  Illinois Eavesdropping Statute .................................................................. 22

        E.  Bailment ................................................................................................... 24

**CONCLUSION** ..................................................................................................... **25**

# TABLE OF AUTHORITIES

## Cases

*A.D. v. Aspen Dental Mgmt., Inc.*,
  No. 24 C 1404, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ................................................... 24

*Aharon v. Babu*,
  No. 22 C 04502, 2023 WL 2214429 (N.D. Ill. Feb. 24, 2023) ................................................. 15

*Allen v. Novant Health, Inc.,*
  No. 1:22-CV-697, 2023 WL 5486240 (M.D.N.C. Aug. 24, 2023)........................................... 12

*Allen v. Quicken Loans Inc.*,
  No. 17-12352, 2018 WL 5874088 (D.N.J. Nov. 9, 2018) ......................................................... 5

*Alliance Acceptance Co. v. Yale Insurance Agency, Inc.,*
  271 Ill. App. 3d 483 (1st Dist. 1995) ..................................................................................... 22

*Ambrosius v. Chicago Athletic Clubs, LLC,*
  2021 IL App (1st) 200893 (2021).......................................................................................... 22

*American Hospital Association, et al. v. Bacerra, et al.*,
  No. 4:23-cv-011110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024)................................... 7

*American Hospital Association, et al. v. Bacerra, et al.*,
  No. 4:23-cv-011110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024)................................. 16

*Archey v. Osmose Utilities Servs., Inc.,*
  No. 20-CV-05247, 2022 WL 3543469 (N.D. Ill. Aug. 18, 2022).......................................... 21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................................ 4

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  216 Ill. 2d 100, (2005) .......................................................................................................... 22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................................ 4

*Boucher v. Fin. Sys. of Green Bay, Inc.*,
  880 F.3d 362 (7th Cir. 2018)............................................................................................ 3, 4

*Brantley v. Prisma Labs, Inc.*,
  2024 WL 3673727 (N.D. Ill. Aug. 6, 2024)......................................................................... 13

*Calles v. Scripto–Tokai Corp.*,

224 Ill. 2d 247 (2007) ................................................................................................. 15

*Carnegie-Mellon Univ. v. Cohill*,
484 U.S. 343 (1988) .................................................................................................. 14

*City of Ontario v. Quon*,
560 U.S. 746 (2010) .................................................................................................... 9

*Copeland v. Newfield Nat'l Bank*,
2017 WL 6638202 (D.N.J. Dec. 29, 2017) .............................................................. 16

*Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*,
770 F.3d 586 (7th Cir. 2014) ...................................................................................... 4

*Dancel v. Groupon, Inc.*,
940 F.3d 381 (7th Cir. 2019) .................................................................................... 13

*Dinerstein v. Google, LLC*,
73 F.4th 502 (7th Cir. 2023) ..................................................................................... 19

*Doe 1 v. Chestnut Health Sys., Inc.*,
2025 WL 1616635 (C.D. Ill. June 6, 2025) ......................................................*passim*

*Doe v. Genesis Health System*,
No. 23-cv-4209-JES-JEH, 2024 WL 3890164 (C.D. Ill. Aug. 21, 2024) ............... 20

*Garelli Wong & Assocs., Inc. v. Nichols*,
551 F. Supp. 2d 704 (N.D. Ill. 2008) ....................................................................... 12

*Garner v. Amazon.com, Inc.*,
603 F. Supp. 3d 985 (W.D. Wash. 2022) ............................................................. 9, 10

*Gavin v. AT&T Corp.*,
543 F. Supp. 2d 885 (N.D. Ill. 2008) ......................................................................... 1

*Gociman v. Loyola*,
41 F.4th 873 (7th Cir. 2022) ..................................................................................... 21

*Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*,
570 F.3d 811 (7th Cir. 2009) ...................................................................................... 4

*Hannant v. Culbertson*,
No. 4:24-CV-04164-SLD-RLH, 2025 WL 2413894 (C.D. Ill. Aug. 20, 2025) ........... 8, 13

*Hartley v. Univ. of Chicago Med. Ctr.*,
22 C 5891, 2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) ............................................. 6

iv

*Henderson–Smith & Assocs. v. Nahamani Family Serv. Ctr.*,
323 Ill. App. 3d 15 (1st Dist. 2001)) ...................................................................21

*Hertz Corp. v. Friend*,
59 U.S. 77 (2010) .................................................................................................13

*In re Cap. One Consumer Data Sec. Breach Litig.*,
488 F. Supp. 3d 374 (E.D. Va. 2020) ..................................................................20

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ...................................................................................6

*In re Google Inc. Gmail Litigation*,
No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ...............7

*In re Ill. Bell Switching Station Litig.*,
161 Ill. 2d 233 (1994) .........................................................................................20

*In re Michaels Stores Pin Pad Litigation*,
830 F. Supp. 2d 518 (N.D. Ill. 2011) ...................................................................20

*In re Mondelez Data Breach Litig.*,
2024 WL 2817489 (N.D. Ill. June 3, 2024) .........................................................25

*In re TikTok, Inc. In-App Browser Priv. Litig.*,
No. 24 C 2110, 2024 WL 4367849 (N.D. Ill. Oct. 1, 2024) ...................................7

*In re Yahoo Mail Litigation*,
7 F.Supp.3d 1016 (N.D. Cal. 2014) .......................................................................6

*Jurgens v. Build.com*,
2017 WL 5277679 (E.D. Mo. Nov. 13, 2017) ........................................................5

*Khan v. OneWest Bank, F.S.B.*,
No. 16-cv-8074, 2017 WL 1344535, at * 3 (N.D. Ill. Apr. 12, 2017) ....................4

*Kirby v. Chi. City Bank & Tr. Co.*,
403 N.E.2d 720 (Ill. App. Ct. 1980)) ...................................................................25

*Kurowski v. Rush System for Health* (*Kurowski I*),
659 F. Supp. 3d 931 (N.D. Ill. 2023) .............................................................6, 10

*Kurowski v. Rush System for Health* (*Kurowski II*),
683 F. Supp. 3d 836 (N.D. Ill. 2023) .....................................................................6

*Macovski v. Groupon, Inc.*,
553 F. Supp. 3d 460 (N.D. Ill. 2021) ...................................................................24

*Mendez v. Glob. Inst. of Stem Cell Therapy & Research, USA*,
    20CV915-LL-BLM, 2022 WL 3019858 (S.D. Cal. July 29, 2022) ....................................................... 14

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
    91 Ill.2d 69 (1982) ................................................................................................................... 20

*Neade v. Portes*,
    303 Ill. App. 3d 799 (2d Dist. 1999) ........................................................................................ 18

*Pable v. Chicago Transit Auth.*,
    615 F. Supp. 3d 842 (N.D. Ill. 2022) ....................................................................................... 12

*Patrick Patterson Custom Homes, Inc. v. Bach*,
    586 F. Supp. 2d 1026 (N.D. Ill. 2008) ..................................................................................... 11

*Perez v. Citicorp Mortgage, Inc.*,
    301 Ill. App .3d 413 (1st Dist. 1998) ........................................................................................ 22

*Quon v. Arch Wireless Operating Co.*,
    529 F.3d 892 (9th Cir. 2008) ...................................................................................................... 9

*Rhodes v. Illinois Cent. Gulf R.R.*,
    172 Ill. 2d 213 (1996) ............................................................................................................... 19

