**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| CHLOE NOFTZ, TONYA BLACK and KENNETH WEINSTOCK, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:24-cv-08100 |
| v. | ) ) ) | Honorable Martha M. Pacold |
| KSB HOSPITAL FOUNDATION d/b/a KSB HOSPITAL F/K/A KATHERINE SHAW BETHEA HOSPITAL, | ) ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO**
**DISMISS AND MEMORANDUM IN SUPPORT**

i

**TABLE OF CONTENTS**

I.       INTRODUCTION ................................................................................................ 1

II.     FACTUAL & PROCEDURAL BACKGROUND ...................................................... 2

III.    STANDARD......................................................................................................... 4

IV.    ARGUMENT........................................................................................................ 5

      A.   KSB Violated the Electronic Communications Privacy Act ................................ 5

      B.   KSB Violated the Computer Fraud and Abuse Act.............................................. 10

      C.   This Court Has Jurisdiction Over the CAFA Claims ........................................... 11

      D.   The Court Should Exercise Supplemental Jurisdiction ....................................... 12

      E.   Plaintiffs Sufficiently Pleaded Each of Their Claims.......................................... 12

          i.   Plaintiffs sufficiently pleaded negligence and negligence per se ..................... 12

          i.   Plaintiffs sufficiently alleged valid legal duty .................................................. 13

          ii.   Plaintiffs sufficiently alleged breach ............................................................... 15

          iii.   Plaintiffs sufficiently alleged causation ........................................................... 17

          iv.   Plaintiffs' claims are not barred by the economic loss doctrine ................... 18

      F.   Breach of Contract ......................................................................................... 19

      G.   Unjust Enrichment .......................................................................................... 21

      H.   KSB Violated the Illinois Eavesdropping Statute............................................... 22

      I.   Bailment........................................................................................................ 24

V.      CONCLUSION.................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D., et al., v. Aspen Dental Management, Inc.*,
2024 WL 4119153 (N.D.Ill. Sept. 9, 2024) ...............................................................1, 5, 13, 22

*ACI Payments, Inc. v. Conservice, LLC*,
2022 WL 622214 (D. Utah Mar. 3, 2022) ..............................................................................10

*ACW Flex Pack LLC v. Wrobel*,
2023 WL 4762596 (N.D. Ill. July 26, 2023)...........................................................................11

*Allen*, 2018 U.S. Dist. LEXIS 192066 at *4 ................................................................................5, 6

*American Hospital Association v. Becerra*,
2024 WL 3075865 (N.D. Tex. June 20, 2024) ...........................................................8, 9, 14, 15

*Anaya v. Birck*,
2024 WL 2209345 (N.D. Ill. May 16, 2024).........................................................................11

*In re Arthur J. Gallagher Data Breach Litig.*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) ..........................................................................13, 17, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................................4

*Bessemer Sys. Fed. Credit Union v. Fiserv Sols., LLC*,
472 F. Supp. 3d 142 (W.D. Pa. 2020)....................................................................................25

*Best v. Taylor Mach. Works*,
689 N.E.2d 1057 (1997)........................................................................................................13

*Coy v. Washington Cnty. Hosp. Dist.*,
372 Ill. App. 3d 1077 (2007) ..................................................................................................1

*Dancel v. Groupon, Inc.*,
940 F.3d 381 (7th Cir. 2019) ................................................................................................11

*Doe v. Coffee Reg'l Med. Ctr., Inc.*,
2024 Ga. Super. LEXIS 602 (Ga. Super. Ct. Sept. 6, 2024)....................................................25

*Doe v. County of Santa Clara*,
2024 WL 3346257 (N.D. Cal. July 8, 2024).................................................................15

*Doe v. Univ. Health Sys., Inc.*,
2024 Tenn. Ch. LEXIS 2 (Tenn. Ch. Aug. 9, 2024).....................................................15

*Flores v. Aon Corp.*,
2023 IL App (1st) 230140................................................................................ *passim*

*Geisberger v. Willuhn*,
72 Ill. App. 3d 435 (1979) ...........................................................................................20

*Hansen v. Bd. of Trustees of Hamilton*,
551 F.3d 599 (7th Cir. 2008) .......................................................................................12

*Hartley v. Univ. of Chicago Med. Ctr.*,
2023 U.S. Dist. LEXIS 200619 (N.D. Ill. Nov. 8, 2023).............................................6, 7

*Hartley v. University Of Chicago Medical Center, et al.*,
2024 WL 1886909 (N.D. Ill. Apr. 30, 2024) ...................................................1, 5, 6, 8

*Jurgens*, 2017 U.S. Dist. LEXIS 186999 at *2, *13 .........................................................5

*Kane, et al., v. University of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024)..............................................................25

*Kirby v. Chicago City Bank & Tr. Co.*,
82 Ill. App. 3d 1113 (App.Ct.Ill.1980) .......................................................................24

*Kremen v. Cohen*,
337 F.3d 1024 (9th Cir. 2003) .....................................................................................25

*Krupa v. TIC Int'l Corp.*,
2023 WL 143140 (S.D. Ind. Jan. 10, 2023).....................................................2, 13, 25

*Kurowski et al. v. Rush*,
2024 WL 3455020 (N.D. Ill. July 18, 2024)................................................... *passim*

*Kurowski v. Rush Sys. for Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023)..................................................................1

*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) .............................................................1, 6, 7, 9

*Kurowski v. Rush Sys. for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ................................................................1, 6, 7

*Liddle v. Salem Sch. Dist.*,
249 Ill.App.3d 768 (App.Ct.Ill.1993) ....................................................................24, 25

iv

*Lopez v. Clifford Law Offices, P.C.*,
    362 Ill. App. 3d 969 (2005) ...................................................................................18

*Lozada v. Advoc. Health & Hosps. Corp.*,
    2018 IL App (1st) 180320-U ....................................................................................2

*Lujan v. Defenders of Wildlife*,
    505 U.S. 555 (1992)..................................................................................................4

*Martin by Martin v. Ortho Pharm. Corp.*,
    169 Ill. 2d 234 (1996) ............................................................................................13

*Meck v. Paramedic Servs. of Illinois*,
    296 Ill. App. 3d 720 (1998) ...................................................................................18

*In re Meta Pixel Tax Filing Cases*,
    724 F. Supp. 3d 987 (N.D. Cal. 2024) ...................................................................23

*Moonlight Mountain Recovery, Inc. v. McCoy*,
    2024 WL 4027972 (D. Idaho Sept. 3, 2024)..........................................................11

*Moorman Manufacturing Co. v. National Tank Co.*,
    91 Ill. 2d 69 (1982) ...........................................................................................18, 19

*Norfolk Cnty. Ret. Sys. v. Ustian*,
    2009 WL 2386156 (N.D. Ill. July 28, 2009).............................................................5

*Perdue v. Hy-Vee, Inc.*,
    455 F. Supp. 3d 749 (C.D. Ill. 2020) .....................................................................14

*Petrillo v. Syntex Lab'ys, Inc.*,
    499 N.E.2d 952 (1986).............................................................................................13

*Posner v. Davis*,
    76 Ill. App. 3d 638 (1979) .....................................................................................20

*Prairie Rivers Network v. Dynegy Midwest Generation, LLC*,
    2 F.4th 1002 (7th Cir. 2021) ....................................................................................4

*Reyes v. City of Chicago*,
    585 F. Supp. 2d 1010 (N.D. Ill. 2008) .....................................................................5

*Roberson v. Maestro Consulting Servs. LLC*,
    507 F. Supp. 3d 998 (S.D. Ill. 2020).......................................................................12

