**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

**CHLOE NOFTZ, TONYA BLACK and KENNETH WEINSTOCK, on behalf of themselves and all others similarly situated,**

**Plaintiffs,**

**v.**

**KSB HOSPITAL FOUNDATION d/b/a KSB HOSPITAL F/K/A KATHERINE SHAW BETHEA HOSPITAL,**

**Defendant.**

**Case No. 1:24-cv-08100**

# REPLY IN SUPPORT OF DEFENDANT KSB HOSPITAL'S RULE 12(b)(6) and 12(b)(1) MOTION TO DISMISS

Sanjay S. Karnik
Ill. Reg. No. 6300156
Brittany M. Cambre*
Brandi Z. Burton-Murrain
Ill. Reg. No. 6323698
CHILIVIS GRUBMAN, LLP
159 N. Sangamon Street, Suite 313A
Chicago, IL 60607
Tel: (872) 260-6679
Fax: (404) 261-2842
skarnik@cglawfirm.com
bcambre@cglawfirm.com
bmurrain@cglawfirm.com

*Attorneys for Defendant KSB Hospital*

**pro hac vice forthcoming*

Plaintiffs cannot pursue a class action based on hypothetical scenarios and conclusory allegations. The Complaint fails to allege any facts which demonstrate what PHI or PII Plaintiffs personally and individually entered on KSB's platforms. Nor does the Complaint allege what PHI or PII KSB allegedly disclosed to Facebook. While some "pixel" and "third party source code" class action complaints have survived the motion to dismiss stage (following second, third, and even fourth pleading attempts), those cases involved far more detailed factual allegations than the vague, hypothetical, and conclusory claims asserted by Plaintiffs here.

## I. PLAINTIFFS FAIL TO ALLEGE ANY DISCLOSURE OF PHI OR PII.

The stunning lack of detail in the Plaintiffs' own allegations cannot be masked by citations to other "pixel" cases which asserted passable allegations. As an initial matter, Plaintiffs reassert the generalized claim that Defendant's use of trackers collected and transmitted patients' PII and/or PHI to not only Facebook but also Google Analytics, Google Tag Manager, Innovid, and CallRail. Opp. at 3. However, none of the Plaintiffs personally assert that they personally used these other programs. As such, Plaintiffs cannot pursue any class or personal allegations based on these other tracking programs. Plaintiffs also generally re-assert they suffered injuries in the form of monetary damages, loss of privacy, and unauthorized disclosure of their private information, but they do not point to any plausible allegations made by any of the named Plaintiffs giving rise to such injuries. *Id.* at 3-4. Plaintiffs cannot survive dismissal by simply reciting these generalized allegations.

Next, Plaintiffs fail to sufficiently allege a disclosure of PHI and/or PII to KSB which then turned into Facebook advertisements which they viewed. First, the "targeted ads" which Plaintiff Noftz allegedly received were not related to foot or fracture treatments, but rather, generally, "Defendant's health plans." *Id.* ¶¶ 132-133. Plaintiff Noftz's allegations that KSB disclosed her "seeking of medical treatment" and "information regarding" her portal activity fail to present a

single fact showing what was disclosed. *Id.* ¶ 138(b), (d). Plaintiff Noftz also fails to allege other basic details which would give KSB notice of her claims, such as **when** she visited the KSB Online Platforms, what PHI or PII she entered, and when she received targeted ads on Facebook.

Second, Plaintiff Black does not describe with any detail what pages and content he viewed, what test results he looked up, what appointments he scheduled and when, or what prescriptions he tracked. *Id.* ¶ 144. Accordingly, Plaintiff Black's laundry list of information allegedly disclosed to Facebook, identical to Plaintiff Noftz, also lacks factual support. *Id.* ¶ 149. Third, Weinstock does not identify the date of any physical therapy treatment or appointment time, does not describe any test result, and does not allege any particular advertisement on Facebook related to kidney stones. *Id.* ¶¶ 155, 161. Making matter worse, Plaintiffs make their generalized allegations "on information and belief," ignoring that Plaintiffs should know what they allegedly disclosed on the KSB website. Accordingly, Plaintiffs fail to allege what PHI search terms they entered on KSB's website, what medical services they viewed, and where (in the portal or on an unauthenticated page) or when. Nor do they allege when they viewed the alleged advertisements on Facebook containing their PHI / PII.