*Rocha v. FedEx Corp.*,
    15 F. Supp. 3d 796 (N.D. Ill. 2014) .................................................................................... 12, 15

*Rodriguez v. FastMed Urgent Care, P.C.*,
    5:23-CV-403-D, 2024 WL 3541582 (E.D.N.C. July 24, 2024) ................................................... 7

*Rodriguez v. Google LLC*,
    No. 20-cv-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) .......................................... 7

*Sabrina Roppo v. Travelers Commercial Ins. Co.*,
    869 F.3d 568 (7th Cir. 2017) ...................................................................................................... 4

*Santoro v. Tower Health*,
    2024 WL 1773371 (E.D. Pa. Apr. 24, 2024) ........................................................................... 19

*Hasbun v. United States*,
    941 F. Supp. 2d 1011 (N.D. Ill. 2013) ..................................................................................... 18

*In re Jetblue Airways Corp. Priv. Litig.*,
    379 F. Supp. 2d 299 (E.D.N.Y. 2005) ...................................................................................... 10

*Stewart v. Parkview Hosp.*,

940 F.3d 1013 (7th Cir. 2019) .................................................................................... 16

*Sloan v. Anker Innovations Ltd.*,
   711 F. Supp. 3d 946 (N.D. Ill. 2024) ......................................................................... 6

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2004) .................................................................................... 9

*Toulon v. Cont'l Cas. Co.*,
   877 F.3d 725 (7th Cir. 2017) ...................................................................................... 14

*United Mine Workers of Am. v. Gibbs*,
   383 U.S. 715 (1966) ................................................................................................... 14

*Van Buren v. United States*,
   593 U.S. 374 (2021) ................................................................................................... 12

*Wausau Ins. Co. v. All Chicagoland Moving & Storage Co.*,
   333 Ill. App. 3d 1116 (2002) ..................................................................................... 25

*Weddle v. WakeMed Health and Hospitals*,
   22 CVS 13860, 2023 WL 8369786 (N.C. Super. Dec. 4, 2023) ............................... 16

**Statutes**

18 U.S.C. § 2511 (1)(a) ...................................................................................................... 5

18 U.S.C. § 2511(1)(a) ........................................................................................................ 5

18 U.S.C.A. § 2510(15) ...................................................................................................... 9

28 U.S.C. § 1331 .................................................................................................................. 4

28 U.S.C. § 1332 ............................................................................................................ 4, 13

28 U.S.C. § 1367(c) ........................................................................................................... 14

720 ILCS 5/14-2(a)(2) ....................................................................................................... 24

720 ILCS 5/14-2(a)(3) ....................................................................................................... 24

720 Ill. Comp. Stat. Ann. 5/14-2(a) ................................................................................. 23

720 Ill. Comp. Stat. Ann. 5/14-2(a)(2) ............................................................................. 24

720 Ill. Comp. Stat. Ann. 5/14-2(a)(3) ............................................................................. 23

**Rules**

Rule 12(b)(1)..................................................................................................................................4

Rule 12(b)(6)..................................................................................................................................3

## INTRODUCTION

This re-filed lawsuit is a blatant act of forum shopping. Faced with the imminent dismissal of the same class action in Illinois state court,[1] Plaintiffs voluntarily dismissed their baseless "online tracking" lawsuit and re-filed essentially the same case into this Court, adding baseless federal claims. Plaintiffs' gamesmanship fails because a clear reading of their personal allegations reveal that they do not allege any facts demonstrating KSB disclosed their PHI or PII to Meta. Plaintiffs' claims rest on bare allegations amounting to nothing more than a replication of other lawsuits recently filed against dozens of entities in connection with the Meta Pixel. The Complaint fails to specify whether KSB configured the tracking technology in an impermissible way; when, how, and what information Plaintiffs shared with KSB via the website; how and whether Plaintiffs' information was tracked and disclosed to third parties; and how Plaintiffs were specifically injured by the tracking technology. Furthermore, the Complaint is rife with fictitious scenarios by hypothetical patients but is lacking any plausible allegations as to Plaintiffs' own actions and injuries. Because Plaintiffs fail to plausibly allege any claim regarding the alleged disclosure of their PHI or PII, dismissal of the Complaint is warranted.

## FACTUAL BACKGROUND

Despite the considerable length of their Complaint, Plaintiffs fail to allege what PHI or PII they entered on KSB's website or portal, where and when they entered it, and what injuries they

---

[1] Plaintiffs first initiated this lawsuit on October 31, 2023, in the Circuit Court of Lee County, Illinois, raising the t same allegations concerning KSB's alleged use of the Meta Pixel. (Ex. A, First State Court Complaint). KSB moved to dismiss on February 28, 2024, and Plaintiffs responded with an amended complaint. (Ex. B, Amended State Court Complaint). KSB moved to dismiss the amended complaint on April 29, 2024, pointing out the hypothetical nature of their new allegations. (Ex. C, Motion to Dismiss Am. Compl.). Following additional briefing, the parties took part in a nearly 2-hour oral argument on July 9, 2024. Plaintiffs dismissed their state court suit nine days later. (Ex. D, July 18, 2024 Voluntary Dismissal). The Court can take judicial notice of public records, including judicial proceedings related to this case. *Gavin v. AT&T Corp.*, 543 F. Supp. 2d 885, 890, n. 2 (N.D. Ill. 2008).

sustained. Plaintiff Noftz alleges that she utilized KSB's Online Platforms[2] to manage treatment for a broken toe and to check medical bills and test results, but the "targeted ads" she allegedly received were not related to foot or fracture treatments in particular, but rather "Defendant's health plans." Compl. ¶¶ 132-133. Plaintiff Noftz alleges that KSB disclosed to Facebook her "seeking of medical treatment" – not any actual medical treatment information. *Id.* ¶ 138(b). She claims KSB disclosed "[i]nformation regarding [her] portal activity[,]" – but not that KSB disclosed any actual PHI or PII from within the portal. *Id.* ¶ 138(d). Plaintiff Noftz alleges no facts supporting that KSB disclosed specialties and names of medical providers she searched and viewed, nor does she provide any factual detail about what "search results" she clicked on or what medical services she viewed. *Id.* ¶ 138(e)-(h).

Plaintiff Black's allegations are equally lacking. Plaintiff Black alleges that she used KSB's website to locate her OBGYN's phone number and primary care doctor and used its "Online Platforms to communicate healthcare and identifying information to KSB." *Id.* ¶ 144, 146. Plaintiff Black also contends that she accessed the patient portal to view test results, schedule appointments, and track her prescriptions. *Id.* However, Plaintiff Black does not allege that she received any advertisements containing or derived from this alleged patient information nor does she describe such advertisements. Plaintiff Black also never alleges that KSB disclosed test results or prescriptions to Facebook.

Plaintiff Weinstock's allegations do not reveal any disclosure of PHI or PII either. Plaintiff Weinstock alleges that he used KSB's "Online Platforms" and the patient portal to manage treatments for kidney stones, make physical therapy appoints, generally manage pain, and view test results. *Id.* ¶ 154. And while Plaintiff Weinstock alleges that he "began to notice targeted ads

---

[2] The Complaint vaguely defines "Online Platforms" as KSB's "Website, along with its various web-based tools and services[.]" *Id.* ¶ 11.