*Robinson v. St. Clair Cnty.*,
    144 Ill. App. 3d 118 (App.Ct.Ill.1986) ..................................................................24

v

*Rodriguez v. FastMed Urgent Care, P.C.*,
  2024 U.S. Dist. LEXIS 130990 (E.D.N.C. July 24, 2024) ......................................................7

*Silha v. ACT, Inc.*,
  807 F.3d 169 (7th Cir. 2015) .............................................................................................4

*Smith v. Google*,
  2024 WL 2808270 (N.D. Cal. June 3, 2024) .........................................................................23

*Smith, et al. v. Loyola University Medical Center*,
  2024 WL 3338941 (N.D. Ill. July 9, 2024)........................................................................ *passim*

*Sweeney v. Raoul*,
  990 F.3d 555 (7th Cir. 2021) .............................................................................................4

*United States v. Thompson*,
  2022 WL 834026 (W.D. Wash. Mar. 21, 2022), *reconsideration denied*, 2022
  WL 1719221 (W.D. Wash. May 27, 2022)............................................................................11

*Wallace v. Health Quest Sys., Inc.*,
  2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021) .......................................................................25

*Weisenberger v. Ameritas Mut. Holding Co.*,
  597 F. Supp. 3d 1351 (D. Neb. 2022)...................................................................................25

**Statutes**

720 ILCS 5/14-2 .............................................................................................................22, 23, 24

720 ILCS 5/14-2(a) .................................................................................................................23

720 ILCS 5/14-2(a)(2) .............................................................................................................23

720 ILCS 5/14-2(a)(5) .............................................................................................................23

18 U.S.C. § 2511(2)(d) .............................................................................................................5

18 U.S.C. § 2511(3)(a)..............................................................................................................9

CAFA...........................................................................................................................11, 12

CFAA...........................................................................................................................10, 11, 12

Class Action Fairness Act, 28 U.S.C. § 1332(d) .........................................................................12

Computer Fraud and Abuse Act, 18 U.S.C. § 1030.....................................................................10

ECPA ......................................................................................................................... *passim*

Electronic Communications Privacy Act ........................................................................5

FDCA ..........................................................................................................................13

FTC Act ................................................................................................................13, 14

HIPAA ................................................................................................................. *passim*

Information Protection Act ...........................................................................................13

KSB Violated the Computer Fraud and Abuse Act .......................................................10

KSB Violated the Electronic Communications Privacy Act ...........................................5

**Other Authorities**

Rule 8(a)(2) ..................................................................................................................4

Rule 12(b)(6) ................................................................................................................4

## I.  INTRODUCTION

Defendant KSB Hospital Foundation d/b/a/ KSB Hospital F/K/A Katherine Shaw Bethea Hospital ("Defendant" or "KSB") purposefully installed third-party trackers on its website. When patients like Chloe Noftz, Tonya Black, and Kenneth Weinstock ("Plaintiffs") visited the website, including authenticated portions like the patient portal, the trackers recorded patients' confidential health communications with Defendant. The trackers then disclosed those communications to third parties, like Facebook and Google, without patient consent or knowledge.

"Illinois has a strong and broad public policy in favor of protecting the privacy rights of individuals with respect to their medical information." *Coy v. Washington Cnty. Hosp. Dist.*, 372 Ill. App. 3d 1077, 1082 (2007). "Individuals have a right to and an expectation of privacy related to their medical information, and this right and expectation of privacy is reflected in our public policy." *Id.* at *1083. Defendant completely disregarded its patients' rights and expectations of privacy, and its own promises of privacy, and instead used trackers to record and send a wealth of Plaintiffs' personal, private, confidential health information to third parties.

Many courts in this state have held such claims may proceed. *See, e.g., Kurowski et al. v. Rush*, 2024 WL 3455020 (N.D. Ill. July 18, 2024) ("*Kurowski IV*") (in online tracking technology case, denying defendant's motion for judgment on the pleadings and allowing claims to proceed); *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ("*Kurowski III*") (in online tracking technology case, denying motion to dismiss and allowing claims to proceed); *A.D., et al., v. Aspen Dental Management, Inc.*, 2024 WL 4119153 (N.D.Ill. Sept. 9, 2024) ("*Aspen Dental*") (same); *Smith, et al. v. Loyola University Medical Center*, 2024 WL 3338941 (N.D. Ill. July 9, 2024) ("*Loyola*") (same); *Kurowski v. Rush Sys. for Health*, 683 F. Supp. 3d 836 (N.D. Ill. 2023) ("*Kurowski II*") (same); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931 (N.D. Ill. 2023) ("*Kurowski I*") (same); *Hartley v. University Of Chicago Medical Center, et al.*, 2024 WL

1

1886909 (N.D. Ill. Apr. 30, 2024) ("*Hartley II*") (same); *Krupa v. TIC Int'l Corp.*, 2023 WL 143140 (S.D. Ind. Jan. 10, 2023) ("*Krupa*") (in similar data breach context, denying motion to dismiss); *Lozada v. Advoc. Health & Hosps. Corp.*, 2018 IL App (1st) 180320-U (same); *Flores v. Aon Corp.*, 2023 IL App (1st) 230140 ("*Flores*") (same); *see also* DE 16-1 (listing eighty orders denying motions to dismiss in healthcare online tracking technology cases with identical allegations and identical claims to those here); DE 19 (notice of supplemental authority).

Defendant presents no valid legal reason why Plaintiffs' claims should be dismissed. Plaintiffs sufficiently stated their claims. Defendant failed to meet its heavy burden, and Plaintiffs asks that this Court deny Defendant's motion to dismiss in its entirety.

## II.    FACTUAL & PROCEDURAL BACKGROUND

Defendant is a trusted Illinois healthcare provider. Class Action Complaint, DE 1, ("Compl.") ¶¶ 39-42. Plaintiffs are Defendant's patients and have received healthcare services from Defendant, including primary care treatment, pain management, and OBGYN care. *Id.* ¶¶ 129-155. As part of Plaintiffs' medical care, at Defendant's direction and encouragement, Plaintiffs relied on Defendant's website to communicate confidential patient information, including: to check medical bills and to view test results, schedule appointments, track prescriptions, and locate contact information for physicians, and manage a variety of treatments for kidney stones, physical therapy appointments, and general pain management. *Id.* ¶¶ 131-55. Plaintiffs reasonably expected that these communications with Defendant were confidential and would not be transmitted to or intercepted by a third party—in essence, that the information would be safeguarded according to Defendant's Privacy Policies and the law. *Id.* ¶¶ 131, 143, 157.

In its Privacy Policy, Defendant explicitly acknowledges and promises that, "In these cases we never share your information unless you give us written permission: • Marketing purposes. • Sale of your information" *Id.* ¶ 82. Defendant further states that "we will not use or share your

information other than as described here unless you tell us we can in writing." *Id.* ¶ 83. Plaintiffs did not consent to Defendant's disclosures. *Id.* ¶¶ 12, 131, 143, 154.

Unfortunately, Defendant does share protected health information without written authorization. *Id.* ¶¶ 1, 23. Defendant does so via "trackers" or "tracking technologies," that it knowingly configured and implemented into its Website. *Id.* ¶ 1, 10. These trackers collected and transmitted patients' Personally Identifying Information ("PII") and/or Protected Health Information ("PHI") (collectively, "Private Information") to Facebook, Google Analytics and Google Tag Manager (together, "Google"), Innovid, CallRail, and others potentially others (the "Third Parties"), without patients' knowledge or authorization ("the Disclosure"). *Id.* ¶¶ 1, 12, 125. This Private Information included the pages and content Plaintiffs viewed; Plaintiffs' seeking of medical treatment; Plaintiffs' status as patients; information regarding Plaintiffs' patient portal activity; the specialties of the medical providers Plaintiffs searched for and viewed; the names of the medical providers Plaintiffs searched for and viewed; the search results that Plaintiffs clicked on; the medical services Plaintiffs viewed; and Plaintiffs' identities. *Id.* ¶¶ 138, 149, 161.