Recognizing the vague and conclusory nature of their allegations, Plaintiffs attempt to conflate their insufficient claims with allegations from other "online tracking" cases which survived motions to dismiss in the Northern District of Illinois. But the allegations in these other cases were far more detailed than the recycled, ambiguous details in Plaintiffs' Complaint. In *Loyola*, one plaintiff alleged that she scheduled a surgical appointment through LUMC's online platform while simultaneously logged into her Facebook account, and then "began receiving targeted medical advertising related to said surgery on her social media accounts." *Loyola*, 2024 WL 3338941, at *2. The second *Loyola* plaintiff alleged that she researched specific providers

who treat certain medical conditions, communicated with said providers, and also reviewed test results prescriptions on LUMC's platform, and then received "targeted medical advertising" related to those same medical conditions and specific prescriptions. *Id.*

Similarly, in *Hartley II* the plaintiff amended her complaint to allege that she was seeking specific medical specialists and specifically alleged that the ads sent to her were for "medications that were relevant to specific conditions for which she was being treated." *Hartley II*, 2024 WL 1886909 at *2. Here, Plaintiffs do not identify any specific medical specialists, nor do they identify any specific return advertisements for medications or conditions. In *Kurowski IV*, the plaintiff alleged that Rush transmitted the name and location of her personal physician and the physician's specialty, and that this information was used to "target her with particular advertising associated with her particular health conditions." *Kurowski IV*, 2024 WL 3455020 at *2. In *Aspen Dental,* the plaintiffs "allege that Aspen, via the tracking devices employed on its webpages, transmitted Plaintiffs' patient status, medical conditions, information about their medical appointments and treatments, specific medical providers, and other sensitive health information to third parties. (FAC ¶ 173)." *Aspen Dental*, 2024 WL 4119153, at *3. On the other hand, here, Plaintiffs fail to allege what alleged PHI they entered, when, and where, and they make no attempt to connect these unknown factual details with any actual advertisements. Nor do Plaintiffs allege with any specificity what PHI or PII was contained in the Facebook advertisements they viewed, or how contemporaneously close these advertisements came from their use of the KSB website. Therefore, these cases are not a corollary to Plaintiffs' deficient allegations.

## II. PLAINTIFFS' ECPA CLAIMS FAIL (COUNTS VIII THROUGH X).

### A. The Crime Tort Exception Does Not Apply.

Plaintiffs concede that KSB is a party to the allegedly intercepted communications. Opp. at 5. As an initial matter, KSB cited to *Jurgens* to simply state that an interception of an electronic communication is a necessary element for a Wiretap Act claim: KSB did not cite *Jurgens* as a crime-tort exception case. Mot. at 5. The Wiretap Act is clear that an interceptor is not liable if they are "a party to the communication or where one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). Secondly, KSB cites to *Allen* to merely demonstrate that claims brought under the various subsections of § 2511 are analyzed together. Mot. at 5. *Allen* is not a crime-tort exception case, either. Accordingly, Plaintiffs' arguments against *Jurgens* and *Allens* are unavailing.

Returning to the applicability of the crime-tort exception, Plaintiffs try to compare their allegations to the claims made in *Loyola*, *Kurowski IV*, *Hartley II*, and *Aspen Dental* which survived Rule 12 dismissal. *Id.* at 5-8. However, their arguments fail because (1) Plaintiffs do not plead that KSB had a criminal or tortious purpose to violate HIPAA (indeed, they plead the opposite); (2) they do not allege any tortious or criminal act independent of from the intercepting act, and (3) in any event, Plaintiffs fail to sufficiently allege any HIPAA violation.