2

for KSB hospitals' pain management classes[,]" *id.* ¶ 156, he still fails to allege whether these generalized ads contained information specific to the type of pain information contained within his portal records. Plaintiff Weinstock does not allege that he received any kidney stone-related ads, nor does he allege that KSB disclosed test results.

All three Plaintiffs identically allege **"on information and belief"** that KSB disclosed the following information to Facebook: the pages and content they viewed; their seeking of medical treatment; their status as a patient; "[i]nformation regarding [their] patient portal activity;" the specialties of medical providers viewed and their names; the search results they clicked on; the medical services they received; and their identity via IP address and/or 'c_user' cookie and/or Facebook ID. *Id.* ¶¶ 138, 149, 161 (emphasis added). Each named Plaintiff fails to allege what PHI search terms they entered, what medical services they viewed, and where (in the portal or on an unauthenticated page) or when. Fully aware of their own lacking allegations, Plaintiffs try to generate a lawsuit with hypothetical scenarios. Plaintiffs present fictitious colonoscopy, childbirth class, financial activity, and portal-related allegations. Compl. ¶¶ 89-93 ("colonoscopy allegations"); 94-101 (childbirth class allegations"); 102-110 ("financial activity allegations"); 111-120 ("portal-related allegations"). But they do not allege that they personally conducted these search activities. If Plaintiffs personally experienced these issues, they would have so alleged.[3]

## LEGAL STANDARD

On a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all factual allegations in the complaint and draw[s] all permissible inferences in plaintiffs' favor." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018) (citation omitted). "To survive a

---

[3] Indeed, during the September 11, 2025 oral argument in this case, Plaintiffs admitted that these hypotheticals were merely "illustrative" and not actually reflective of Plaintiffs' own experiences or allegations.

motion to dismiss, a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* at 365–66 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 366 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The court "need not accept legal conclusions or conclusory allegations." *Khan v. OneWest Bank, F.S.B.*, 16-cv-8074, 2017 WL 1344535, at * 3 (N.D. Ill. Apr. 12, 2017) (citing *Iqbal*, 556 U.S. at 680–82).

A Rule 12(b)(1) motion tests whether the court has subject matter jurisdiction. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588–89 (7th Cir. 2014). "[T]he party asserting federal jurisdiction under CAFA must establish that the requirements of § 1332(d) are satisfied." *Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017).

## ARGUMENT

### I. PLAINTIFFS' FEDERAL LAW CLAIMS SHOULD BE DISMISSED.

Plaintiffs assert several claims under the Electronic Communications Privacy Act ("ECPA" or "Wiretap Act") (Counts VIII through X) and the Computer Fraud and Abuse Act (Count XI). None, however, state a viable claim for relief and must be dismissed. Absent Counts VIII through XI, the Court lacks federal question subject matter jurisdiction under 28 U.S.C. § 1331. Plaintiffs also fail to allege minimal diversity under 28 U.S.C. § 1332(d). Thus, absent any federal subject matter jurisdiction, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.

4

A.       **Plaintiffs' ECPA Claims Fail.**

Plaintiffs fail to allege essential elements of an ECPA claim, requiring dismissal.

   i.   ***Count VIII Fails to State a Claim under the ECPA because KSB Cannot Intercept Communications to Which it is a Party.***

Count VIII of the Complaint, which alleges violations of the ECPA at 18 U.S.C. § 2511(1)(a), fails because: (1) KSB was a party to the communication and cannot intercept communications Plaintiffs intended for it to receive; and (2) KSB did not act with a criminal or tortious purpose and therefore the crime-tort exception does not apply.

First, Section 2511(1)(a) specifies that any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication[…]" is liable under the Wiretap Act. 18 U.S.C. § 2511(1)(a). However, Section 2511(2)(d) specifies that it is not unlawful when the person who intercepts the communication is a party to the communication. Here, Plaintiffs fail to allege that KSB intercepted communications because KSB was the intended recipient. Failure to allege an actual interception is fatal to Plaintiffs' claims. As several courts have made clear, "[i[nterception is a necessary element for each type of violation". *Jurgens v. Build.com*, 2017 WL 5277679, at *4 (E.D. Mo. Nov. 13, 2017); *see also Allen v. Quicken Loans Inc.*, 2018 WL 5874088, at *3 (D.N.J. Nov. 9, 2018) ("Since claims under subsection (c) and (d) are predicated on a violation of subsection (a), the Court considers all section 2511 claims together.").

In similar cases involving the use of website tracking technologies, Courts have dismissed ECPA claims for failure to allege an "interception." For example, in *Kurowski v. Rush Sys. For Health*, this Court held in a nearly identical Meta Pixel tracking lawsuit that the plaintiffs could not hold Rush liable under the Wiretap Act because, despite sharing information with third parties Facebook, Google, and Bidtellect, defendant was "the intended recipient of the communication"

and therefore defendant was "a party to those communications and cannot be liable under the Wiretap Act for its alleged interception of them, if such an interception even occurred." 659 F. Supp. 3d 931, 938 (N.D. Ill. 2023) (*Kurowski I*), *aff'd on reconsideration*, 683 F. Supp. 3d 836, 842-844 (N.D. Ill. 2023) (*Kurowski II*) (again dismissing ECPA Meta Pixel claim)*; see also, e.g., Hartley v. Univ. of Chicago Med. Ctr.*, 22 C 5891, 2023 WL 7386060, at *1 (N.D. Ill. Nov. 8, 2023) ("*Hartley I*") ("…since UCMC is a necessary party to any communication from a patient concerning the provision of healthcare, it cannot be liable to the receipt of the communication") (Meta Pixel case); *Sloan v. Anker Innovations Ltd.*, 711 F. Supp. 3d 946, 957 (N.D. Ill. 2024) ("That Defendants, parties to the communication, then upload some of that data to a third-party cloud server does not transform Defendants' action into an interception under the Wiretap Act"); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142 (3d Cir. 2015) ("Because the defendants were the intended recipients of the transmissions at issue—[…]—we agree that § 2511(2)(d) means the defendants have done nothing unlawful[…]"); *In re Yahoo Mail Litigation,* 7 F.Supp.3d 1016, 1026 (N.D. Cal. 2014) ("[T]he consent of one party is a complete defense to a Wiretap Act claim"). Likewise, here, KSB was a party to any alleged entry of information by Plaintiffs on the KSB website. Therefore, KSB cannot be held liable for a Wiretap Act violation as a matter of law.