Defendant's Disclosure was for the purpose of marketing its services, enhancing marketing efforts, and bolstering its profits. *Id.* ¶¶ 1, 19, 28, 42, 50. The Third Parties, in turn, sold Plaintiffs' Private Information to fourth-parties. *See e.g.*, *id.* ¶¶ 21. As a direct result of Defendant's and the Third Parties' sale of their Private Information, Plaintiffs receive targeted advertisements directly related to the treatment they sought from, and Private Information they shared with, Defendant. *Id.* ¶¶ 133, 151, 156. Because of Defendant's actions, Plaintiffs suffered injuries, including monetary damages, loss of privacy, statutory damages, unauthorized disclosure of (and access to) their Private Information to/by third and fourth parties, use of their Private Information for advertising purposes, embarrassment, humiliation, frustration, and emotional distress, diminution

of the value of their Private Information, lost benefit of the bargain, and increased risk of future harm from further unauthorized use and disclosure of their information. *Id.* ¶¶ 140, 151, 161.

Plaintiffs filed this case on September 5, 2024. DE 1. KSB moved to dismiss on November 8, 2024, and Plaintiffs responded. DE 12, 16, 17. Plaintiffs submitted supplemental authority on April 1, 2025. DE 19. On September 11, 2025, this Court held oral argument on the motion. DE 25, 29 (transcript). On September 29, 2025, this Court struck KSB's initial motion to dismiss and requested additional briefing on jurisdiction, which the parties submitted. DE 28, 30, 31, 32. On December 5, 2025, KSB refiled its motion to dismiss. DE 34.

## III.   STANDARD

To establish standing, Plaintiffs must plead an "'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized;" an injury that is "fairly traceable to the defendant"; and likely to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 505 U.S. 555, 560-61 (1992); *Sweeney v. Raoul*, 990 F.3d 555, 559 (7th Cir. 2021). Defendant asserts that Plaintiffs have not sufficiently pled an injury in fact or one fairly traceable to Defendant, which is facial challenge to standing. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). In a facial challenge, the court "accept[s] all well-pleaded factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021) (citation omitted).

Rule 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, giving "the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion "does not require 'detailed factual allegations'"; it merely needs "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "When

4

ruling on a motion to dismiss for failure to state a claim, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor." *Norfolk Cnty. Ret. Sys. v. Ustian*, 2009 WL 2386156, at *3 (N.D. Ill. July 28, 2009). "[D]efendants have the burden of demonstrating the legal insufficiency of the complaint—not the plaintiffs or the court." *Reyes v. City of Chicago*, 585 F. Supp. 2d 1010, 1017 (N.D. Ill. 2008).

## IV.  ARGUMENT

### A.  KSB Violated the Electronic Communications Privacy Act

Plaintiffs sufficiently alleged their federal wiretap claim under the Electronic Communications Privacy Act ("ECPA") by alleging Defendant intentionally employed third-party source code to intercept and disclose their Protected Information to third parties without their consent. Compl. ¶¶ 326-44. Illinois district courts—including four different Courts in the Northern District of Illinois—have found allegations are sufficient *in this exact context. See, e.g.*, *Loyola*; *Aspen Dental*; *Kurowski IV*; *Hartley*. The Court should deny Defendant's Motion to Dismiss Plaintiffs' claims under the Electronic Communications Privacy Act ("ECPA").

### i.   *The Crime Tort Exception Applies*

KSB first relies on the "one party consent" provisions of the ECPA. However, the one-party consent provision is not available if the disclosure itself constitutes a tort or a criminal act (referred to herein as the "Crime Tort Exception"). 18 U.S.C. § 2511(2)(d). The Northern District of Illinois has rejected this argument. *See Kurowski IV*; *Aspen Dental*; *Loyola*.

KSB cites *Jurgens* and *Allen* for the proposition that Plaintiffs' ECPA claim should fail because it does not allege an "interception." MTD p. 5. Because there was neither a third party, nor a tort or criminal act, involved in *Jurgens,* that case is irrelevant. *See Jurgens*, 2017 U.S. Dist. LEXIS 186999 at *2, *13. *Allen* involved the balance of consumers' mortgage and the value of consumers' homes being disclosed to a marketing company. *Allen*, 2018 U.S. Dist. LEXIS 192066

at *4. That plaintiff waived any argument on interception by failing to respond to the defendant's arguments. *Id*. at *11. Thus, *Allen* is similarly not persuasive and should be disregarded. KSB's citation to *Kurowski I* is similarly misplaced. MTD p. 6. In *Kurowski I*, the court found that the defendant hospital's collection of patient IP addresses, cookie identifiers, device identifiers, account numbers, URLs, other "unique identifying numbers, characteristics, or codes," was insufficient to invoke the Crime Tort Exception because the collection of such data could not support an inference that the defendant disclosed its patients' individually identifiable health information as defined by HIPAA. *Kurowski I*, 659 F. Supp. 3d at 935-936, 938.[1] But Plaintiffs' allegations go far beyond the allegations in *Kurowski I*. Plaintiffs allege that, in addition to identifying information, KSB disclosed, *inter alia*, Plaintiffs' seeking of specific treatments, for specific conditions, including treatment for a broken toe, kidney stones, pain management, and physical therapy. Compl. ¶¶ 132, 155. Plaintiffs further allege that KSB disclosed Plaintiffs' their identities, their statuses as patients, their searches for specific physicians, the specialties of those physicians, and the names of those physicians, their searches for health conditions and the treatments they sought, their activities related to their patient portal activity, their activities related to scheduling appointments, and their bill pay activity. *Id*. ¶¶ 132, 138, 144, 149, 155, 161.

KSB next claims that this case is analogous to *Hartley v. Univ. of Chicago Med. Ctr.*, 2023 U.S. Dist. LEXIS 200619, at *1 (N.D. Ill. Nov. 8, 2023) ("*Hartley I*") where the court held that the Crime Tort Exception did not apply. *Id*. at *5-6. Plaintiffs' allegations are not vague as in *Hartley I*. Instead, Plaintiffs' allegations are akin to *Hartley II*, curiously omitted by KSB in its brief. There, the court considered the *Hartley I* plaintiff's amended complaint which alleged the defendant hospital disclosed that the plaintiff was "seeking specific medical specialists," seeking

---

[1] KSB's argument that *Kurowski I* was "affirmed on reconsideration" in *Kurowski II* is disingenuous. MTD p. 6. In *Kurowski IV*, plaintiff's ECPA claim was allowed.

to "obtain prescriptions of various medications" and "seeking information about sexually transmitted diseases" to Facebook. *Id*. at *6-7. The court held that because the plaintiff alleged Facebook sold the plaintiff's PHI to entities that sent her targeted advertisements, "it is plausible that [the defendant] could be responsible for acquiring [p]laintiff's [PHI] with the purpose of disclosing it to Meta for their mutual financial benefits." *Id*. at *6. Such allegations constituted violations of HIPAA, and therefore, the Crime Tort Exception applied. *Id*. at *5-7. Plaintiffs plead that KSB shared, traded, or sold their Private Information – including their identities along with their searches for specific physicians to treat specific treatments – to Facebook and other third parties, and received targeted advertisements reflecting that information. Compl. ¶¶ 123-125, 132, 133, 138, 144, 149, 155-56 161. The Crime Tort Exception applies.