First, Plaintiffs' own allegations state that "[t]he **sole purpose** for [KSB's] use of the Meta Pixel and other tracking technology was to **enhance its marketing efforts and increase its profits."** Compl. ¶ 206 (emphasis added). This allegation directly contradicts any assertion that KSB had a criminal or tortious purpose. In *Katz-Lacabe v. Oracle America, Inc.*, No. 22-cv-04792-RS. 2024 WL 1471299 (N.D. Cal. Apr. 3, 2024), the court rejected the argument that the Wiretap Act's tortious or criminal conduct exception should apply because "Plaintiffs fail to plausibly

allege Oracle's underlying motivation in collecting and selling data about internet users was anything other than to generate revenue." *Id*. at *3 (citing *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 519 (S.D.N.Y. 2001). Accordingly, the crime-tort exception cannot apply upon a mere allegation of an intention to make money.

Second, the Court should also find that the crime-tort exception does not apply here "because neither the alleged HIPAA nor privacy violations were independent of the interception[.]" *Okash v. Essentia Health*, CV 23-482 (JRT/LIB), 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024) (third party tracker case); *see also Nienaber v. Overlake Hosp. Med. Ctr.*, 2:23-CV-01159-TL, 2024 WL 2133709, at *15 (W.D. Wash. May 13, 2024) ("Plaintiff fails to plead a tortious or criminal use of the acquired communications, separate from the recording, interception, or transmission") (third party tracker case). "[I]t is well established that" the crime-tort exception "only applies where the defendant allegedly committed a tortious or criminal act independent from the act of recording itself." *Kurowski v. Rush Sys. for Health (Kurowski II)*, 683 F. Supp. 3d 836, 844 (N.D. Ill. 2023) (citing *Caro v. Weintraub*, 618 F.3d 94, 99 (2d Cir. 2010)); *see also United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) (confining the crime-tort exception to "instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party").

Third, because Plaintiffs allegations fall short of demonstrating the applicability of the crime-tort exception, the Court should dismiss Count VIII. Unlike the oft-amended complaints in *Kurowski IV*, *Hartley II, Aspen Dental*, and *Loyola*, here, Plaintiffs fail to specify what protected information was disclosed in violation of HIPAA. Plaintiffs argue that they alleged seeking specific medical treatments for a broken toe, kidney stones, pain management, and physical therapy. Opp. at 6. But Plaintiffs do not allege any facts showing that their medical diagnoses,

treatments, or actual providers' information were ever **disclosed**. Plaintiffs' allegations are thus "far too vague to allow an inference to be drawn that [the defendant] was actually disclosing IIHI as it is unambiguously defined by HIPAA, rather than just metadata." *Kurowski II*, 683 F. Supp. 3d at 843.

Plaintiffs' bare-bone, conclusory allegations do not favorably compare to the passable allegations in other cases. For example, in *Kurowski III*, the court held that HIPPA violations could form the basis of the crime-tort exception **only** after the amended complaint added allegations that the defendant "transmitted the name and location of her personal physician, as well as her physician's specialty . . . [which] was used by at least Facebook to target her with particular advertising associated with her particular health conditions." 2023 WL 8544084 at *3. Similarly, in *Aspen Dental,* the Court found that "Plaintiffs' allegations regarding their individual experiences using Aspen's online platform…are sufficient to plausibly allege that Aspen disclosed information regarding their personal health conditions and treatments to third parties[,]" which was the only sufficient basis "to invoke HIPAA for purposes of the ECPA's crime-tort exception." *Aspen Dental*, 2024 WL 4119153, at *3.