Second, Plaintiffs fail to show that the crime or tort exception to the interception rule applies here. Compl. ¶ 339. In several other Meta Pixel cases, this Court has declined to apply the exception. *See Kurowski I*, 659 F. Supp. 3d at 938-39; *Kurowski II*, 683 F. Supp. 3d at 844; *Hartley I*, 2023 WL 7386060, at *2. And according to Plaintiffs' own admission, "[t]he **sole purpose** for [KSB's] use of the Meta Pixel and other tracking technology was to **enhance its marketing efforts and increase its profits."** Compl. ¶ 206 (emphasis added); *see also id.* ¶¶ 42, 50, 85, 86, 123, 125,

197, 247, 260, 289. Such allegations are fatal to arguing the crime or tort exception. *See Rodriguez v. FastMed Urgent Care, P.C.*, 5:23-CV-403-D, 2024 WL 3541582, at *5 (E.D.N.C. July 24, 2024) ("Even viewing Rodriguez's complaint in the light most favorable to Rodriguez, FastMed intercepted and disclosed the class members' information for commercial use or gain, not to commit a crime or tort.") (Meta Pixel case). In *Rodriguez v. Google LLC*, plaintiffs brought a Wiretap Act claim against Google because of its relationships with third-party apps. No. 20-cv-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021). The court dismissed the claim because the interception was made with consent, and added that the "[a]lleged interceptions fall within the tort or crime exception only where 'the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously,' ... [and] cannot apply where the interceptor's 'purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money.'" *Id.* at *6 n.8 (quoting *In re Google Inc. Gmail Litigation*, No. 13-MD-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014)). Likewise, Plaintiffs' allegations that KSB "collected patients browsing data during visits to hospital websites[…] [are] far too vague to allow an inference to be drawn that [defendants were] actually disclosing data within HIPAA's statutory definition of individually-identifiable health information." *In re TikTok, Inc. In-App Browser Priv. Litig.,* No. 24 C 2110, 2024 WL 4367849, at *6 (N.D. Ill. Oct. 1, 2024) (internal quotations omitted) (citing *Kurowski II* and *Hartley I*).

Here, Plaintiffs' allegations similarly fall short. For one, any alleged disclosure of information on any unauthenticated web page does not violate HIPAA.[4] And Plaintiffs do not allege that KSB disclosed to Facebook PHI or IIHI entered on any **authenticated** page. At best, Plaintiffs allege that KSB disclosed clicks related to portal activity – not any actual medical

---

[4] *See American Hospital Association, et al. v. Bacerra, et al.*, Case No. 4:23-cv-011110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024) (discussed *infra*).

records, financial information, or diagnoses from within the portal. Compl. ¶¶ 138, 149, 161. Furthermore, Plaintiffs do not attempt to allege the "contents" of any of their alleged communications with KSB, whether entered within the patient portal or on the KSB website.

Plaintiffs simply fail to allege what exact PHI or IIHI they entered, when and where, and they also fail to allege that any specific PHI or IIHI was relayed back to them in a Facebook advertisement. In *Hannant v. Culbertson*, the Central District rejected nearly the same vague allegations asserted here. No. 4:24-CV-04164-SLD-RLH, 2025 WL 2413894, at *5 (C.D. Ill. Aug. 20, 2025). There*,* the court held that "Plaintiff's allegations of her own experience, as opposed to a potential class member, lack the detail necessary to plausibly invoke the crime-tort exception via a HIPAA violation." *Id.* For one, she "d[id] not allege that she actually contacted any specific physician, that she actually obtained any of her medical records, nor even that she logged into the patient portal." *Id.* Similarly, Hannant alleged merely "[o]n information and belief" that Defendant disclosed information like her "status as a patient" and her "patient portal activity[,]" but she "provide[d] no detail as to what information was disclosed that demonstrated her patient status or what activities she took with respect to the patient portal." *Id.* The plaintiff "ha[d] access to her end of the equation" and yet "provide[d] insufficient detail to conclude that she has plausibly alleged that her IIHI was improperly intercepted, disclosed, or used." *Id.* Similarly here, each Plaintiff merely raises identical and boilerplate conclusions "on information and belief" without providing any supporting detail. Compl. ¶¶ 138, 149, 161.

Because KSB was a party to the communications and because Plaintiffs' insufficient allegations preclude the applicability of the crime tort exception, the Court should dismiss Count VIII. *See Doe 1 v. Chestnut Health Sys., Inc.*, 1:24-cv-01475-JEH-RLH, 2025 WL 1616635, at *12 (C.D. Ill. June 6, 2025) (dismissing ECPA claim in pixel case "because the Court determines

that the Defendant was a party to the communications at issue, and because the Plaintiffs have not pleaded facts sufficient to draw an inference that the Defendant acted with a tortious or criminal purpose").

### ii. Counts IX and X Fail to State a Claim under the ECPA Because KSB is Not An Electronic Communication Service Provider.

Counts IX and X bring ECPA claims pursuant to 18 U.S.C. 2511(3)(a) and 18 U.S.C. § 2702, respectively. Both statutory provisions prohibit the divulgence of the contents of communications by a person or entity "**providing an electronic communication service to the public**." Because KSB is not an electronic communication service provider, Counts IX and X fail as a matter of law and should be dismissed.

An "Electronic Communication Service" to the public is defined as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). Courts have further explained that Congress used email communications as a primary example of an electronic communication service where "messages are typed into a computer terminal, and then transmitted ... to a recipient computer operated by [email]." *Garner v. Amazon.com, Inc.,* 603 F. Supp. 3d 985, 1003 (W.D. Wash. 2022) (citing S. Rep. 99-541, at 8, 14 (1986)). Several courts have held that, like the examples cited in Congressional reports, an electronic communications service allows users to communicate with each other, such as an email provider.[5]

KSB is not an electronic communication service provider. Specifically, its website and patient communications thereon are used exclusively in the ordinary course of conducting its

---

[5]     *See Quon v. Arch Wireless Operating Co.*, 529 F.3d 892, 902 (9th Cir. 2008) (holding that an email provider is an electronic communication service provider). *City of Ontario v. Quon*, 560 U.S. 746 (2010); *see also Theofel v. Farey-Jones*, 359 F.3d 1066, 1075 (9th Cir. 2004) (same).

business as a hospital. Having a website does not mean KSB provided an electronic communication service to the world. *See In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 307 (E.D.N.Y. 2005) ("Although JetBlue operates a website that receives and transmits data ... it is undisputed that it is not the provider of the electronic communication service that allows such data to be transmitted over the internet."). The KSB website does not allow third parties to communicate with each other, and KSB is not in the business of facilitating the electronic communications between third parties. The Complaint pleads nothing to the contrary. Indeed, Plaintiffs allege that KSB "encourages patients to use its Website, […] to search for physicians, locate healthcare facilities, learn about specific health conditions and treatment options, [and] pay bills." Compl. ¶ 11. Plaintiffs also readily admit that they "visited [KSB's] Online Platforms in relation to their past, present, and future health, healthcare and/or payment for health care." *Id.* Plaintiffs never allege that they sent or received any communications to anyone other than KSB. Thus, Plaintiffs' own allegations show KSB's website is not an electronic communication service.

Moreover, ample case law rejects the proposition that companies who use Meta Pixel or other similar technologies in the course of their business are electronic communication service providers. *See, e.g., Kurowski I*, 659 F. Supp. 3d at 940 ("[C]ompanies that merely purchase or use electronic communications services in the conduct of their ordinary business are not themselves electronic communication services"); *Garner*, 603 F. Supp. 3d at 1003-04 ("A company that merely utilizes electronic communications in the conduct of its own business [here, Amazon's "Alexa"] is generally considered a purchaser or user of the communications platform, not the provider of the service to the public."); *Chestnut Health Sys., Inc.*, 2025 WL 1616635, at *12 (dismissing Section 2511(3)(a) and 2702(a)(1) claims against hospital in pixel case because "CHS is not in the business of providing the public with the 'ability' to 'send or receive wire or electronic

communications' under 18 U.S.C. § 2510(15), but is instead a business consumer of electronic communication services").