Second, KSB asserts that in "several other Meta Pixel cases" courts have found that the Crime Tort Exception does not apply. MTD p. 7. In support, KSB again cites *Kurowski I*, *Hartley I*, and *Kurowski II*. As explained above, these cases are not persuasive. Further, Defendant makes no mention of the court's most recent holding in the *Kurowski* litigation – *Kurowski IV*. There, the court held that plaintiff's second amended complaint, alleging that the defendant intercepted and transmitted specific information regarding her appointments, providers, health conditions, and care as a Rush patient, were communications that fall squarely within the meaning of Private Information—and that the Crime Tort Exception ***does*** apply. *Id*. So too here.

Finding no authority in the Seventh Circuit to support its claims, KSB directs the Court to *Rodriguez v. FastMed Urgent Care, P.C.*, 2024 U.S. Dist. LEXIS 130990, at *5 (E.D.N.C. July 24, 2024). The court in *Kurowski IV* rejected the argument in *Rodriguez*, "see[ing] no persuasive reason to read a heightened willfulness requirement into the crime-or-tort exception." *Kurowski IV*, at *3. The ECPA's "purpose" requirement applies to "'any criminal or tortious act in violation

of the Constitution or laws of the United States or of any State,'" which "sweeps in both sophisticated offenses and straightforward ones," such as an unlawful disclosure of PHI under HIPAA. *Id*. The court explained that because the plaintiff alleged that the defendant had the "ability to select which specific pages" would intercept and transmit patients' communications to Facebook and other third parties, and that "it actively chose to employ the tracking technology on certain pages of its website," a reasonable factfinder could infer the defendant "consciously desired" to intercept and transmit patients' PHI. *Id.* at *15.

As in *Kurowski IV*, Plaintiffs here allege that KSB disclosed their Private Information to Facebook and other third parties in violation of HIPAA. Compl. ¶¶ 10, 12, 15, 20, 25, 42, 86-88, 122-128, 138, 149, 161, 172-179. Further, as in *Kurowski IV*, Plaintiffs allege that "Defendant could have chosen not to use the Meta Pixel, or it could have configured it to limit the information that it communicated to Facebook, but it did not. Instead, it intentionally selected and took advantage of the features and functionality of the Pixel" that resulted in the disclosures of Plaintiffs' Private Information. Compl. ¶ 122. The Court should follow the authority set forth in *Kurowski IV*, *Smith*, and *Hartley II*, and reject KSB's "purpose" argument.

Finally, KSB argues that the Private Information it disclosed cannot be PHI because it was not "entered on any authenticated page." MTD p. 8. No authority exists for such a requirement. The case KSB relies on, *American Hospital Association v. Becerra*, 2024 WL 3075865 (N.D. Tex. June 20, 2024), did not rule that any disclosures must be "medical records" or PHI within a patient portal, as KSB suggests. MTD p. 8. Rather, that court held that the Department of Health and Human Services Office of Civil Rights ("HHS") exceeded its authority by issuing guidance prohibiting healthcare providers from utilizing "an online technology" that discloses (1) an individual's IP address along with (2) a visit to an unauthenticated public webpage addressing

specific health conditions or healthcare providers. *Id.* at *2. However, as the *Becerra* court was careful to note, "[s]uch vacatur is not intended to, and should not be construed as, limiting the legal operability of other guidance in the germane HHS document." *Id.* at *17, n.8.

Furthermore, as discussed below, the *Becerra* court specifically observed that the HHS guidance "contains an array of guidance for covered entities, much of which is both legally and pragmatically sound." *Id.* at * 4, n.3. Among the "legally and programmatically sound" guidance tacitly approved by the *Becerra* court were "deploying tracking technologies on *unauthenticated* webpages" such as pages where patients schedule appointments, pay bills, on "login" pages, or "deploying tracking technologies on unauthenticated health webpages that share personal identifiers such as patients' names…or user IDs (like a Facebook ID)." (emphasis added) Plaintiffs alleged all of these disclosures. Compl. ¶¶ 10, 12, 15, 20, 25, 42, 86-88, 122-128, 138, 149, 161.

### ii. KSB is an "electronic communications provider" under the ECPA

KSB's argument that it is not a "provider" rests on a misreading of the statute. The statute imposes liability on any "person or entity providing an electronic communication service to the public." 18 U.S.C. § 2511(3)(a). There is no question that Defendant "provided," i.e., made available, its website to the public. *See* Compl. ¶¶ 11, 41, 131, 143, 154.

KSB claims that "several courts" have held that "an electronic communications service allows users to communicate with each other, such as an email provider" but this is not the law in the Seventh Circuit. MTD p. 9. Defendant again cites dicta in *Kurowski I* with no reference to *Kurowski IV*, where the plaintiff's ECPA claim was allowed to proceed. Moreover, courts have recently ruled against KSB's position. For example, in *In re BetterHelp, Inc. Data Disclosure Cases* the defendant argued, as KSB does here, that the plaintiffs ECPA claim should fail because it was not "in the business of providing electronic communications services, in the manner of

9

ordinary email and internet service providers." 2024 U.S. Dist. LEXIS 187442, at *10 (N.D. Cal. Oct. 15, 2024). There, the court dismissed this argument and ruled the defendant "has not shown the statute should be construed so narrowly as to apply only to internet service providers." *Id*. KSB's motion to dismiss Plaintiffs' ECPA claims should be denied.

**B. KSB Violated the Computer Fraud and Abuse Act**

Plaintiffs sufficiently alleged Defendant violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA") by alleging Defendant exceeded its authorized access by obtaining and disclosing Plaintiffs' information without their consent. Compl. ¶¶ 375-80. The Court should deny KSB's Motion to Dismiss Plaintiffs' CFAA claim. KSB's first contention, that Plaintiffs failed to allege loss, is wrong. Plaintiffs allege, as KSB's patients, they suffered damages by way of loss of privacy, unauthorized disclosure of their Private Information, lost benefit of their bargain in that they did not receive the privacy/security protections they paid for, value of surrendering their choice to keep their Private Information private, embarrassment, humiliation, frustration, and emotional distress, and decreased value of Plaintiffs' Private Information. *Id*. ¶¶ 129, 140-41, 151-52, 163. These allegations must be taken as true and certainly rise above mere "labels and conclusions" or "formulaic recitation of the elements."

KSB cites *Van Buren* and other off point cases to argue that it did not "exceed" its "authorized access" to Plaintiffs' Private Information by disclosing it to third parties like Facebook. But Plaintiffs alleged Defendant had *no* authorized access to disclose their data. Compl. ¶¶ 10 ("KSB knowingly configured and implemented into its website ... trackers ... without patients' knowledge or authorization"). This violates CFAA; for one thing, "*Van Buren's* holding applies only to the exceeds authorized access prong and did not similarly limit the scope of the other provisions of the CFAA, including the without authorization prong." *ACI Payments, Inc. v. Conservice, LLC*, 2022 WL 622214, at *9 (D. Utah Mar. 3, 2022). Third parties like Facebook and

Google had *no authorization* to access Plaintiffs' computers whatsoever and any further question is one of fact. *See, e.g.*, Compl. ¶¶ 10, 15, 22, 24, 29, 32-34, 42, 70, 78; *United States v. Thompson*, 2022 WL 834026, at *4 (W.D. Wash. Mar. 21, 2022), *reconsideration denied*, 2022 WL 1719221 (W.D. Wash. May 27, 2022) ("Any argument that mistake or technological process rendered defendant 'authorized' is properly resolved by the trier of fact.").[2]

Defendant does not even attempt to argue it had unfettered authorization to access Plaintiffs' computers and information—of course it did not. Defendant did not have, for example, "administrative access to [Plaintiffs'] servers and systems." *Anaya v. Birck*, 2024 WL 2209345, at *11 (N.D. Ill. May 16, 2024). This alone requires discovery to determine what data KSB accessed and whether such access "exceeded" KSB's authority under its contracts with Plaintiffs and the law. *See, e.g.*, *Moonlight Mountain Recovery, Inc. v. McCoy*, 2024 WL 4027972, at *4 (D. Idaho Sept. 3, 2024) (under CFAA, "questions regarding a person's authorized access and the scope of that authorization, as well as the specific information he or she accessed and the location of that information, are fact-intensive inquiries.") Accordingly, KSB's Motion should be denied.