Finally, Plaintiffs fail to address KSB's reliance on *Hannant v. Culbertson*, No. 4:24-CV-04164-SLD-RLH, 2025 WL 2413894, at *5 (C.D. Ill. Aug. 20, 2025), in which the court held that a plaintiff's vague allegations "[o]n information and belief" failed to show that the crime-tort exception should apply, principally because "Plaintiff has access to her end of the equation" yet failed to provide sufficient detail to conclude that she has plausibly alleged that IIHI was improperly intercepted, disclosed, or used. Mot. at 12-13. Because Plaintiffs do not plausibly link their disclosure of PHI or PII on KSB's website with any advertisements received from a third party such as Facebook, Plaintiffs' allegations cannot support a crime-tort exception to the ECPA,

notwithstanding the fact that other Courts have allowed different factual allegations to proceed past a motion to dismiss.

**B. KSB is Not an Electronic Communication Service ("ECS").**

Plaintiffs' interpretation of an "electronic communications provider" would subject every single business or person with a website to liability under 18 U.S.C. § 2511(3)(a). Plaintiffs are mistaken. Having a website does not mean KSB provided an electronic communication service to the world. The Federal Wiretap Act defines an ECS as "any service which provides to users thereof the ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). An ECS is a service that enables users to send or receive electronic communications to or from other users, such as an email service provider or text messaging service. A business that merely provides a service that enables customers or users to communicate **with that business** is not an ECS. *See In re JetBlue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299, 307 (E.D.N.Y. 2005) (dismissing SCA claim because a company "does not become an 'electronic communication service' provider simply because it maintains a website that allows for the transmission of electronic communications between itself and its customers").[1]

*In re BetterHelp, Inc. Data Disclosure*, 23-CV-01033-RS, 2024 WL 4504527, at *2 (N.D. Cal. Oct. 15, 2024) does not support Plaintiff's position. In declining to dismiss a stored

[1] *See also Andersen Consulting LLP v. UOP*, 991 F. Supp. 1041, 1043 (N.D. Ill. 1998) (dismissing ECPA claim because mere use of defendant's email system did not render it an electronic communication service provider); *State Wide Photocopy, Corp. v. Tokai Fin. Servs., Inc.*, 909 F. Supp. 137, 145 (S.D.N.Y. 1995) (explaining "Senate Report typifies three electronic communication services: a telephone company, an electronic mail company, and a company providing remote computing services"); *Dyer v. Northwest Airlines Corps.*, 334 F. Supp. 2d 1196, 1198 (D.N.D. 2004) (dismissing ECPA claim noting "Courts have concluded that 'electronic communication service' encompasses internet service providers as well as telecommunications companies whose lines carry internet traffic, but does not encompass businesses selling traditional products or services online").

communications ECPA claim, the *In re BetterHelp* court specifically noted that "[t]he distinction is that **BetterHelp does not merely receive its own customers'** communications electronically, it allegedly **facilitates two-way electronic communications between its customers and third-party therapists**." *Id.* 2024 WL 4504527, at *2 n.1 (emphasis added). There is no allegation that KSB facilitates communications between third parties on its website. Instead, Plaintiffs only allege that they communicated with KSB—and no one else—by engaging with KSB's website. For these reasons, the Court should dismiss Counts IX and X.

## III. PLAINTIFFS' CFAA CLAIM FAILS.

Plaintiffs fail to allege essential elements of a CFAA claim. Subsection (a)(2) of the CFAA provides in relevant part that "whoever ... (2) **intentionally accesses a computer without authorization or exceeds authorized access**, and thereby obtains ... (c) information from any protected computer"…shall be punished as provided in subsection (c) of this section." 18 U.S.C. §§ 1030(a)(2)(C) (emphasis added). Here, Plaintiffs only allege that KSB "**exceeded, and continues to exceed, authorized access** to Plaintiffs' and the Class Members' protected computers" in violation of Section 1030(a)(2)(C). Compl. ¶ 377 (emphasis added). Count XI therefore turns on whether Plaintiffs have plausibly alleged a CFAA claim under the "exceeds authorized access prong" of the statute.