### B. Plaintiffs' Computer Fraud and Abuse Claim Fails.

Plaintiffs fail to adequately plead that KSB violated the Computer Fraud and Abuse Act ("CFAA"). "A violation [of the CFAA] occurs when an individual intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains information from any protected computer if the conduct involved an interstate or foreign communication." *Patrick Patterson Custom Homes, Inc. v. Bach*, 586 F. Supp. 2d 1026, 1032 (N.D. Ill. 2008). Here, Plaintiffs (1) fail to allege the existence of at least one enumerated subclause of the CFAA; and (2) fail to allege that a computer was accessed without authorization.

First. Plaintiffs fail to sufficiently allege one of the required subclauses of the CFAA, which is a prerequisite to bringing a civil action, beyond merely reciting statutory language. "To bring a civil action [under the CFAA] a plaintiff must…allege the existence of at least one of the five numbered subclauses of subsection [1030(c)(4)(A)(i)]." *Id.* at 1032.[6] Here, Plaintiffs allege they have suffered "a loss to 1 or more persons during any 1-year period. . . aggregating at least $5,000 in value under 18 U.S.C. § 1030(c)(4)(A)(i)(I)." (Compl. ¶ 378). They further allege that the conduct caused a threat to public health or safety." *Id.* ¶ 379.

Plaintiffs plead no facts showing when they accessed KSB's website such that the Court can determine whether they suffered a loss within any 1-year period. Nor are there any allegations that the aggregate amount of loss sustained by any Plaintiff in a 1-year period is $5,000 or more. The Complaint also lacks facts showing a threat to public health or safety resulting from KSB's alleged use of tracking technology. Plaintiffs have not alleged how their or anyone else's safety is

---

[6] The CFAA was amended and renumbered after the Court's decision in *Patrick Patterson*. For ease of reference, KSB has altered the quotations to reflect the numbering of the current statutory language.

at risk because their personal information was disclosed to Meta. Plaintiffs' formulaic recitation of the requisite subclauses is not enough to withstand a motion to dismiss. *See Garelli Wong & Assocs., Inc. v. Nichols*, 551 F. Supp. 2d 704, 710-11 (N.D. Ill. 2008) (dismissing CFAA claim for failing to allege facts showing loss in excess of $5,000 and simply stating a loss with no further elaboration).

Second, Plaintiffs fail to allege that a computer was accessed without authorization or that the authorization was exceeded. 18 U.S.C. § 1030(a)(2)(C); *Patrick Patterson*, 586 F. Supp. 2d at 1032. In *Van Buren v. United States*, the United States Supreme Court considered whether a former police officer violated the CFAA for running license-plate searches in exchange for money. 593 U.S. 374 (2021). The police officer used his office's law enforcement database to run the scheme. *Id.* at 378. There was no dispute that the officer was authorized to access the database—his employer had given him the necessary credentials to do so. *Id.* at 382. The question was whether the CFAA covered his conduct under the "exceeds authorized access" prong of section 1030(a)(2) because he misused his authorized access for an improper purpose. *Id.* The Court examined the phrase "exceeds authorized access" in depth and concluded that a person only "'exceeds authorized access' when he accesses a computer with authorization but then obtains information located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." *Id.* at 396. Following *Van Buren*, several courts have disposed of similarly flawed CFAA claims. *See Pable v. Chicago Transit Auth.*, 615 F. Supp. 3d 842, 845 (N.D. Ill. 2022) ("the CTA claims that Pable misused his authorized access for an improper purpose. That is precisely the type of claim that *Van Buren* held was outside the CFAA's scope"); *Allen v. Novant Health, Inc.,* No. 1:22-CV-697, 2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) (same).

12

Similarly, in this "exceeds authorizes access" case, Compl. ¶ 377, totally absent from the Complaint is any allegation that KSB accessed an authorized area of their computer or accessed their computer at all. That is, Plaintiffs "do[] not allege that Defendant took some action to access or alter her hard drive, file architecture, or other information stored on [their] stored computers…Instead she complaints that, after she voluntarily shared with Defendant the fact that she was using its Online Platforms, Defendant subsequently misused that information by sharing it with entities like Meta or Google." *Hannant*, 2025 WL 2413894, at *7. "Such allegations of downstream information misuse do not support a CFAA claim in the wake of *Van Buren*." *Id.* Thus, the Supreme Court has provided clear guidance on the meaning of exceeding authorized access, and Plaintiffs fail to plead KSB exceeded its authorized access. Count XI therefore fails.

### C.     Plaintiffs Cannot Pursue Class Claims in Federal Court.

Even if any of Plaintiffs' federal causes of action survive dismissal, they cannot pursue any class claims in federal court because this Court lacks subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). Specifically, § 1332(d)(2)(A) only confers original jurisdiction over class actions in which, among other requirements, "any member of a class…is a citizen of a State different from any defendant." Citizenship is "determined ... as of the date of the filing of the complaint[,]" 28 U.S.C. § 1332(d)(7), and the burden of establishing diversity jurisdiction rests with Plaintiffs. *Hertz Corp. v. Friend*, 59 U.S. 77, 96 (2010).

Here, Plaintiffs each allege they are citizens of Illinois and that so is Defendant. Compl. ¶¶ 32-35. Plaintiffs cannot overcome this obvious fatal flaw to CAFA jurisdiction by simply stating that "at least one member o [sic] the class is a citizen of a state different from Defendant." *Id.* ¶ 36. *See Dancel v. Groupon, Inc.*, 940 F.3d 381, 385 (7th Cir. 2019) (parties cannot "merely allege diversity of citizenship without identifying the [parties'] states of citizenship, for that is no better

than a bare assertion that the defendants are citizens of another state different from the Plaintiff.")
(internal quotations and citation omitted). Plaintiffs' conclusory allegation that an unnamed class
member is a citizen of a state different from Defendant is "insufficient to establish minimal
diversity[.]" *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 733 (7th Cir. 2017). The fact that Plaintiffs
seek a "nationwide class" of KSB patients, Compl. ¶ 222, does not satisfy minimal diversity, either.
"[A] conclusory and prospective allegation that at least one unknown member of a nationwide
class will result in minimal diversity is not sufficient to satisfy the pleading requirements for CAFA
jurisdiction." *Mendez v. Glob. Inst. of Stem Cell Therapy & Research, USA*, 20CV915-LL-BLM,
2022 WL 3019858, at *3 (S.D. Cal. July 29, 2022). The failure to satisfy minimal diversity is fatal
to any class action claims in federal court. Even if any of Counts VII through XI survive, there is
no scenario where Plaintiffs can pursue any class action claims in federal court.

> **D.** **The Court Should Decline to Exercise Supplemental Jurisdiction Over the Remaining State Law Claims.**

Plaintiffs fail to allege any basis for supplemental jurisdiction. Compl. ¶¶ 36-38. But even
if they had, the dismissal of Plaintiffs' federal law claims dictates dismissal of the remaining state
law claims. *See* 28 U.S.C. § 1367(c) (authorizing declination of supplemental jurisdiction when
the court dismisses all claims over which it had original jurisdiction). The Court can decline to
exercise supplemental jurisdiction based on "considerations of judicial economy, convenience and
fairness to litigants," and "as a matter of comity" to avoid "[n]eedless decisions of state law."
*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "When the balance of these
factors indicates that a case properly belongs in state court, as when the federal law claims have
dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court
should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-
Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Because Plaintiffs' federal law claims should

be dismissed, so too should the state law claims. *See Rocha v. FedEx Corp.*, 15 F. Supp. 3d 796, 813 (N.D. Ill. 2014) ("Where all federal claims are dismissed before trial, the usual practice is that a federal district court should generally dismiss the supplemental claims."). Therefore, given the lack of both federal question jurisdiction and minimal diversity, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.