## C. This Court Has Jurisdiction Over the CAFA Claims

In a new argument not present in its original motion to dismiss, KSB argues that diversity is not sufficiently pled under CAFA. DE 34-1 at PageID# 581–82. This argument is misplaced – the Complaint does allege minimal diversity. As the parties discussed at oral argument in September 2025, *Dancel* ordered the parties to conduct limited jurisdictional discovery on this issue. *Dancel v. Groupon, Inc.*, 940 F.3d 381, 386 (7th Cir. 2019) (ordering remand for discovery). KSB opposed that request on the record. DE 29, Hearing Transcript at 54-57. The allegations in

---

[2] Defendant cannot shift liability for tracker use to third parties. *See e.g.*, *ACW Flex Pack LLC v. Wrobel*, 2023 WL 4762596, at *7 (N.D. Ill. July 26, 2023) ("Ownership [of the server] does not matter. It makes no difference that [defendant] does not own the servers (presumably [a third party] does)." (citation omitted)).

11

the complaint must be accepted as true. This is a hospital system – the court can plausibly infer here that there are patients of that system who are citizens of other states. And additionally, the remedy for the problem KSB identifies is jurisdictional discovery, which KSB does not want. This argument fails.

## D.  The Court Should Exercise Supplemental Jurisdiction

The Court need not reach this argument; as set forth above, Plaintiffs' allegations giving rise to federal question jurisdiction, as Plaintiffs allege violations of the ECPA and CFAA.[3] But even assuming purely for the sake of argument that there is no federal-question or CAFA jurisdiction here, the Court should still exercise supplemental jurisdiction over the state law claims. District courts are not required to "relinquish its supplemental jurisdiction if one of the conditions of § 1367(c) is satisfied... Supplemental jurisdiction is a doctrine of discretion, and its 'justification lies in considerations of judicial economy, convenience and fairness to litigants.'" *Hansen v. Bd. of Trustees of Hamilton*, 551 F.3d 599, 607 (7th Cir. 2008). Here, those interests weigh strongly in favor of the Court exercising supplemental jurisdiction, regardless of the federal claims. Defendant's argument that the Court should decline to exercise supplemental jurisdiction should be rejected. In the alternative, should the Court find a lack of original jurisdiction and decline to exercise its supplemental jurisdiction over the state law claims, it should dismiss the state law claims without prejudice to permit Plaintiffs to re-file in state court.

## E.  Plaintiffs Sufficiently Pleaded Each of Their Claims

       i.       <u>Plaintiffs sufficiently pleaded negligence and negligence per se</u>

---

[3] Moreover, the Complaint sufficiently alleged jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). *See* Compl. ¶ 36 (alleging at least one member of this class is a citizen of a state different from the Defendant); *Roberson v. Maestro Consulting Servs. LLC*, 507 F. Supp. 3d 998, 1011-1012, n.3., (S.D. Ill. 2020) ("at least one putative class member—either all or some of the ones with non-Illinois addresses mentioned…is diverse from the [d]efendants").

Defendant's disclosure of Plaintiffs' Personal Information breached the duty it owed them under common law, the FTC Section 5, and HIPAA, to safeguard their Personal Information, causing them injury. Compl. ¶¶ 240-64. This is sufficient under Illinois law. *See, e.g.*, *Aspen Dental*, 2024 WL 4119153, at \*9; *Loyola*, 2024 WL 3338941, at \*7; *Krupa*, 2023 WL 143140.

    i.   <u>Plaintiffs sufficiently alleged valid legal duty</u>

Defendant, as Plaintiffs' health care provider, had a duty to protect Plaintiffs' confidential PHI from disclosure to third parties. *See* Compl. ¶¶ 186, 241, 255, 280. Illinois law recognizes such a duty. *See Petrillo v. Syntex Lab'ys, Inc.*, 499 N.E.2d 952 (1986) (The medical profession has an "obligation to keep communications divulged by a patient to his physician as confidential as possible," patients have a corresponding "right to rely on physicians to adhere to medical ethics and thereby protect the confidential relationship existing between a patient and his physician"); *Best v. Taylor Mach. Works*, 689 N.E.2d 1057, 1100 (1997) ( "patients in Illinois have a privacy interest in confidential medical information…[Illinois has a] strong public policy in preserving patients' fiduciary and confidential relationship with his or her physicians"). Defendant further has "a common law duty to protect the personal information of its clients." *Flores*, ¶ 24.

Illinois recognizes "a common law duty to protect [plaintiff's] personal information" *and* a duty based in statute based on the FTC. *Flores*, ¶ 22-28 (reasoning that "the legislature has now created a duty to maintain reasonable security measures under the Information Protection Act"); *see also In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 585–86 (N.D. Ill. 2022); *Martin by Martin v. Ortho Pharm. Corp.*, 169 Ill. 2d 234, 242–43 (1996) ("[plaintiff] relies on the FDA regulation merely to establish the standard or duty…Nothing prohibits [plaintiff] from using the FDCA or its accompanying regulations in that fashion.").

Defendant's contention that the FTC Act does not provide any private right of action

13

similarly fails. In Illinois, "the FTC Act can serve as the basis of a negligence per se claim." *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 760 (C.D. Ill. 2020). Indeed, the court there acknowledged that, as is the case here, "the FTC has brought [several] cases against companies that have engaged in unfair or deceptive practices that put consumers' personal data at unreasonable risk." *Id.* (quoting *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1073 (C.D. Ill. 2016)). Plaintiffs do not assert a standalone negligence *per se* claim, but one that runs alongside their negligence claim, using the FTC Act and HIPAA as evidence of Defendant's negligence—exactly what *Flores* reaffirmed was appropriate. *Flores*, ¶ 28 ("defendant's alleged violations of the FTC Act could be offered as prima facie evidence of defendant's negligence").

Defendant's reliance on *Becerra* is likewise misplaced. That highly political summary judgment opinion, concerning a hospital association lawsuit against the Secretary of Health and Human Services ("HHS") cannot support Defendant's argument here. *Becerra* presented a very limited question on summary judgment – whether HHS exceeded its rule-making authority. The answer to that limited question does not affect whether a tort was committed under Illinois law, or whether standards of care informed by HIPAA or the FTC Act were violated. Further, *Becerra* in fact reaffirmed the HHS guidance in large part, vacating only one discrete piece of it.[4] That piece vacated by *Becerra* is very narrow and does not encompass the breadth of the factual allegations here. The court in *Becerra* was focused on "unauthenticated public webpages" or "websites that don't require login credentials or user verification." *Id.* at *2.