Because Plaintiffs do not bring their CFAA claim under the "without authorization" prong, their reliance on *ACI Payments, Inc. v. Conservice, LLC*, No. 121CV00084RJSCMR, 2022 WL 622214, at *9 (D. Utah Mar. 3, 2022) is unavailing. In *ACI Payments*, the court determined that the plaintiff adequately pled under the "without authorization" prong by alleging that the defendant "had *no authority* whatsoever to use Speedway to submit payments on behalf of consumers." *Id.* (emphasis in original). *ACI Payments* does not support the argument Plaintiffs must make here,

which is that they have stated a claim under the **"exceeds authorized access"** prong. Thus, the Supreme Court's holding in *Van Buren v. United States* remains on point: *Van Buren* precludes liability under the "exceeds authorized access" prong for those who use authorized access to a computer for an unauthorized purpose. 593 U.S. 374 (2021).

Plaintiffs' reliance on *United States v. Thompson* fares no better, and indeed, the case simply does not apply here. Case No. CR19-159RSL, 2022 WL 834026 (W.D. Wash. Mar. 21, 2022). In *Thompson*, the United States brought criminal charges under the CFAA's "without authorization" prong, and the court determined that whether having the technological capability to access a computer constitutes "authorization" is an issue for the fact finder to determine. *Id.* at *3-4. The case does not concern the civil Rule 12(b)(6) standard, and in any event, *Thompson* is not a CFAA "exceeds authorized access" case, either. *Moonlight Mountain Recovery, Inc. v. McCoy* differs from this case in several key manners. No. 1:24-CV-00012-BLW, 2024 WL 4027972 (D. Idaho Sept. 3, 2024). In *Moonlight Mountain*, the plaintiff brought a CFAA claim under both the "without authorization" and "exceed authorized access" prongs. *Id.* at *3. And "[u]nlike the defendant in *Van Buren*, Minnig was not authorized to access some of the files he allegedly accessed." *Id.* On the other hand, here KSB falls squarely within *Van Buren* because Plaintiffs allege that KSB used its authorized access for an allegedly unauthorized purpose. For these reasons, Plaintiffs fail to allege an "exceeds authorized access" claim.

Next, even if Plaintiffs alleged a violation that was sufficient under the CFAA, they fail to adequately allege a loss. The CFAA defines two types of loss: "(1) reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and (2) any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18

U.S.C. § 1030(e)(11). Plaintiffs' hypothetical loss does not meet either definition. It is well settled that "damages for negligently inflicted emotional distress are far outside the CFAA's scope." *Turner v. Hubbard Sys., Inc.*, CV 12-11407-GAO, 2016 WL 1046949, at *12 (D. Mass. Mar. 10, 2016), *aff'd*, 855 F.3d 10 (1st Cir. 2017). Furthermore, Plaintiffs only recite the statutory requirements in Count XI which is inadequate to defend a motion to dismiss. *See Garelli Wong & Assocs., Inc. v. Nichols*, 551 F. Supp. 2d 704, 710-11 (N.D. Ill. 2008) (dismissing CFAA for failing to allege facts to show loss in excess of $5,000) Therefore, the Court should dismiss Count XI.

## IV. PLAINTIFFS FAIL TO ALLEGE MINIMAL DIVERSITY.

Because all named Plaintiffs and KSB are Illinois citizens, the Complaint fails to meet the minimal diversity requirements of CAFA. 28 U.S.C. § 1332(d)(2)(A). The Seventh Circuit has made clear that Plaintiffs cannot merely allege diversity of citizenship without specifically identifying the parties and their states of citizenship. *Dancel v. Groupon, Inc.*, 940 F.3d 381, 385 (7th Cir. 2019). A "naked declaration that there is diversity of citizenship is never sufficient." *Thomas v. Guardsmark, LLC*, 487 F. 3d 531, 533 (7th Cir. 2007). Here, Plaintiffs present no argument to the contrary except to request jurisdictional discovery. However, Plaintiffs have had over two years and three amended pleadings to try to find a non-Illinois plaintiff, and they have failed to locate one. Plaintiffs cite no case to support their position that the Court can merely "plausibly infer" diversity of citizenship. Because there is no minimal diversity, this Court lacks jurisdiction under CAFA to entertain a class action.