## II.     PLAINTIFFS' STATE LAW CLAIMS SHOULD BE DIMISSED.

### A.      Negligence

In Counts I and II, Plaintiffs bring causes of action for negligence and negligence *per se*, respectively.  To state a cause of action for common law negligence, a plaintiff must allege facts sufficient to establish (1) the existence of a duty of care owed to the plaintiff by the defendant; (2) a breach of that duty; and (3) an injury proximately caused by that breach. *Calles v. Scripto–Tokai Corp.*, 224 Ill. 2d 247, 270 (2007). To state a claim based on negligence *per se*, Plaintiffs must allege "the violation of a statute designed to protect human life," and that they were of the class the statute was designed to protect. *Aharon v. Babu*, 22 C 04502, 2023 WL 2214429, at *5 (N.D. Ill. Feb. 24, 2023) (citation omitted). Thus, while negligence *per se* concerns a breach of a statutory duty, both claims otherwise involve the same analysis.

#### i.      *Plaintiffs Fail to Allege a Valid Legal Duty Under the FTC Act or HIPAA.*

Plaintiffs cite several non-binding bulletins issued by the FTC and HHS-OCR to assert that Defendant had a legal duty under Section 5 of the FTC Act or under the HIPAA privacy and security rules to protect their PII and PHI. Compl. ¶¶ 2, 4-8, 180-185, 253. Their negligence *per se* claims under these Acts fail for several reasons.

First, Plaintiffs cannot assert a duty of care via HIPAA or the FTC Act because neither HIPAA nor the FTC Act confer a private right of action. *See Stewart v. Parkview Hosp.*, 940 F.3d

15

1013, 1015 (7th Cir. 2019) ("[W]e now hold that HIPAA confers no private right of action.");

*Copeland v. Newfield Nat'l Bank*, CV 17-17 (NLH/KMW), 2017 WL 6638202, at *3 (D.N.J. Dec.

29, 2017) ("Federal courts across the country have consistently held that the FTCA does not permit

a private cause of action, and such claims are routinely dismissed."); *Weddle v. WakeMed Health*

*and Hospitals*, 22 CVS 13860, 2023 WL 8369786, at *3 (N.C. Super. Dec. 4, 2023) (Meta Pixel

negligence *per se* claim "untenable because neither the FTC Act nor the HIPAA regulations are

public safety laws").[7]

      Second, Plaintiffs cannot rely on recent HIPAA bulletins to create a legal duty because

they have been vacated and held invalid. Plaintiffs note a recent court decision vacating the updated

HHS-OCR, but fail to note that the decision largely, if not completely, invalidates the logical and

legal sufficiency of their claims. Compl. ¶ 8 n.12. In *American Hospital Association, et al. v.*

*Bacerra, et al.*, the Northern District of Texas vacated the March 14, 2024 OCR Bulletin[8]

("Revised Bulletin") which had revised the December 2022 bulletin ("Original Bulletin") which

Plaintiffs heavily rely on. No. 4:23-cv-011110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024).

Specifically, the court vacated OCR guidance stating that HIPAA obligations are triggered in

"circumstances where an online technology connects (1) an individual's IP address with (2) a visit

to a[n] [unauthenticated public webpage] addressing specific health conditions or healthcare

providers." *Id.* *2. Therefore, the HIPAA rules are not implicated when a tracking technology

transmits an IP address and information entered on an unauthenticated web page. Here, Plaintiffs

---

[7]    "That leaves the Plaintiffs with only the MPRA and the PIPA as potentially viable statutory avenues to pursue their negligence *per se* claim. However, neither the statutory text of the MPRA, nor the PIPA, provide support to conclude that the legislature intended to impose strict liability for alleged violations." *Chestnut Health Sys., Inc.*, 2025 WL 1616635, at *4 (citing 410 ILL. COMP. STAT. §§ 50/0.01-99; 815 ILL. COMP. STAT. §§ 530/1-900).

[8]    *See* https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last accessed Dec. 5, 2025).

do not allege what Private Information they entered on Defendant's Website or Online Platforms. But even if they had, nothing they entered on any unauthenticated page implicates HIPAA.

Third, Plaintiffs present only half the story with respect to the connection between their Internet activity and Facebook. Plaintiffs allege that "the Meta Pixel can link a visitor's website interactions with an individual's unique and persistent Facebook ID ("FID"), allowing a user's health information to be linked with their Facebook profile." Compl. ¶ 14. But Plaintiffs fail to disclose to the Court the other half of the equation: their participation in and consent to Facebook's policies. When a Facebook account user signs up for Facebook, they consent to Facebook "collect[ing] and us[ing] [their] personal data in order to provide" services including "personalized ads, offers, and other sponsored or commercial content." [9],[10] The Meta Pixel "relies on Facebook cookies," which enable Facebook to match a website's visitors to their respective Facebook accounts.[11] As Facebook's policies explain, Facebook collects information about users' browsing activities through the use of cookies and tools like the Meta Pixel, but gives users the ability to stop Facebook from tracking their Off-Facebook Activity.[12],[13] Thus, Facebook users have authorized Facebook to store Facebook cookies on users' browsers, which house the user's Facebook ID. When a user visits a third-party website that uses a Meta Pixel, the pixel directs the user's browser to send the Facebook ID back to Facebook, along with the information tracked by

---

[9]     The Complaint extensively refers to and relies upon Facebook policies regarding the Meta Pixel and other Facebook services. *See* Compl. n.15-24, 29-35, 37-38, 77-79. Here, also Defendant cites Facebook's policies on the very same topics.

[10]    Meta's Privacy Policy, https://mbasic.facebook.com/privacy/policy/printable/ (last accessed Dec. 5, 2025).

[11]    "Get Started, Meta for Developers, https://developers.facebook.com/docs/meta-pixel/get-started (last accessed Dec. 5, 2025).

[12]    "Off-Facebook Activity: Control your information," https://www.facebook.com/off-facebook-activity (last accessed Dec. 5, 2025).

[13]    "How do I manage my future activity off Meta technologies," https://m.facebook.com/help/1224342157705160/?helpref=related_%20articles&_rdr (last accessed Dec. 5, 2025).

the pixel. Throughout this process, Facebook users retain full control over both their Facebook privacy settings and their personal browser and cookie retention settings. Accordingly, Plaintiffs' claims should be dismissed because Plaintiffs have agreed to Facebook's Terms of Service, Privacy Policy, and Cookie Policy, all of which permit Meta to use the information it collects for a variety of purposes, including targeted advertisements on Facebook.

KSB does not know whether its website visitors have signed up for Facebook or agreed to Facebook's policies, nor does it have knowledge of or possess users' Facebook ID numbers (and importantly, nor do Plaintiffs allege that KSB has such knowledge). Therefore, if any connection is made between the allegedly disclosed information and a particular Facebook user, it is Meta (not KSB) that does so.