Plaintiffs' allegations are the very ones the court in *Becerra* reaffirmed. Plaintiffs allege the specific Private Information they entered on Defendant's Website—they used Defendant's

---

[4] *Becerra*, 2024 WL 3075865 at *4 n.3, *17 n.8 (stating that the order "is not intended to, and should not be construed as, limiting the legal operability of other guidance in the germane HHS document" and noting that the HHS guidance "contains an array of guidance for covered entities, much of which is both legally and pragmatically sound").

website, including to manage treatment for medical conditions, check medical bills, view different test results, schedule appointments, view appointment times, track prescriptions, locate phone numbers for OBGYN and primary care doctors, find a primary care doctor, find hours of operations of different KSB locations, and leave reviews. *Id.* ¶¶ 132, 144, 155. These are the very situations the *Becerra* court explicitly did not consider as exceeding HHS's rule-making authority. To be clear, Plaintiffs are not suing Defendant for violating the HHS Guidance. Not one of Plaintiffs' claims in this litigation turns on interpreting the HHS Guidance. Since *Becerra*, other courts, including the Northern District of Illinois, agree that *Becerra* does not inform whether a motion to dismiss should be granted in these circumstances.[5] Accordingly, Plaintiffs sufficiently alleged disclosure of their Private Information, and Defendant's argument otherwise should be rejected.[6]

Cases that have analyzed the duty component of negligence claims like the one alleged in the Complaint have held that health care providers have a duty to maintain the confidentiality of their patients' information and denied motions to dismiss premised on lack of duty. *See, e.g.*, Exhibit A-3 and A-4. This Court should likewise recognize that Defendant owed Plaintiffs a duty of confidentiality and should deny Defendant's Motion to Dismiss.

    ii.  <u>Plaintiffs sufficiently alleged breach</u>

Both of Defendant's arguments that Plaintiffs' allegations of breach are insufficient are

---

[5] *See, e.g., Loyola; Kurowski IV* at *6 ("the Court expressly declined to defer to this bulletin in deciding whether [plaintiff] had stated a claim . . . it has always been true that regulated entities may not impermissibly disclose personal health information to tracking technology vendors."); *Doe v. Univ. Health Sys., Inc.*, 2024 Tenn. Ch. LEXIS 2 (Tenn. Ch. Aug. 9, 2024) (explicitly considering and rejecting Becerra); *Doe v. County of Santa Clara*, 2024 WL 3346257, *6 n.4 (N.D. Cal. July 8, 2024) ("The ongoing challenges to the HHS rules are irrelevant to whether plaintiff has stated her claims in this case").

[6] Defendant's other arguments likewise fail. Defendant argues Plaintiffs consented by agreeing to *Facebook's* terms. Defendant offers no citation to Plaintiff's Complaint—nor could it, Plaintiffs alleged they did *not* consent. *See, e.g.,* Compl. ¶ 12. Defendant also argues that it "does not know whether its website visitors have signed up for Facebook or agreed to Facebook's policies…it is Meta [that collects Plaintiffs' information]" Def. Mem. at 18. In stating this, Defendant admits that it enabled and assisted Meta to connect Plaintiffs' Private Information.

wrong. First, Defendant argues that Plaintiffs failed to allege that Defendant "affirmatively configured" the tracking devices on its website, MTD p. 19. However, that argument ignores— and indeed, contradicts—the specific allegation of the Complaint that "*KSB knowingly configured and implemented into its website…code-based tracking…which collected and transmitted Plaintiffs' and Class Members' Private Information to Facebook and other third parties, without patients' knowledge or authorization.*" Compl. ¶ 10 (emphasis added). Likewise, Plaintiffs allege that Defendant "intentionally selected and took advantage of the features and functionality of the Pixel that resulted in the Disclosure of Plaintiffs'[] Private Information." *Id.* ¶ 122.

Defendant's argument that Plaintiffs failed to allege "personal health information," is also flatly wrong. The first paragraph of the Complaint states that this action is brought "to address Defendant's improper practice of disclosing the confidential Personally Identifying Information ("PII") and/or Protected Health Information "("PHI")…of Plaintiffs and the proposed class members," with "identifying information" defined per the FTC as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person, including, among other things, name, Social Security number, date of birth," and "protected health information" defined under HIPAA as "identifiably identifiable formation relating to the past, present, or future health status of an individual" along with" information such as diagnoses, treatment information, medical test results…prescription information…and demographic information such as birth dates, gender, ethnicity, and contact and emergency contact information." Compl. ¶ 1 (internal quotation marks and brackets omitted) (citing HIPAA). "Through its use of the Meta Pixel and other tracking technologies, KSB disclosed to Facebook" each Plaintiff's identity, status as a patient, seeking of medical treatment, medical services viewed, specialties of medical providers searched for and viewed, names of medical providers searched for

16

and viewed, search results clicked on, pages and content viewed, and information regarding their patient portal activity. Compl. ¶¶ 138, 149, 161, 198. Defendant impermissibly ignores the facts which must be taken as true in the Complaint.

Defendant also cites to *Santoro v. Tower Health*, but that case is dissimilar, as applying Pennsylvania law, and as "in th[at] particular case," the complaint did "not explain the nature of the personal information allegedly captured by the Meta Pixel" or what the plaintiff did on defendant's website. 2024 WL 1773371, at *1 (E.D. Pa. Apr. 24, 2024). By contrast, as just described, here Plaintiffs allege a plethora of details concerning their searches and activity on Defendant's website and what Private Information was unauthorizedly disclosed, as well as why it is legally protected health information. KSB's arguments that the Plaintiffs have not adequately pleaded that KSB's misconduct proximately caused their injuries should be rejected.

### iii. Plaintiffs sufficiently alleged causation

The allegations of injury and causation in the Complaint are explicit and specific: "As a direct, proximate, and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and Class Members have suffered or imminently will suffer injury and damages, including monetary damages, inappropriate advertisements and use of their Private Information for advertising purposes, and increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress." Compl. ¶ 247. These allegations are more than sufficient to plead Defendant's misconduct caused compensable injuries. *See Gallagher*, 631 F. Supp. 3d at 587, ("emotional harms such as anxiety and increased concerns for the loss of privacy" are "non-economic damages [that] are recoverable under Illinois law.").

Likewise, as in *Flores*, Plaintiffs allege "they began to be targeted more frequently by spam messages and targeted marketing" and held that "[t]hese allegations of proximate cause and injury

17

are sufficient at the pleading stage." *Flores*, ¶ 25; Compl. ¶¶ 133, 156 (following Plaintiff Noftz "use of Defendant's Online Platforms, she noticed that she was receiving targeted ads regarding Defendant's health plans"; following Plaintiff Weinstock's "use of Defendant's Online Platforms, he began to notice targeted ads for KSB hospitals' pain management classes").

Finally, as Illinois Courts have held, "the question of causation ... is preeminently a question of fact." *Meck v. Paramedic Servs. of Illinois*, 296 Ill. App. 3d 720, 730 (1998) (citing *Gatlin v. Ruder*, 137 Ill. 2d 284, 293 (1990)). Because causation is a question of fact, Defendant's request that this Court resolve it on a motion to dismiss is improper. *See Lopez v. Clifford Law Offices, P.C.*, 362 Ill. App. 3d 969, 983 (2005). In *Lopez*, the Court held that "because questions of fact exist as to causation, the dismissal of the Clifford defendants was improper." *Id*. The same is true here. The Court should deny Defendant's Motion to Dismiss Plaintiffs' negligence claim.

## iv. Plaintiffs' claims are not barred by the economic loss doctrine

The Court should also reject Defendant's argument that the economic loss rule established in *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 88 (1982) for two reasons. First, the duty that Defendant breached does not arise from any express contract. And second, the damages Plaintiffs seek are not purely economic loss.

In *Flores*, the Illinois Court of Appeals rejected an argument based on the economic loss rule in the context of a data breach. As *Flores* observed, "the Illinois Supreme Court [has] held that the doctrine applies to the service industry only where the duty of the party performing the service is defined by a contract executed with the client... [that] reasoning equally applies to data breach cases" 2023 IL App (1st) 230140 ¶ 57. "Since plaintiffs' common law tort claims are based on defendant's common law duty to safeguard personal information…the *Moorman* doctrine does not prohibit plaintiffs from bringing their claims." *Id*. The same is true here.