## V. THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL JURISDICTION.

Because Plaintiffs' federal question claims must be dismissed, the Court should decline to exercise supplemental jurisdiction and dismiss all state law claims. Plaintiffs concede that if the ECPA and CFAA claims are dismissed, there is no longer federal question jurisdiction under 28

U.S.C. § 1331 but contend the Court should nonetheless exercise supplemental jurisdiction to decide the state law claims. Opp. at 12. While the Court has discretion to exercise supplemental jurisdiction, both Supreme Court precedent and the customary practice of this court state that where federal claims are dismissed as the early stage of litigation – such as a motion to dismiss – the considerations of judicial economy and comity dictate the dismissal of supplemental claims. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Rocha v. FedEx Corp.*, 15 F. Supp. 3d, 796, 813 (N.D. Ill. 2014); *see also Wright v. Associated Ins. Cos. Inc.*, 29 F. 3d 1244, 1251 (7th Cir. 1994) ("[R]arely when a case is dismissed on the pleadings can 'judicial economy' be a good reason to retain jurisdiction.").

## VI. PLAINTIFFS NEGLIGENCE AND NEGLIGENCE *PER SE* CLAIMS FAIL.

Plaintiffs have not sufficiently alleged a valid legal duty. Plaintiffs rely on *Petrillo v. Petrillo v. Syntex Labs., Inc.*, 148 Ill. App. 3d 581 (1st Dist. 1986) and *Best v. Taylor Mach. Works*, 179 Ill. 2d 367 (1997) to assert that KSB had a common law duty under Illinois law to protect PHI, *see* Opp. at 15, and therefore specifically to this case, a duty to protect PHI entered on a public website from disclosure to third parties. Opp. at 13. These cases provide no such duty.

In *Petrillo*, a civil defense attorney named Tobin appealed a trial court order finding him in contempt of court for violating a prior order barring him from engaging in *ex parte* conferences with the plaintiffs' treating physicians. *Petrillo*, 148 Ill. App. 3d at 585. The Appellate Court affirmed the contempt order, finding that modern public policy favors the confidential and fiduciary relationship between a patient and his physician. *Id.* at 587-88. In *Best*, the Illinois Supreme Court invalidated, under the separation of powers doctrine, a legislative act which would have required every patient who filed a personal injury lawsuit to agree to the unlimited disclosure of his or medical history, records and other medical information to any party who has appeared in

the action and who requests such information. *Best*, 179 Ill. 2d at 433-449. *Petrillo* and *Best* stand for the existence of a fiduciary and confidential relationship between physician and patient – a relationship which KSB does not deny exists. These cases do not establish a duty for a physician or hospital to protect PHI entered on a public website outside of the physician-patient relationship.

Next, Plaintiffs assert that KSB owed a duty to protect PHI entered on their public website under *Flores v. Aon Corporation*, 2023 IL App (1st) 230140. Opp. at 13. In *Flores*, a group of consumers and a former employee sued a cybersecurity services company (not a healthcare provider) for negligence and negligence *per se* arising out of a data breach which revealed the plaintiffs' Social Security numbers, dates of birth, and benefit enrollment information, among other data. *Id.* ¶ 4. Taking into account the legislature's 2017 amendment of the Personal Information Protection Act, 815 ILCS 530/1, *et seq.*, and the defendant's sophistication as a cybersecurity services company, the court found that the defendant had a common law duty to protect the personal information of its clients. *Flores* does not create a common law duty for healthcare providers to protect PHI freely entered on its public website by the general public.