### ii. Plaintiffs Fail to Sufficiently Allege any Other Valid Legal Duty.

Plaintiffs fail to identify any other actionable legal duty which would give rise to a common law negligence claim. First, Illinois law makes clear that the AMA Code of Medical Ethics does not create a legal duty. *See Hasbun v. United States*, 941 F. Supp. 2d 1011, 1017 (N.D. Ill. 2013) (in negligent supervision action applying Illinois law, plaintiff insufficiently alleged that defendants had a duty to comply with the AMA's Code of Medical Ethics, "and thus her negligence claim fails."); *see also Neade v. Portes*, 303 Ill. App. 3d 799, 812 (2d Dist. 1999) ("...we agree that a violation of the AMA's medical ethics does not amount to a breach of the legal standard of care..."), *rev'd on other grounds,* 193 Ill. 2d 433 (2000). Second, Plaintiffs cannot rely on KSB's own policies to establish an owed duty. Plaintiffs allege that Defendant violated its own Patient Rights and Privacy Policy. It is well settled in Illinois that "[w]here the law does not impose a duty, one will not generally be created by a defendant's rules or internal guidelines. Rather, it is

18

the law which, in the end, must say what is legally required." *Rhodes v. Illinois Cent. Gulf R.R.*, 172 Ill. 2d 213, 238 (1996).

Third, Plaintiffs fail to allege any common law duty regarding the protection of personal health information or medical records. There are some states which recognize a common law duty of medical providers to maintain patient confidentiality, "[b]ut Illinois is not one of them." *Dinerstein v. Google, LLC*, 73 F.4th 502, 512 (7th Cir. 2023); *see also Chestnut Health Sys., Inc.*, 2025 WL 1616635, at 3 (dismissing common law negligence claim in Meta Pixel tracking case. But even if Illinois law imposes a common law duty to protect patient personal or medical information, Plaintiffs have not adequately alleged that the information tracked by KSB Hospital's use of Meta Pixel involved their personal or medical information. For these reasons, they cannot assert a common law negligence claim.

### iii. Plaintiffs Fail to Allege Breach of any Duty.

Plaintiffs also fail to allege breach. First, Plaintiffs merely offer rampant speculation about the configuration of the Meta Pixel on KSB's website while simultaneously acknowledging that the Meta Pixel must be affirmatively configured in a certain way before it can improperly disclose Private Information to Facebook. Plaintiffs go to great lengths to explain how the Meta Pixel technology works, but in doing so they infer with no factual support that KSB affirmatively **configured** Meta Pixel in any way which would track or disclose Private Information. Second, there is no well-pled allegation that the information Plaintiffs submitted on KSB's website even constitutes PHI. *See Santoro v. Tower Health*, CV 22-4580, 2024 WL 1773371, at *4 (E.D. Pa. Apr. 24, 2024) (dismissing federal Wiretap Act and negligence claims against hospital because plaintiff "lack[ed] specific examples of what HIPAA-protected information from plaintiffs was transferred to Meta.").

### iii. Plaintiffs Fail to Allege Any Injury Proximately Caused by a Breach.

Plaintiffs do not allege what Private Information they entered or what PHI was compromised. They do not allege where or when they entered PII or PHI and do not allege what loss they incurred, monetary or otherwise. *See In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 403 (E.D. Va. 2020) (rejecting claim of lost value of data because "[p]laintiffs do not allege any facts explaining *how* their PII became less valuable as a result of the breach.") (emphasis in original). Here, Plaintiffs do not plausibly allege injury because nothing in the Complaint plausibly suggests that the disclosure of Plaintiffs' information from KSB to Meta reduced the value of their Private Information. *See Wittmeyer*, 2024 WL 182211, at *6 ("Illinois has declined to hold that the alleged diminution in value of plaintiffs' personal information amounts to actual monetary damages.") (quotations and citation omitted).

### iv. The Economic Loss Doctrine Bars Plaintiffs' Negligence Claims.

Illinois' economic loss rule bars a plaintiff from recovering for purely economic losses under a tort theory of negligence. *Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill.2d 69 (1982). "The rationale underlying this doctrine is that tort law affords the proper remedy for loss arising from personal injury or damages to one's property, whereas contract law and the Uniform Commercial Code provide the appropriate remedy for economic loss stemming from diminished commercial expectations without related injury to person or property." *In re Michaels Stores Pin Pad Litigation*, 830 F. Supp. 2d 518, 528 (N.D. Ill. 2011) (citing *In re Ill. Bell Switching Station Litig.*, 161 Ill. 2d 233 (1994)); *see also Doe v. Genesis Health System*, No. 23-cv-4209-JES-JEH, 2024 WL 3890164, at *11-12 (C.D. Ill. Aug. 21, 2024) (dismissing Meta Pixel tracking negligence and negligence *per se* claims under *Moorman* doctrine).

### B.     Breach of Express and Implied Contract

Under Illinois law, the elements for an implied-in-fact contract and a breach of contract are the same. *Archey v. Osmose Utilities Servs., Inc.*, 20-CV-05247, 2022 WL 3543469, at *2 (N.D. Ill. Aug. 18, 2022). To plead breach of an implied-in-fact contract in Illinois, a plaintiff must allege: (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff. *Henderson–Smith & Assocs. v. Nahamani Family Serv. Ctr.,* 323 Ill. App. 3d 15, 27 (1st Dist. 2001)) (internal quotations omitted). The terms of an implied-in-fact contract, however, unlike an express contract, are inferred from the conduct of the parties. *Gociman v. Loyola*, 41 F.4th 873, 883 (7th Cir. 2022).

Here, Plaintiffs fail to allege the existence of a valid and enforceable contract. Plaintiffs do not allege any conduct that occurred between themselves and Defendant which would infer the creation of an implied contract. Plaintiffs do not allege ever having read Defendant's Patients' Rights notice or Privacy Policy, nor do they allege any other facts that might establish assent. Plaintiffs also fail to allege any performance on their part other than stating, in a conclusory fashion, that they performed their obligations. Compl. ¶ 270. Even if there was an implied contract between KSB Hospital and Plaintiffs for the providing of medical care, that does not mean an implied contract was formed for all purposes. That Plaintiffs visited KSB's website and navigated around it was not a condition to an implied contract for medical care. Plaintiffs seemingly claim that because they were patients of KSB Hospital, they have an implied contract governing the disclosure of information in every interaction between Plaintiffs and KSB Hospital. There is no legal authority to stretch the scope of any purported implied contract to cover the conduct of which Plaintiffs complain, and the Court should decline to find such a broad scope to any implied contract.

21

Furthermore, Plaintiffs fail to allege any resulting injury-in-fact. The Complaint is devoid of any allegations that any of the named plaintiffs suffered any monetary damages cognizable under Illinois law. To state a breach of contract claim under Illinois law, a plaintiff must allege actual monetary damages, that is, "an actual loss or measurable damages resulting from the breach." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 296 (2005). A diminution of value of personal information does not amount to actual monetary damage. *Wittmeyer*, 2024 WL 182211, at *6. As a result, Counts III and IV should be dismissed for failure to allege an express or implied agreement or assent, any performance by Plaintiffs, and any cognizable damages.

### C.    Unjust Enrichment

"[U]njust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery." *Ambrosius v. Chicago Athletic Clubs, LLC*, 2021 IL App (1st) 200893 (2021), ¶ 49 (citations omitted). Rather, "it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence[.]" *Alliance Acceptance Co. v. Yale Insurance Agency, Inc.,* 271 Ill. App. 3d 483, 492 (1st Dist. 1995), Alternatively, it may be based on contracts which are implied in law. *Perez v. Citicorp Mortgage, Inc.,* 301 Ill. App .3d 413, 425 (1st Dist. 1998). Here, Plaintiffs have not alleged how KSB engaged in fraud, duress, or undue influence. There is no allegation that KSB made Plaintiffs (or any purported class member) visit their website or share Private Information therein. For the reasons explained above, Plaintiffs have failed to state a claim for breach of implied contract and therefore, Plaintiffs' unjust enrichment claim should be dismissed, too.