18

Additionally, *Moorman* recognized a duty is independent of a contract where a plaintiff's damages were caused by a defendant's intentional false representation. *Moorman*, 91 Ill. 2d at 89. This is especially applicable here because Defendant made (false) affirmative representations to Plaintiffs, who are its patients, that it was not collecting or selling their personally identifying information for its own profit when it was, in fact, employing tracking technologies to do just that. Compl. ¶¶ 6, 15, 45, 89-97. Thus, the exception to the *Moorman* rule also independently precludes the economic loss doctrine from negating Plaintiffs' negligence claims.

Yet further, the damages Plaintiffs claim are not purely economic loss. For purposes of the economic loss rule "[e]conomic loss is defined as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property.'" *Flores* ¶ 56. Here, however, Plaintiffs' damages include "embarrassment, humiliation, frustration, and emotional distress." Compl. ¶ 247. The economic loss rule does not bar such damages. Accordingly, Defendant has failed to meet its burden. It is clearly on notice of this claim and can formulate a defense because it attempts to skirt Plaintiffs' allegations in order to bolster its defenses.

## F.  Breach of Contract

Defendant complains that "Plaintiffs seemingly claim that because they were patients of KSB Hospital, they have an implied contract governing the disclosure of information in every interaction between Plaintiffs and KSB Hospital." MTD p. 22. Defendant again simply ignores the allegations in the Complaint. Plaintiffs and the Class Members paid monies for treatment received and entrusted their Private Information to Defendant. Compl. ¶ 268. In exchange, Defendant agreed to provide medical care and treatment and promised it would not disclose Plaintiffs' and the Class Private Information, including PHI, except as authorized. *Id.* ¶ 267. Indeed, Defendant assured its patients that "we ***never*** share your information unless you give us written permission"

19

to sell its patients information or to use it for marketing purposes. *Id.* ¶ 82.

Defendant violated its privacy policies—and as a result, breached its contract with Plaintiffs and the Class Members—by disclosing their Private Information to third parties, including Facebook, Google, and others, without written authorization, and by failing to apprise Plaintiffs and the Class Members of the unauthorized Disclosure, in violation of Defendant's Privacy Policies. *Id.* ¶¶ 271, 283. Defendant cannot seriously argue that "there is no legal authority to stretch the scope of any purported implied contract to cover the conduct of which Plaintiffs complain" MTD p. 22, when ***Defendant's own Privacy Policy*** explicitly promises Defendant will "***never*** share your information unless you give us written permission" Compl. ¶ 82. Regardless of the label of Express or Implied Contract, the outcome is the same: Defendant promised to keep its patients' Private Information confidential. Defendant then broke that promise, disclosing that information to unauthorized third parties.

Finally, Defendant argues Plaintiffs failed to allege damages. Yet Illinois law is clear: "A defrauded purchaser is entitled to damages which will give him the 'benefit of his bargain'"—a harm which Plaintiffs alleged and which is solely sufficient. *Posner v. Davis*, 76 Ill. App. 3d 638, 644–45 (1979); *see e.g.*, Compl. ¶ 272, 285; *see also, e.g.*, *Geisberger v. Willuhn*, 72 Ill. App. 3d 435, 438 (1979) ("The cases that have recognized the contract theory as a cause of action make it clear that the action lies for the disclosure of "personal" information, E.g., information relating to the patient's mental or physical condition or the physician's diagnosis or treatment."); Plaintiffs further alleged decreased value of their private information, emotional harm, loss of privacy, the revenues, profits, and savings attributable to Defendant's unauthorized sale of Plaintiffs' Private Information, and increased risk of future harm. Compl. ¶¶ 272, 285; *see e.g., Gallagher*, 631 F. Supp. 3d at 587 (damages sufficient for breach of implied contract include "loss of the economic

20

value of purchases"). Defendant does not even engage with these allegations.

As Plaintiffs allege, "Plaintiffs and Class Members fully performed their obligations under the express contract with Defendant." Compl. ¶¶ 270, 282. Defendant offered the Privacy Policies for a reason: it sought to hold the parties to the terms it set forth therein. After holding those terms out, Defendant cannot cry 'foul' when patients accept them. Plaintiffs ask nothing more than to hold Defendant to the terms it set out for *both* parties, and Defendant's motion to dismiss Plaintiffs' breach of contract claims should be denied.

## G. Unjust Enrichment

This Court should also deny Defendant's Motion to Dismiss as to Plaintiffs' Unjust Enrichment Claim. As the Illinois Court of Appeals held in *Flores*, a plaintiff "state[s] a cause of action based on a theory of unjust enrichment" if they "allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Flores* at ¶ 37 (quoting *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989)). Plaintiffs have alleged just that here: they alleged they conferred their Personal Information upon Defendant, who promised it would not disclose their Personal Information, that Defendant then disclosed their Personal Information, and that it would be inequitable for Defendant to retain the benefit of that disclosure because it obtained Plaintiffs' Personal Information under the premise of the promise of not disclosing it. Compl. ¶¶ 289-93. These allegations are sufficient under Illinois law to "plausibly suggest that [Defendant] retained a measurable benefit and that the retention of that benefit was unjust." *See Tenet Healthcare*, 2024 WL 1756075, at *5.

Plaintiffs specifically allege, for example, that Plaintiffs paid Defendant for medical services. Compl. ¶¶ 140, 268, 270, 277; *see also* ¶ 289 (alleging that "Plaintiffs and Class Members conferred a monetary benefit upon Defendant in the form of valuable sensitive medical

21

information—Private Information."). These direct payments from Plaintiffs to Defendant distinguish this case from *Flores*, where the court held that plaintiffs did not adequately plead that they had conferred a benefit on the defendant because "the payments of premiums for defendant's insurance services were made by plaintiffs' employers, not plaintiffs themselves, and therefore were not benefits conferred by plaintiffs." *Flores* at ¶ 38. The Complaint also adequately alleges that "defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Flores* at ¶ 37. They "would not have used Defendant's services, or would have paid less for those services, if they had known that Defendant would collect, use, and disclose their Private Information to third parties." Compl. ¶ 290.

Defendant has failed to meet its burden. Plaintiffs have plausibly alleged a claim for unjust enrichment. Defendant's motion must be denied.

## H. KSB Violated the Illinois Eavesdropping Statute

The Northern District of Illinois has already held that Defendant's actions here violate the Illinois Eavesdropping Statute ("IES"). *Kurowski IV*; *Loyola*. Defendant cites *Aspen Dental* to argue that Plaintiffs' claim should be dismissed because Plaintiffs "fail to allege what section of the Illinois Eavesdropping Statute KSB violated." The court held in *Aspen*:

> After defining "private conversation," the statute separately defines "private electronic communication" to mean "any transfer of ... writing, images, sounds, data, or intelligence of any nature transmitted in whole or part by a wire, radio, pager, computer, electromagnetic, photo electronic or photo optical system." 720 ILCS 5/14-1(e). The difference in these definitions suggests legislative intent to distinguish between the disclosure of conversations, like those occurring in-person or over the phone, and electronic communications, like the private user data and appointment scheduling information at issue here.

*Aspen*, at \*4. However, as the *Aspen* court acknowledged, there is little or no authority on the construction of 720 ILCS 5/14-2 in this context. *Id*. Plaintiffs assert that the difference in definitions does not suggest that the legislature intended that "private conversations" mean only

22

verbal conversations. Indeed, the Amendment Notes to 720 ILCS 5/14-2 state that, in 2014, the General Assembly amended the statute via P.A. 98-1142, effective December 30, 2014, rewriting 720 ILCS 5/14-2(a) and inserting (a-5). Section 720 ILCS 5/14-2(a)(5) states:

> (5) Uses or discloses any information which he or she knows or reasonably should know was obtained from a private conversation or private electronic communication in violation of this Article, unless he or she does so with the consent of all of the parties.