Plaintiffs next rely upon *Martin by Martin v. Ortho Pharm. Corp.*, 169 Ill. 2d 234 (1996) to argue that the Food, Drug and Cosmetic Act, 21 U.S.C. § 301, *et seq.* ("FDCA") can establish a duty. Opp. at 13. Plaintiffs' argument fails for three reasons. First, Plaintiffs do not assert their negligence *per se* claim based on any legal duty set forth under the FDCA. (Am. Compl. ¶¶ 200-205). Second, like the FTC Act and HIPAA, the FDCA does not confer a private right of action. 21 U.S.C. § 337(a); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001). Third, *Martin by Martin* holds the **exact opposite position** to what Plaintiffs contend the case stands for. In *Martin by Martin*, the Illinois Supreme Court concluded that FDA regulations do **not** serve as the

basis for asserting a duty to warn contraceptive users of a drug's dangerous properties. *Martin by Martin*, 169 Ill. 2d at 243-44.

Second, Plaintiffs fail to allege breach or causation. Plaintiffs cite *Meck v. Paramedic Servs. Of Illinois*, 296 Ill. App. 3d 720, 730 (1998) and *Lopez v. Clifford Law Offices, P.C.*, 362 Ill. App. 3d 969, 983 (2005) to argue that it is improper to weigh causation at the motion to dismiss stage. Opp. at 18. Plaintiffs improperly rely on state law cases for determining the Rule 12(b)(6) standard. In any event, Plaintiffs ignore that in *Meck*, the court was weighing a motion for summary judgment – not a motion to dismiss.

Finally, Plaintiffs' arguments against applying the *Moorman* economic loss doctrine fail. Plaintiffs cannot rely on KSB's alleged affirmative representations that it was not collecting or selling information because it is well settled in Illinois that "[w]here the law does not impose a duty, one will not generally be created by a defendant's rules or internal guidelines. *Rhodes v. Illinois Cent. Gulf R.R.*, 172 Ill. 2d 213, 238 (1996). Therefore, with no applicable exception, the *Moorman* doctrine applies. *Doe v. Genesis Health System*, No. 23-cv-4209-JES-JEH, 2024 WL 3890164, at *11-12 (C.D. Ill. Aug. 21, 2024).

## VII. PLAINTIFFS' ILLINOIS EAVESDROPPING CLAIM FAILS.

Plaintiffs cite no authority that the Illinois Eavesdropping statute applies to anything other than *oral* communications. As this Court found in *Aspen Dental*, the plain language of the statute does not apply to electronic communications like a user's engagement with a particular website. *Aspen Dental*, 2024 WL 4119153, at *4.

The statute clearly distinguishes a "private electronic communication" from a "private conversation" by providing two separate definitions. 720 ILCS 5/14-1(d), (e). In contravention to the Court's holding in *Aspen Dental*, Plaintiffs argue that because the statute was amended at a

time when the majority of communications were made via electronic means, that the Illinois legislature intended the statute to apply to both verbal and electronic communications. (Opp. at 23). That is not how statutory interpretation works. "Resort to legislative history…is only necessary if the language of the statute is ambiguous…." *Five Points Road Joint Venture v. Johanns*, 542 F. 3d 1121, 1128 (7th Cir. 2008). The legislature was clear when it defined "private conversation" to mean "any *oral* communication between 2 or more persons, whether in person or transmitted between the parties by wire or other means." 720 ULCS 5/14-1(d). None of the cases relied on by Plaintiff address this issue and the reasoning of *Aspen Dental* should apply.

The addition of 5/14-2(a)(5) does not change the analysis. The fact remains that liability cannot attached under the "private conversation" prong, because that applies only to *oral* communications and Plaintiff does not allege any such communication. Nor can liability attach under the "private electronic communication" prong those provisions only apply when the eavesdropper is not a party to the communication. Plaintiff conceded that KSB is a party to the communications between Plaintiff and their engagement with KSB's website. Accordingly, Plaintiffs' Illinois eavesdropping claim fails.