### D.    Illinois Eavesdropping Statute

To sufficiently state a claim pursuant to the Illinois Eavesdropping Statute that involves a "private electronic communication," Plaintiffs must show that KSB knowingly and intentionally

"intercept[ed], record[ed], or transcribe[d], in a surreptitious manner, any private electronic communication to **which he or she is not a party** […]." 720 ILCS 5/14-2(a)(3) (emphasis added). After being struck down as unconstitutionally overbroad, the Illinois Eavesdropping Statute was amended in December 2014 to add the foregoing section which specifically applies to private electronic communications. Plaintiffs cannot plausibly allege eavesdropping because KSB was a party to the private electronic communication. Additionally, Plaintiffs fail to allege what section of the Illinois Eavesdropping Statute KSB violated. Count VII must be dismissed.

Completely absent from Count VII is what section of the Illinois Eavesdropping Statute KSB allegedly violated and Plaintiffs' claim should be dismissed for that reason alone. Plaintiffs allege KSB:

> intentionally recorded and/or acquired Plaintiffs' and Class Members' private electronic communications, without […] consent […] using Pixel and similar tracking technologies on its Online Platforms. […] for the purpose of disclosing those communications to third parties, including Facebook and Google, without the knowledge, consent, or written authorization of Plaintiffs or Class Members.

Compl. ¶¶ 309-910. Plaintiffs further allege:

> Without Plaintiffs' or Class Members' knowledge, authorization, or consent, Defendant used the Pixel imbedded and concealed into the source code of its Online Platforms to secretly record and transmit Plaintiffs' and Class Members' private communications to hidden third parties, such as Facebook and Google, as described in the preceding paragraphs[…][and] Defendant aided in the interception of communications between Plaintiffs and Class Members and Defendant that were redirected to and recorded by third parties without Plaintiffs' or Class Members' consent.

*Id.* ¶¶ 317 and 322.

While Plaintiffs cite "720 ILCS 5/14-2(a),-4" (Compl. ¶ 303) in Count VII, Plaintiffs' direct allegations seem to combine the language of multiple sections of the statute that are not applicable to private electronic communications. This is significant. In *A.D. v. Aspen Dental Mgmt., Inc.*, the court dismissed plaintiffs' claims under the Illinois Eavesdropping Statute because

if found that "private conversation" used in 720 ILCS 5/14-2(a)(2) did not include private electronic communications. No. 24 C 1404, 2024 WL 4119153 (N.D. Ill. Sept. 9, 2024). In its analysis, the court explained that "[a]fter defining 'private conversation,' the statute separately defines 'private electronic communication'[…] [and] [t]he difference in these definitions suggests legislative intent to distinguish between the disclosure of conversations, like those occurring in-person or over the phone, and electronic communications, like the private user data and appointment scheduling information at issue here." *Id*. at *4. Here, Plaintiffs also cite 720 ILCS 5/14-2(a)(2) and then goes on to use a combination of sections to state their claims against KSB.

Plaintiffs' Illinois Eavesdropping claims should be dismissed because 720 ILCS 5/14-2(a)(2) is not applicable to private electronic communications. And the section that is applicable to private electronic communications, section 5/14-2(a)(3), specifically states that a person commits eavesdropping when he "[i]ntercepts, records, or transcribes, in a surreptitious manner, any private electronic communication **to which he or she is not a party** unless he or she does so with the consent of all parties to the private electronic communication. 720 ILCS 5/14-2(a)(3). Because Plaintiffs concede throughout the Complaint that they intended KSB to receive their private electronic communications, their claims fail on their face. Equally important, Plaintiffs have failed to "describe the[ir] claim in sufficient detail to give [KSB] fair notice of the claim **and [the] grounds on which it rests."** *Macovski v. Groupon, Inc.,* 553 F. Supp. 3d 460, 473 (N.D. Ill. 2021) (emphasis added). KSB should not be forced to guess what section of the Illinois Eavesdropping Statute it must defend against. Count VII should be dismissed.

### E.  Bailment

In order to properly plead the existence of and the right to recover under a bailment theory, a plaintiff must establish (1) an express or implied agreement to create a bailment; (2) a delivery

of the property in good condition; (3) the bailee's acceptance of the property; and (4) the bailee's failure to return the property or the bailee's redelivery of the property in a damaged condition." *Wausau Ins. Co. v. All Chicagoland Moving & Storage Co.,* 333 Ill. App. 3d 1116, 1121 (2002). "Among the necessary elements of a bailment are an agreement by the bailor to transfer or deliver and the bailee to accept exclusive possession of goods for a specified purpose, the actual delivery or transfer of exclusive possession of the property of the bailor to the bailee, and acceptance of exclusive possession by the bailee." *Kirby v. Chi. City Bank & Tr. Co.*, 403 N.E.2d 720, 723 (Ill. App. Ct. 1980)). Bailment thus deals with the delivery and return of personal property: it has nothing to do with the transfer of electronic information. It is well settled that "[t]he law of bailment in Illinois does not map onto the circumstances of this case, as no one can have 'exclusive possession' of another person's personal information." *In re Mondelez Data Breach Litig.*, 23 C 3999, 2024 WL 2817489, at *9 (N.D. Ill. June 3, 2024); *see also Chestnut Health Sys., Inc.*, 2025 WL 1616635, at *6 (same, in Meta Pixel tracking case). Plaintiffs neither allege, nor can they plausibly believe, that information they entered on the Website can be considered personal property or that they can or should expect information entered on a website to be physically returned to them. This cause of action is frivolous.

## CONCLUSION

Plaintiffs have had enough bites at the apple. The Court should dismiss their Class Action Complaint in its entirety with prejudice.[14]

*(signature on following page)*

---

[14] In separate briefing requested by the Court, KSB argues that Plaintiffs have failed to establish Article III standing to bring suit because they have not alleged any concrete injury-in-fact. *See* Doc. 31, Defendant KSB Hospital's Response in Opposition to Plaintiffs' Supplemental Brief on Jurisdiction & Standing. KSB respectfully incorporates those arguments in this Motion to Dismiss.

This 5th day of December, 2025.

Respectfully submitted,

**_/s/ Sanjay S. Karnik_**
Sanjay S. Karnik
Ill. Reg. No. 6300156
Brittany M. Cambre*
Brandi Z. Burton-Murrain
Ill. Reg. No. 6323698
CHILIVIS GRUBMAN, LLP
159 N. Sangamon Street, Suite 313A
Chicago, IL 60607
Tel: (872) 260-6679
Fax: (404) 261-2842
skarnik@cglawfirm.com
bcambre@cglawfirm.com
bmurrain@cglawfirm.com

*Counsel for KSB Hospital*

*\*pro hac vice forthcoming*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 5th day of December, 2025, I have caused the electronic filing of the foregoing document described as **MEMORANDUM IN SUPPORT OF DEFENDANT KSB'S HOSPITALS RULE 12(b)(6) AND 12(b)(1) MOTION TO DISMISS** through the CM/ECF system, which will serve all parties of record.

<u>*/s/ Sanjay S. Karnik*</u>
Sanjay S. Karnik