Accordingly, as this section applies to the entirety of 720 ILCS 5/14-2(a), and as this amendment was made in 2014, when the majority of "communications" were (as they are today) made via electronic means, it stands to reason that "private conversation" encompasses *both* verbal and electronic communications, and "electronic communications" refers *only* to communications made via cell phones, computers or otherwise online. Thus the legislature intended to clarify 720 ILCS 5/14-2(a) to apply to *all* "conversations," whether they be in-person, via phone, or otherwise online. Plaintiffs urge the Court to follow the *Smith* court, the Seventh Circuit, and other courts around the nation, that have permitted claims made under the Illinois Eavesdropping statute to proceed at the pleadings stage. *See Smith,* 2024 U.S. Dist. LEXIS 119995 at*27; *Smith v. Google*, 2024 WL 2808270, at *8 (N.D. Cal. June 3, 2024); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1006 (N.D. Cal. 2024).[7]

Lastly, KSB claims that because section 5/14-2(a)(3) of the IES specifically states that a person commits eavesdropping when he "[i]ntercepts, records, or transcribes, in a surreptitious manner, any private electronic communication to which he or she is not a party unless he or she does so with the consent of all parties to the private electronic communication," and KSB was a party to the communication, Plaintiffs' IES claim should be dismissed. This ignores the allegations in Plaintiffs' Complaint as 720 ILCS 5/14-2(a)(2) states a claim is properly made where Plaintiff

---

[7] Courts across the country find Plaintiff's allegations sufficient to state wiretap claims. *See* DE 16-1.

alleges Defendant intentionally, 720 ILCS 5/14-2. The court in *Smith* recently rejected this identical argument: "the plaintiffs allege violations based on use of an eavesdropping device 'for the purpose of transmitting or recording all or any part of any private conversation to which he or she is a party.' (citing 720 ILCS 5/14-2(a)(2)). That [the defendant] is alleged to have been a party to the intercepted communications is, thus, not fatal to the plaintiffs' claim." *Smith*, 2024 U.S. Dist. LEXIS 119995 at *25-26. Accordingly, KSB's contention that it can escape liability because it was a party to the communications is wrong. KSB's motion should be denied.

## I. Bailment

Under Illinois law, to establish a bailment claim, a plaintiff must allege (1) an agreement by the bailor to transfer or deliver and the bailee to accept exclusive possession of goods for a specified purpose, (2) the actual delivery or transfer of exclusive possession of the property of the bailor to the bailee, (3) acceptance of exclusive possession by the bailee, and (4) existence of consideration. *Kirby v. Chicago City Bank & Tr. Co.*, 82 Ill. App. 3d 1113, 1116 (App.Ct.Ill.1980). That is just what Plaintiffs alleged here: they agreed to entrust their Personal Information to Defendant, which Defendant accepted, Defendant had exclusive possession, and the parties exchanged consideration in the form of monetary compensation and Private Information in exchange for medical services and confidentiality of Private Information. Compl. ¶¶ 295-301.

Defendant argues that Plaintiffs' Private Information is not physical property. MTD p. 25. That may be true in other jurisdictions but it is not the law in Illinois. Bailment "may involve either tangible property or intangible property, such as documents evidencing certain rights." *Robinson v. St. Clair Cnty.*, 144 Ill. App. 3d 118, 120 (App.Ct.Ill.1986); *Liddle v. Salem Sch. Dist.*, 249 Ill.App.3d 768, 770 (App.Ct.Ill.1993) ("Our supreme court has recognized that information may constitute intangible personal property") (citing *First Nat'l Bank of Springfield v. Dept. of Revenue,* 421 N.E.2d 175, 177 (Ill. 1981) ("In short, it is not the [magnetic tapes] which are the

24

substance of the transaction, it is the information. We, therefore, hold that the sale of computer software in the instant transaction is, in substance, the transfer of intangible personal property").[8] Similarly, the Southern District of Indiana found that when a defendant held onto personal data subject to a shared understanding that it would remain confidential, and then subsequently exposed it, "[Plaintiffs] need[ed] nothing more to establish a breach of bailment claim." *Krupa*, at *5.[9]

Plaintiffs alleged just that: the parties "contemplated a mutual benefit bailment when [Plaintiffs] transmitted their Private Information to Defendant solely for treatment and the payment thereof." Compl. ¶ 296. The Private Information is valuable—it "was used by Defendant to benefit KSB and its marketing and advertising purposes." *Id.* ¶ 299; *see also Liddle*, at 772 ("Information may…be a valuable commodity").[10] Moreover, this Private Information was provided "in trust for a specific and sole purpose of receiving KSB's medical treatment services…" *Id.* ¶ 297. Defendant's motion to dismiss Plaintiffs' bailment claim should be denied.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully requests that the Court deny Defendant's Motion to Dismiss.

---

[8] Courts across the country recognize that data is a form of property and refuse to dismiss bailment causes of action in cases with unauthorized disclosure of personal information. *See, e.g.*, *Krupa*, 2023 WL 143140, at *5; *Doe v. Coffee Reg'l Med. Ctr., Inc.*, 2024 Ga. Super. LEXIS 602 (Ga. Super. Ct. Sept. 6, 2024) (under practically identical allegations and law, allowing bailment claim); *Kane, et al., v. University of Rochester*, 2024 WL 1178340, at *1 (W.D.N.Y. Mar. 19, 2024) (same); *Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *14 (S.D.N.Y. Mar. 23, 2021); *Weisenberger v. Ameritas Mut. Holding Co.*, 597 F. Supp. 3d 1351, 1361 (D. Neb. 2022); *Bessemer Sys. Fed. Credit Union v. Fiserv Sols., LLC*, 472 F. Supp. 3d 142, 171 (W.D. Pa. 2020).

[9] Even setting aside established Illinois law, courts approach these types of claims with a measure of common sense. As the Ninth Circuit reasoned, "[i]t would be a curious jurisprudence that turned on the existence of a *paper* document rather than an electronic one. Torching a company's file room would then be conversion while hacking into its mainframe and deleting its data would not. That is not the law..." *Kremen v. Cohen*, 337 F.3d 1024, 1034 (9th Cir. 2003).

[10] As the court in *Liddle* observed when explaining why information can be valuable, "[e]ach of the parties to this case is undoubtedly paying the attorneys representing them for legal advice. We doubt that these attorneys would claim their advice was valueless." 249 Ill. App. 3d 772.

Dated: December 24, 2025        Respectfully submitted,

*/s/ Michael C. Tackeff*
J. Gerard Stranch, IV (*Pro Hac Vice*)
Michael C. Tackeff (*Pro Hac Vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, Tennessee 37203
(615) 254-8801
(615) 255-5419 (facsimile)
gstranch@stranchlaw.com
mtackeff@stranchlaw.com

Lynn A. Toops (No. 63337-43)
Amina A. Thomas (*Pro Hac Vice* forthcoming)
**COHEN & MALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, Indiana 46204
(317) 636-6481
ltoops@cohenandmalad.com
athomas@cohenandmalad.com

Samuel J. Strauss (*Pro Hac Vice* forthcoming)
Raina Borelli (*Pro Hac Vice* forthcoming)
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

***Counsel for Plaintiffs and the Proposed Class***

i

## CERTIFICATE OF SERVICE

I hereby certify that on this 24rd day of December 2025, I have caused the electronic filing of the foregoing document described as PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND MEMORANDUM IN SUPPORT through the CM/ECF system, which will serve all parties of record.

*/s/ Michael Tackeff*
Michael Tackeff

ii