**VIII. PLAINTIFFS' REMAINING STATE LAW CLAIMS FAIL.**

***Breach of Express/Implied Contract***. "The Seventh Circuit has stated numerous times that 'Illinois law is clear that, to state a claim for breach of contract, one must be able to prove actual damage.'" *Kurowski IV*, 2024 WL 3455020, at *7 (quoting *TAS Distrib. Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 631 n.6 (7th Cir. 2007) (citing other cases)). "Merely showing that a contract has been breached without demonstrating actual damage does not suffice, under Illinois law, to state a claim for breach of contract." *TAS Distributing Co.*, 491 F.3d at 631. Here, Plaintiffs have not plausibly alleged that they have suffered damages, and diminution in value of private

information is insufficient to support a contract claim. *Gittings-Barrera v. Mem'l Hosp. Ass'n*, 4:24-CV-04167-SLD-RLH, 2025 WL 2776142, at *8 (C.D. Ill. Sept. 26, 2025) (citing *Flores*, 477 Ill. Dec. at 126 ("We decline to hold that the alleged diminution in value of plaintiffs' personal information amounts to actual monetary damages.") With no specific monetary-based mitigation damages alleged, Plaintiffs' express and implied contract claims fail.

***Unjust Enrichment.*** Plaintiffs' unjust enrichment claim rests on the same misconduct alleged in their other causes of action and will therefore stand or fall with their related claims. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Because Plaintiffs' other claims concern the same alleged disclosures, their unjust enrichment claim fails on the same grounds. Furthermore, as argued above, Plaintiffs fail to provide any specificity as to what "valuable sensitive medical information" it provided to KSB. Compl. ¶ 289. Consequently, the Court has no way of determining what benefit, if any, Plaintiffs conferred onto KSB.

***Bailment.*** "The predominant view across the country is that bailment is not a viable theory in data breach cases." *McLaughlin v. Taylor Univ.*, 1:23-CV-00527-HAB-SLC, 2024 WL 4274848, at *12 (N.D. Ind. Sept. 23, 2024) (citing *Galaria v. Nationwide Mut. Ins.,* 2017 WL 4918634, at *1 (S.D. Ohio Oct. 31, 2017) (collecting cases)). This for good reason. Under no set of facts can Plaintiffs show that they were somehow excluded from possession of their own data. Indeed, Plaintiffs were and are free to do whatever they want with their PHI and PII. The Court cannot say KSB exclusively possessed it. Lacking that essential element, Plaintiffs' bailment claim should be dismissed.

## CONCLUSION

For the foregoing reasons, as well as those contained in KSB's opening brief, the entirety of Plaintiffs' Complaint should be dismissed.

This 12th day of January, 2026.

Respectfully submitted,

***/s/ Sanjay S. Karnik***
Sanjay S. Karnik
Ill. Reg. No. 6300156
Brittany M. Cambre*
Brandi Z. Burton-Murrain
Ill. Reg. No. 6323698
CHILIVIS GRUBMAN, LLP
159 N. Sangamon Street, Suite 313A
Chicago, IL 60607
Tel: (872) 260-6679
Fax: (404) 261-2842
skarnik@cglawfirm.com
bcambre@cglawfirm.com
bmurrain@cglawfirm.com

*Counsel for Defendant KSB Hospital*

**pro hac vice forthcoming*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of January, 2026, I have caused the electronic filing of the foregoing document described as **REPLY IN SUPPORT OF DEFENDANT KSB'S HOSPITALS RULE 12(b)(6) AND 12(b)(1) MOTION TO DISMISS** through the CM/ECF system, which will serve all parties of record.

***/s/ Sanjay S. Karnik***
Sanjay S. Karnik